# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Jacqueline T. Robinson-Reeder )
Plaintiff )
)
)
vs. )        Civil Case: 07-0880 (JDB)
)
)
American Council on Education )
Defendant )
)

## Amendment to Motion for Summary Judgment

Plaintiff has amended this motion to apologize for not attaching **Retaliation claim. 570-2007-**

**00606 to Motion for Summary Judgment entered to court on June 2, 2007.**  The below statements

will highlight the evidence of the defendant's retaliatory employer references.  [1]*Shaver v.*

*Independent Stave Co.*, **350 F.3d 716 (8th Cir. 2003).**

---

[1] *Shaver v. Independent Stave Co.*, **350 F.3d 716 (8th Cir. 2003).**

- While applying for jobs, plaintiff used former supervisor as reference even though he had a lawsuit going against his former employer. The supervisor gave negative references and the plaintiff was not hired for any of those jobs. The district court concluded that Mr. Shaver was attempting to manufacture a retaliation claim by baiting his former supervisor into giving negative references.
- There is no "manufactured claim" exception to the retaliation provision of the ADA. Rather, the law focuses exclusively on the conduct of the alleged retaliator in determining whether the aggrieved plaintiff has a claim.
- negative job references can constitute adverse, retaliatory action

*Doebele v. Sprint/United Management Co.*, 342 F.3d 1117 (10th Cir. 2003).

- A plaintiff's prima facie case, plus evidence that the defendant's reasons for the adverse action were pretextual, may be adequate to defeat a motion for summary judgment.
- The plaintiff need not show both that the defendant's reasons were a pretext and that the real reason was discrimination--the pretext alone may allow the inference of discrimination


RECEIVED
JUL - 3 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

**Retaliation Claim – Claim was filed immediately after the first occurrence of defendant's retaliatory employer references.** Plaintiff has attached proof of the EEOC Retaliation claim no. 570-2007-00606. Plaintiff filed this claim in February 2007, after NRI, temporary employment agency refused to send plaintiff on temporary job assignments as well as other employment agencies due to the defendant's retaliatory employer references.  [2]Plaintiff filed first EEOC claim in December, 2006. **See exhibit I – Retaliation Claim and letter to NRI**

**Negative/ Lack of Job References** – **Potential employers denied plaintiff employment due to defendant's retaliatory employer references.** During several conversations with the EEOC investigator, I was informed to remove ACE from resume to ensure employment. However, potential employers questioned the long lapse of time from previous employer, the National League of Cities. Unemployment compensation was approved by EEOC under constructive discharge after plaintiff experienced failure in securing employment due to the lack of job reference and negative job references. The Omni Sheraton Hotel and TIAA-CREF was interested in hiring plaintiff until receiving defendant's retaliatory employer references. All interest in plaintiff ceased after defendant's retaliatory employer references. Circumstantial evidence is apparent to the defense by their before (Nov. 06) denying and later (June 07) offering of job references! ***Plaintiff has suffered without permanent employment at earned salary and health benefits during this time***. **See exhibit II – ACE resume  & Emails from potential employers interested in hiring plaintiff,** [3]**but employment was denied after receiving negative job references or lack thereof.** .

---

[2] The defendant seems proud to submit documents on my behalf due to my lack of knowledge as *pro se*.  Therefore, I will not overwhelm the court with documents that have already been received. However, I have nothing to conceal from the court and will provide in the immediate future all documents pertaining to my case.
[3] *Hillig v. Rumsfeld*, 381 F.3d 1028, 94 FEP 747 (10th Cir. 2004). **Panel**: HOLLOWAY, McWilliams [O'BRIEN, dissenting]. **Claim on Appeal**: Title VII retaliation . **Disposition Below**: Judgment as a matter of law after a jury verdict [defendant]. **Outcome on Appeal**: Reversed, reinstating $25,000 verdict [plaintiff]. **Grounds**: Plaintiff claimed that retaliatory negative job references damaged her ability to be transferred to the Department of Justice. District court erred in legal conclusion that a plaintiff establishing an "adverse employment action" had to prove the loss of a specific job. Circuit standard is that act that causes more than de minimis impact on plaintiff's future employment opportunities is actionable (*noting split in circuits, citing support from Third, Ninth and D.C.*

## Request for Job Reference

After the neglect of NRI, plaintiff signed up with several employment agencies and was informed

verbally that it was illegal to give me a copy of the job references from ACE because it was

unfavorable. NRI, Ford Agency, Graham Staffing, Friends & Co. and George Washington

University to name a few, also informed me to remove ACE from my resume after I was turned

down for employment due to the reference. I have attached copies of prior job references that

assisted in securing the job at ACE. Job references are important in securing employment for

people they show the experience, etc. court should be aware of importance.

**See exhibit III – Letter to Coleen Collins & Positive Job References. Note: No history of**

**plaintiff being "rude" but in comparison "cheery demeanor" noted on references.**


Plaintiff to note that on letter of probation, no where did it mention problems with work

performance. The note even mentioned that I had tremendous potential as an employee of ACE

and HED. This mention is not being addressed in any job reference due to retaliatory employer

references to cause malicious and reckless harm to plaintiffs financial state because of the filing

to EEOC in December 2006. [4]Also defendants did nothing to address complaints by the plaintiff.

**See exhibit IV. – Last page of letter from Christine Morfit, Executive Director of HED .**

---

*Circuits).* District court's analysis conflated "adverse" action with parallel (but analytically distinct) "tangible employment action" under *Faragher/Ellerth* .


[4] **(McInnis v. Fairfield Communities, Inc.,** 458 F.3d 1129, 98 FEP 1194 (10th Cir. 2006) . **Panel**: EBEL, Murphy, Hartz. **Claim on Appeal**: Title VII retaliation. **Disposition Below**: Judgment after a jury trial ($90,000 back pay, $38,000 compensatory damages, $167,000 punitive damages) [plaintiff]. **Outcome on Appeal**: Affirmed [plaintiff]. **Grounds**: Punitive damage award affirmed over *Kolstad* defense; sufficient evidence established that the employee complained through multiple levels of company up to vice president about supervisor's harassment, who then made decision to terminate her. Management employees were trained in requirements of Title VII. (Dictum regarding whether employer could be held liable directly for punitive damages for management-level misconduct.) Although employee issued complaints for over a year, company failed to respond to complaints or take corrective action. Because employer tool tangible employment action, it was not entitled to *Faragher/Ellerth* defense. In any case, record included evidence that employee followed employee

3

### Lack of Attorney

I have attached information to show the court that I did everything possible to obtain legal advice.

Unfortunately, I don't have enough money to afford an attorney and trying to find a Pro Bono

attorney is like looking for a needle in a haystack!

**See exhibit V. - Email from attorney, letter from legal chapter and receipt of paying**

**consultation fees.** Several attorney's would charge me $10,000, and $250.00 per hour and later

informed me that the cost of representing me would not pay off.

### Pleadings and Prayer

*Therefore, in absence of not being able to afford an attorney, the plaintiff pleads for mercy on the*

*court in the absence of quoting law and citations. Of course, I am a not match against the*

*attorneys representing the American Council on Education, but I believe that justice will prevail*

*and that the court will see the apparent (pretext) excuses the defense has used to discriminate*

*against one individual of African-American woman, single and hardworking mother of U.S.*

*citizenship. I pray for desperate and sincere assistance in need by the court in providing justice. I*

*pray that the defendant will not cause further harm due to my lack of knowledge in the law. I am*

*helpless. I pray.*

Jacqueline T. Robinson-Reeder/ 2140 Brooks Drive, /#421 District Heights, Maryland  20747

301-633-7791 – Cell phone/301-967-1092 – Home phone

---

handbook procedures. No error in refusing instruction on "fear of retaliation" not being a legitimate reason for
failing to follow a reasonable procedure to report harassment, where employer took tangible employment action.
Challenge to wording of *Kolstad* defense waived. E-mails written by one of the managers who allegedly retaliated
against plaintiff excluded as hearsay; e-mails not admissible as FRE801(d)(1)(B) prior consistent statements,
FRE803 state of mind, or FRE1002 best evidence; at any rate, exclusion was not prejudicial because manager
was able to testify at trial about the substance of the excluded e-mails. District court erred in denying plaintiff
Rule 54(d) costs without findings supporting decision. Because court found that reinstatement was infeasible, it
erred in denying front pay in light of uncontested evidence that she would not be able to find comparable
employment in the community, and that her current employment pays less and requires longer commutes.
Regarding attorneys' fees, district court did not err in denying plaintiff discovery into defense fees, but it erred in
denying plaintiff leave to file a reply brief to the opposition to fees. Fee awrd was vacated, though court noted
that there was nothing "intrinsically wrong" with the bottom-line outcome of the judge's findings on the
reasonableness of the hours or lodestar.[4]

4

## Certificate of Delivery

I, Jacqueline T. Robinson-Reeder, mailed a copy of the
Amendment to Motion for Summary Judgment on today's date
July 3, 2007 to the defendant in my case listed below.

_Jacqueline T. Robinson-Reeder - Plaintiff_                    July 3, 2007

Christine N. Kearns
Pillsbury Winthrop Shaw Pittman, LLp
2300 N Street. N.W.
Washington D.C.  20037



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Washington Field Office**

*(EXHBIT I)*

1801 L Street, N. W., Suite 100
Washington, D. C. 20507
(202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Toll free (866) 408-8075
General information (800) 660-4000

# INTAKE QUESTIONNAIRE
(LOCAL USE FORM 283)
This form is covered by the Privacy Act of 1974. See the Privacy Act
Statement on the last page of this document before completing this form.

EEOC USE ONLY
INQUIRY #: *Amendment*
*5N-2007-00606*

**Please print your answers to the following questions. When finished, sign and date on Page 5.**

First Name: *Jacqueline*  MI: *T*  Last Name: *Robinson Reeler*
Address: *2160 Brooks Drive*  Apt. *431*
City: *Forestville*  State: *MD*  Zip Code: *20747*  County: *PG*
Telephone #: Home ( *301* ) *967-1570*  Cell (  )
Work (  )
Email: *Georgia28@comcast.net*
Date of Birth: *3.28.55*

Gender: [  ] Male     [ X ] Female

Race: [ / ] Black  [  ] White  [  ] Other Race _____
[  ] American Indian or Native American   [  ] Asian or Pacific Islander

National origin: [  ] Mexican  [  ] Hispanic  [  ] Arab, Middle Eastern
[  ] East Indian  [  ] Other _____

Provide the following information for a person we can contact if we are unable to reach you:

First Name: *Robert*  MI: _____  Last Name: *Reeler*
Address: *Same as above - Husband*  Apt. _____
City: _____  State: _____  Zip Code: _____  County: _____
Telephone #: Home ( *301* ) *536.3437*  Cell (  )
Work (  )

You believe you have been discriminated against because of: (*Check all that apply*)

[✓] Race    [ ] Color    [ ] Religion    [ ] National Origin

[ ] Age (40 or above)    [ ] Disability    [ ] Sex    [ ] Pregnancy

[✓] Retaliation for *Filing EEOC case*

If you checked "retaliation," have you ever previously filed a charge with EEOC or another civil rights agency or complained to your employer about discrimination?

[ ] No [✓] Yes –If yes, please explain: *CHARGE No. 570-2007-00606C*

## COMPLAINT INFORMATION

For any block(s) that you checked above, describe the harm and how you feel you were discriminated against. Include names and job titles of all those involved, and the dates you were harmed.

*I Filed my charge on Dec 16, 2006 and have been informed that I have received negative - BAD JOB references from my Employer. I have not been able to find employment since my resignation on Nov 7 2006.*

*I have signed up w/ several employment agencies and have been informed to remove my most recent jobs from my resume and that my employer is telling potential employers that I was fired on Nov 7, 2006 instead of my resignation. I am presently receiving unemployment at $1,296.00 per month vs $2,718.00. I cannot afford my*

What reason(s) did your employer give for the action(s) taken against you? Or, what do you believe the employer will tell the EEOC?

*Please see attached note explaining details.*

*Bills + Son's. Truth and fur big deserve*

*I declare under penalty of perjury that the information provided herein is true and correct to the best of my knowledge and understanding.*

X _____      X _____
       Signature                                 Date

Privacy Act Statement:

This form is covered by the Privacy Act of 1974, Public Law 93-579. Authority for requesting and uses of the personal date are given below.

    1. Form Number/Title/Date: Form 283, Intake Questionnaire, 10/94.

    2. Authority: U.S.C. 2000(e)(9), 29 U.S.C. 201, 29 U.S.C. 621

    3. Principal purposes: Provides information from the Charging Party relevant to filing a charge of discrimination.

    4. Routine uses: This questionnaire is used to make an official determination whether facts exist to prepare a charge of discrimination.

    5. Whether disclosure is mandatory or voluntary and effect on individual for not providing information: Voluntary. Failure to provide this information may affect whether the Commission processes your claim further.

Revised 6/06

-5-

Notification of Premature Dismissal - Jacqueline T. Robinson-Reeder
Charge Number - 570-2007-00606

The written charge particulars are:
**"UNFAIR PROBATION FOR BEING RUDE TO EMPLOYEES PENDING TERMINATION"**
There is no statement of the employee supervised mentioned in the particulars of the charge.  If the EEOC had followed the particulars of the charge it would have determined the favoritism of the white staff —instead of relying on quotes from an employee that was forced to resign under several reasoning's of intolerable working conditions.

---

**Complaint under Title VII of the Civil Rights Act of 1964.**

**White staff were treated more favorably during problems with installing PeopleSoft than black employee. They were granted transfers and promotions during the installation difficulty. The black employee encountered same difficulties, but received probation and threats of firing after complaining. The probation letter outlines the "rudeness" as main reason of probation.**

**I have secured written proof/evidence from one (1) white employee that endured the same negligence installing the people soft program and was transferred immediately after complaint with supervisor**

---

Complaints to management from black employee were ignored regarding the installation coupled with the complications of supervising the insubordinate office assistant favored by Human Resources and management.  The result of both working conditions became intolerable after probation was rendered.  Management and Human Resources failed to provide assistance in improving the working conditions.  Therefore, I found the intolerable working conditions uncontrollable and was forced to resign.

I believed I could find a better working condition on a new job, I seeked employment immediately and found shortly thereafter that ACE informed potential employers that I was "fired."  These conditions made immediate reason for the complaint filed with the EEOC.  Unfortunately, the EEOC used the condition of favoritism to dismiss my case and overlooked the issues of proven racism and retaliation.

---

*Investigator failed to adhere to the primary reason for the charge/complaint: "Unfair probation for being rude to employees pending termination." Dismissal of my charge is based on information discussed with the intake staff based on my belief of why I was put on probation. Therefore, the investigation of the particulars of the probation mentioned in the charge was ignored by the EEOC. No where in the particulars is there discussion regarding the discipline problems as superior to the unfair probation pending termination of my position at ACE.*

---

The intolerable treatment is working under inappropriate probation, not knowing when I was going to be fired without the opportunity to address the false accusations of "rudeness to ACE employees."  Ms. Wadlington enhanced the intolerable working condition but was not the primary reason of the intolerable working condition.  **The inappropriate probation is the reason for filing the EEOC charge and it was ignored.**

My resignation was written on the same day as receipt of the probation letter, November 6, 2006.  I complained about the need of disciplining the employee to H.R. in early October and had several meetings with employee as well.  If this problem was primary, I would have quit during October or filed my charge during the weeks in October.

The investigator's interpretation of my discussion with the intake staff is incorrect.  The intake staff person assured me that the unfair probation for being rude would be investigated when I tried to explain in detail to him the importance of my race playing a factor in the decision to put me on probation pending firing.  He was in a huge rush and stopped taking notes through my explanation because he said the EEOC closed at 4:30 p.m., and asked me to return another day to sign it.

Jacqueline T. Robinson-Reeder – Page Two

My reason for filing the charge with EEOC is due to the sole eagerness of ACE to "fire me" due to my race under untrue accusations. Therefore the charging party has determined that the investigator is eager to dismiss the charge based on the discussion of disciplining the employee mentioned with the intake staff.  The intake staff asked why I thought the probation was written and I mentioned the employee supervised as one of many reasons I believed.  Not the primary reason.

### Verbal warning absent/Confirmation of alleged rudeness not done with employee
Employee received no verbal warning or the ability to refute statements of "rudeness" which is considered fair employment law. 30 day probation was deemed harsh while employee was already under 60 day probation for new hires.  None of the statements used profanity and the quote "I want to talk to someone who knows what they are doing, I have 15 years experience, etc., is exaggerated. Furthermore, this sentence reflects a need for assistance out of desperation and negligence.  The 15 years of experience language was stolen from my resume and I never said this to anyone.

The letter also threatens that if another complaint is confirmed in 30 days that I would be terminated.  The other complaints were not confirmed with me.  And since, I was being disrespected daily by the person I supervised a complaint could have easily been initiated by Ms. Wadlington, which would have resulted in my being "fired" as the last complaint.  My complaints regarding this staff person was ignored and she was left to run amok and felt safe to speak to me in any manner.  I had no support by management or Human Resources in dealing with this intolerable working condition.

During my visit to ACE, I thanked everyone personally who tried to help me, I went so far as to embrace staff and search for supervisors to render compliments.  This behavior can be proven nor does it sound rude, but more like an employee that is being treated unfairly.  I believe that I was the first black executive assistant at HED and a stereotype was used to personalize me which was all wrong.

### Loss of employment due to bad references stating "fired" instead of resignation by ACE
I have experienced the loss of temporary or permanent employment because of the negative references given by ACE. ACE has told potential employers that I was "fired" instead of my resignation.  Time has proven to find this a fact.  I filed a retaliation charge on February 12, 2007.  I intend on filing my complaint in court immediately.

My annual salary was $50,000.00 at ACE.  Why would I walk away from a job if the conditions were not intolerable?  I can't find a temporary or permanent job in my field where there are many EA/AA positions available because of the unfair references given by ACE.   I resigned because my supervisor threatened to fire me without confirming any prior accusations with me.  I intended on preserving my outstanding reputation in the work field, but ACE has successfully ruined my financial ability to pay for my son's tuition at Bowie University and to care for household.

**Working under Intolerable conditions:**  My reputation with prior employers was excellent and I have never been accused of being rude to anyone. There is no history of these accusations in my work ethic. As a matter of fact, I was well liked by the HED board members, attended and assisted HED staff at the annual meeting where no complaints were rendered. Why all of a sudden I turned into this rude employee that needs discipline without any verbal warning or consultation which is fair workplace law?  Because I am a black woman.

**Retaliation Charge:** *I deserve a comparable job at the ACE location where I can continue to provide for my family with respect and dignity.  If EEOC takes the time to at least consider that the probation was inappropriate and address my retaliation charge, the comparable job at ACE would only be fair regarding negative references they supplied to potential employers.*

I believe that if the EEOC addressed the president of ACE to allow me the opportunity to be re-hired in a comparable position that I could gain employment and resume my career.

Jacqueline T. Robinson-Reeder

cc:  Dana Hutter, Director of EEOC, Janet Stump, Enforcement Supervisor, Kyle Wegner, Investigator

EXHIBIT 1

January 5, 2007

To:      Ms. Teneyck, Claims Examiner
          Fax No. 202-698-5707   0 5704
          Claims Examiner

From:    Jacqueline T. Robinson-Reeder
          Social Security #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/Phone No. 301-967-1570

Subject:   Unemployment Compensation benefits

I was constructively discharged from my job on Monday, November 6, 2006. **(See attached EEOC charge No. 570-2007-00606)**.  On Thursday, November 2, 2006, I seeked assistance from H.R. and the executive director in handling insubordination from the office assistant that I supervised. The shared working area became very unhealthy since the hire of the office assistant during the month of October 2006, and quickly became worse each day thereafter. I was disrespected and harassed when I assigned tasks. Due to the office assistant's loud singing, marching and playing on the phone daily in an open area that we shared, I could not concentrate on my work.

After I complained and attempted to seek assistance from the executive director and H.R. director to manage the intolerable working conditions in the front office referring to the office assistant's behavior on November 2, 2006, unexpectedly on Monday, November 6, 2006, the executive director and the H.R. director put me on <u>30 day probation pending termination</u> after they coerced staff members that I didn't work with to issue complaints against me.

Without warning I was called to H.R on Monday, November 6, 2006 and was given a 30-day probationary letter dated November 6, 2006, one day after I complained on Thursday, November 2, 2006.

<u>My employer simply informed to me that the office assistant was related/friends to the H.R. associate and that I had to withstand the unhealthy working environment without further complaints or be fired.  Later, after returning to my office, I was forced to resign from my job on Monday, November 6, 2006, due to working under intolerable conditions.  I wrote my resignation letter to include the mandatory 2 week notice, effective November 27th, but was forced to remove my personal belongings and was escorted to the elevator on November 6, 2007.</u>

My work performance was excellent and the complaints from ACE staff were not true. I was already under a 60 day probationary period mandatory for new hires. There were no complaints from HED staff where I worked daily. The interaction that I had with staff located at ACE occurred in September and early October 2006, and these complaints were untrue and exaggerated. I never received the opportunity to address the accusations with reasoning, never received a verbal warning or the opportunity to attempt to dispute the confusion. In addition, the timing does not add up. Why would staff wait until November to complain against me and more importantly why would the letter be written on November 6, 2006, instead of September or October when the alleged rudeness occurred?

After resigning, I immediately contacted the temporary agency that assisted me with finding the job at HED. I contacted NRI on November 7, 2006, and was ready to start looking for immediate employment. I also contacted the Ford Agency, another temporary agency the following week and went on more than 3 interviews for temporary assignments. To this date, I haven't been hired to do temporary work. It is highly unusual that I can't secure a temporary job because my field has many openings for administrative needs.

I filed a charge with the EEOC on December 15, 2006, after being constructively discharged and denied temporary to hire employment. I have always been able to find temporary work without the need to file for unemployment compensation. I believe ACE is giving out bad references and has refused to write a letter of recommendation to ensure my future employment, to cause my financial embarrassment. I am hoping that EEOC can advise my next steps while I wait for income.

I believe that I will find a job and my situation will improve before it becomes any worse. I am not giving up.

The person handling my investigation at EEOC is Ms. Janet Stump. She can be reached at 202-419-0736/Fax No. 202-419-0739. Please grant my unemployment compensation while I still seek employment. If you need any further information, please let me know.

Thanks so much,

Jacqueline T. Robinson-Reeder

*Exhibit II I - letter to NRI*

March 12, 2007

Mr. Robert Mulberger
President/CEO
NRI Employment Agency
Washington, D.C.

Dear Mr. Mulberger:

I believe that your agency has treated me unfairly due to my inability to work under unhealthy conditions at the American Council on Education in the Higher Education Office for Development. I was assigned a temporary position at HED through your employment agency in June of 2006. I was hired permanently in September 2006. You received your fee for my hire and unfortunately, my position withstood many complications after my hiring. I never received orientation, was left to install technical equipment alone and was forced to supervise the H.R. associate's immature relative. The working conditions at HED became intolerable daily while I struggled to maintain my job.

My work performance was excellent and my position in assisting the Executive Director was well received. However, when I complained about the insubordination of the office assistant that I supervised, I received no assistance from Human Resources or management. The outcome was an inappropriate probation with a threat of being fired approximately one day after the H.R. Associate screamed at me in the front office while employees witnessed her behavior. I found it necessary to resign from this position immediately to keep my untarnished reputation intact and to find employment with a healthier environment.

I contacted Crystal Hall the day I received the probation letter on November 6, 2006, to make sure that NRI had received their fees and after doing so, informed her that I found it necessary to resign from my job. I should be rewarded for my loyalty to NRI to ensure that your fees were received before resigning from my assignment.

Ms. Hall said she would assist me in finding another position, but played games of ignoring my calls, for a month until I had no choice but to register with another employment agency to find a job. I later determined that ACE was giving references that I was fired instead of my resignation. I am struggling to find employment while receiving no empathy for the pain I endured to keep my job.

I cannot believe that NRI would treat an employee in this manner. When I needed your agency most, you turned your back on me. I have had no choice but to file a complaint to report this behavior to the Equal Employment Agency Commission, The Federal Trade Commission, Bureau of Consumer Protection and the Better Business Bureau.

I have visited your webpage and witnessed many positions that I qualify for. NRI has advertised positions for Executive Assistants in the Washington Post every Sunday. Donna, the account manager told me to call Crystal Hall daily to beg for assignments, while she continues to ignore my calls.

The bottom line is that NRI has refused to assist me in finding another position for discriminatory reasons. I don't deserve to be treated like this when I represented NRI in a professional manner until my day of unemployment.

Sincerely,

Jacqueline T. Robinson-Reeder

## Jacqueline Robinson-Reeder

| | |
|---|---|
| **From:** | "Jacqueline Robinson-Reeder" <georgia28@comcast.net> |
| **To:** | "Mulberger, Robb" <mulberger@nri-staffing.com> |
| **Sent:** | Thursday, March 29, 2007 10:49 PM |
| **Subject:** | Sincere gratitude! |

Hello Mr. Mulberger:

Thanks for your response and assistance it was deeply appreciated. I have spoken to Crystal and all is well!
Respectfully,
Jackie Robinson-Reeder

------ Original Message -----
**From:** Mulberger, Robb
**To:** Jacqueline Robinson-Reeder
**Cc:** Konopka, Dori ; Hall, Chrystal
**Sent:** Wednesday, March 28, 2007 2:06 PM
**Subject:** [SPAM] RE: NRI Temporary Employee - Complaint

Ms Robinson-Reeder –

I have talked to the NRI people you have been dealing with.

We are sorry for the difficulties you had at ACE... and we will be glad to work to assist you to find a position...
recognizing that we don't always have positions that are a good match for your background, desires and skills.
It is always in our interest to find people jobs and often it takes us a day or two to get back to someone with
information of value.

If you wish us to work on your behalf again... just call (don't email) Crystal Hall at 202.628.3022 and tell her so.

Thank you again for writing and telling me of your situation.

Robb Mulberger


-----------------------------------------------
**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Monday, March 12, 2007 12:26 AM
**To:** Mulberger, Robb
**Subject:** NRI Temporary Employee - Complaint

March 12, 2007

Hello Mr. Mulberger,

I have attached a letter for your review. I hope you find time to read it.  Your input
to your staff is important to teach them how to handle difficult situations for employees.

Thank you so much,
Jacqueline T. Robinson-Reeder

## Jacqueline Robinson-Reeder

| | |
|---|---|
| **From:** | "Mulberger, Robb" <mulberger@nri-staffing.com> |
| **To:** | "Jacqueline Robinson-Reeder" <georgia28@comcast.net> |
| **Sent:** | Monday, March 12, 2007 12:40 PM |
| **Subject:** | [SPAM] RE: NRI Temporary Employee - Complaint |

Ms Robinson-Reeder –

Thank you for your email and accompanying letter.

I will look into this matter immediately…and get back to you soon. I am traveling the latter part of the week…. so it might not be until early next week until I am able to respond.

Again – thank you for drawing this to my attention.

Robb Mulberger

---

**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Monday, March 12, 2007 12:26 AM
**To:** Mulberger, Robb
**Subject:** NRI Temporary Employee - Complaint

March 12, 2007

Hello Mr. Mulberger,

I have attached a letter for your review. I hope you find time to read it.  Your input to your staff is important to teach them how to handle difficult situations for employees.

Thank you so much,
Jacqueline T. Robinson-Reeder

Jacqueline Robinson-Reeder

*EXHIBIT I*

**From:**     "Hall, Chrystal" <chall@nri-staffing.com>
**To:**       "'Jacqueline Robinson-Reeder'" <georgia28@comcast.net>
**Sent:**     Wednesday, January 17, 2007 11:18 AM
**Subject:**  RE: Positions for Jackie Robinson-Reeder

Hey there,

I left you a message. Give me a call back at your convenience. I have something to share with you. 202-661-4262....thanks.

CH

-----Original Message-----
**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Tuesday, January 09, 2007 6:13 PM
**To:** Hall, Chrystal
**Subject:** Positions for Jackie Robinson-Reeder

**January 9, 2007**

Hello Crystal,

I have revised my resume and have pasted some openings from your web site
below.  All of these positions are
ideal and you know I will interview well. I hope you don't feel that I don't
appreciate having a job because of my
resignation. I have been on a quest for a peaceful working environment and
probably need to realize that
the peace resides in me!  Bless you in the New Year and take care, Jackie:}

Contact: Joe Gilman

Phone: 301-998-4673

**Executive Assistant**
Location: Rockville, MD
Salary: 40K-60K

One of the most prestigious commercial real estate companies in the DC Metro area is on the
lookout for an Executive Assistant to support their Managing Director. This position is ideal for
someone who truly enjoys the administrative field, and is looking for a chance to excel within a
marvelous company. The right person will be a self starter, have excellent attention to detail, be
able to multitask, and really be able support someone as a "right-hand" person. Interested
candidates should send their resume in Word format to Joe Gilman at jgilman@nri-staffing.com.
Qualified candidates will be contacted for further consideration.

**Executive Assistant**
Location: Bethesda, MD
Salary: 48-55K

Contact: Eddie Cardona
Phone: (301)230-0400

Growing consulting company seeks motivated Executive Assistant with an upbeat/can-do attitude
with a proven ability to obtain results. This person will be responsible for supporting two Vice
Presidents. Duties include setting up travel arrangements, scheduling meetings, creating

**Jacqueline T. Robinson-Reeder**
*2140 Brooks Drive, # 421*
*Forestville, Maryland 20747*
*Phone No. 301-967-1570/Email: georgia28@comcast.net*

<u>**Summary of Qualifications:**</u> Superior organizational skills. Over 15 years of office experience holding positions as Office Manager, Executive Assistant, or Administrative Assistant. Excellent office manager or executive assistant. Professional and dedicated employee.

<u>Job Experience</u>

**American Council on Education**
**Higher Education for Development**
**1 Dupont Circle**
**Washington, D.C. 20005**

**June 2006 to November 27, 2006**

*Office Manager/Executive Assistant to*
*Executive Director, Higher Education for Development*

Office manager and served as liaison with property managers of two buildings to include responsibility for paying office invoices by assigning federal billing codes using software applications to generate payment, assume building security role and assist staff with computer problems by alerting technical support. Responsible for updating and maintaining office filing system of federal grant agreements.

Provided expertise in meeting planning and maintaining calendar appointments for executive director. Facilitated large volume of communication on behalf of the director through telephone, correspondence and electronic mail. Answered correspondence and inquiries, with research where needed. Wrote letters of approval or rejection for federal grants to college universities. Responsible for preparing sub-agreements, office invoices and staff attendance records for executive director's signature.

Arranged travel itineraries for executive staff, consultants and Advisory council members. Completed travel expense reports by using database program to reimburse executive staff. Created and maintained tracking systems for large volume of office information, including correspondence, reports, and agreements of cooperation with higher education institutions and associations. Maintained confidential information, reviewed monthly office expenditures and assisted with official records pertaining to federal grants. Typed and edited large reports to USAID.

Responsible for assisting staff with preparation of workshops for annual meetings and conferences under direction of executive director. Duties include working with hotels for arranging meeting rooms, accommodations, catering and rooming lists for participants. Reviewed and approved invoices from hotels for payment. Prepared meeting materials by research, duplicating, coordinating and assembling notebooks for handout to boardmembers and association vice-presidents.

Coordinated and arranged special pick-up and delivery of government contracts for CEO's signature to headquarters. Trained and supervised work priorities for office assistant and temporary staff. Greet and screened visitors for executive director. Represented HED at departmental meetings held at headquarters. Oversee approval on office supplies and furniture expenditures. Supervised office assistant and temporary staff.

**National League of Cities**
**1301 Pennsylvania Avenue, N.W.**
**Washington, D.C. 20004**

**February 2002 to May 8, 2006**

*Administrative Assistant to*
*Program Director, Education & Afterschool Initiatives*
*Institute for Youth, Education & Families*

Provided administrative support for Program Director and senior staff in the Institute for Youth, Education & Families. Responsible for assisting program staff with preparation of workshops and annual conferences. Designed and prepared evaluation questionnaires and coordinated materials for the Education Policy Advisors Network and Leadership Academy meetings scheduled several times a year. Performed outreach to improve meeting participation by calling direct member city mayor's for targeted city populations. Assisted program staff with research by using the Internet and Municipal Reference Service library.

Managed registration, set-up database to generate participant lists, name badges and rooming list. Collated handout material and designed cover for notebooks distributed to local elected officials. Responsible for coordinating and shipping materials to the Washington Hilton and out-of-town hotels. Represented NLC at registration desk to hand out badges, materials and assist staff with meeting room set-up.

J. Robinson-Reeder – Page Two

Negotiated and generated the Request for Proposal and contracts to hotels for hosting all meetings for the Education and Afterschool Initiatives team. Conducted site visits to hotels in D.C. and out-of-town. Responsible for selecting banquet orders, reviewing contracts and approving the master billing. Arranged travel itineraries and approved airline tickets on NLC's American Express Travel account for city officials and executive staff to attend meetings. Filed expense reports for reimbursement to executive staff and board members after attending meetings.

Arranged and maintained consultant contracts for payment and reference codes paid out of the Bill & Melinda Gates funds. Approved consultant invoices for payment and submitted monthly vouchers to Finance Department.

Scheduled bi-monthly conference calls for program director by using Microsoft Outlook to arrange reporting procedures on technical assistance program with the superintendents of schools, mayor assistants and board members. Developed and organized electronic database of key city, state and national contacts in the education and afterschool community. Typed large records of city official's data in Excel database spreadsheet for analyzing city participation to generate reports.

Created filing system of city programs for program director and maintained city official's database to generate merged letters under director's signature. Reviewed resumes and contacted applicants to schedule interviews for Human Resources and department directors. Responsible for conducting office orientation for new hires. Provided administrative back-up support for Executive Director, Institute for Youth, Education & Families.

**National League of Cities**
**Office of Policy & Federal Relations**

*Office Manager/Administrative Assistant to Center Director*
*August 1992 to February 2002*

Office manager for department of 15 people. Served as administrative assistant to executive staff. Responsible for assisting the Center Director and senior legislative counsels with preparation of workshops for the annual City Congressional Conference. Designed and edited the "Hot Issue papers" for legislative workshops written under the National Municipal Policy. Responsible for designing and editing the bi-weekly State Municipal League newsletter to executive directors. Maintained the database records for distribution of the newsletter. Ordered all meeting materials from print shop to distribute at workshops held at the Washington Hilton and out-of-town meetings. Organized and determined selection of membership participation for representation of each state at the annual Resolutions Committee Meeting.

Responsible for proofing, editing and finalizing merged letters to Congress. Maintained congressional database for Senators and House of Representatives. Searched via Internet for House and Senate bills for mark-ups on Capitol Hill for legislative assistants. Responsible for editing the National Municipal Policy under the supervision of policy analysts for five policy committees. Produced, supervised and arranged delivery for all Congressional mailings to Capitol Hill on behalf of NLC. Typed charts and legislative articles for Nation Cities Weekly paper

Responsible for arranging the billing system and paying subscriptions for the Congressional Daily, Quarterly and the Federal Register, etc., to include large subscription of magazines. Held responsibility for orientation of new staff and assisted in selecting new hires, scheduling interviews and providing assistance to Human Resources.

**Woodward & Lothrop Department Store**
**10th G Street, N.W.**
**Washington, D.C.**

*November 1979 to August 1987*
*Executive Assistant/Special Events Assistant – Men's Buying Office & Public Relations*

Executive assistant to divisional vice-president in Men's buying office. Prepared financial reports and selected advertising ads for newspapers. Prepared vouchers for buyers merchandising trips. Screened calls for DVP, arranged meetings on calendar and greeted local merchants attending boardroom meetings.

*Special events assistant to Public Relations director* - Responsible for coordinating special events with event planners. Maintained database of lawyers, doctors and city officials for purposes of invitation to special events. Typed press releases and special events reports for staff. Handled all customer complaints verbally and filed reports in Business office. Maintained records of office expenditures and held responsibility for providing cash reimbursements to customers and staff. Assisted donations coordinator with selecting shelters and businesses to donate retail merchandise. Served as the hostess for Breakfast with Santa and Model Rooms annual event hosting the Mayor of D.C. Paid models, consultants and miscellaneous vendors by submitting vouchers to the Cash Office. Responsible for distributing tickets and prizes for radio promotions to the winners. Supervised Intern.

## Education
Cardozo High School, Washington School of Secretaries, Prince Georges Community College – Studying courses in Business Management
Certificate courses: *Career Development, Interpersonal Communication, Management Support Workshop, Business Writing*
Computer Skills: *Advanced in Microsoft Word, Outlook, PowerPoint and Excel.*

Excellent letters of references available, 10 years of superior performance evaluations.

## Jacqueline Robinson-Reeder

*EXHBIT II*

**From:** "TIAA-CREF Human Resources" <Careers@tiaa-cref.org>
**To:** "Jacqueline Robinson-Reeder" <georgia28@comcast.net>
**Sent:** Monday, February 05, 2007 8:00 PM
**Attach:** current_email_in_html.html
**Subject:** [SPAM] Administrative Assistant-1681797 at TIAA



February 5, 2007

Dear Jacqueline Robinson-Reeder:

We have received your resume for the position of Administrative Assistant-1681797 and are currently reviewing your experience and
qualifications.
A preliminary review of your candidate profile indicates that you may meet the pre-selection criteria for this position. However, the
following information may be missing:

U.S. Equal Employment Opportunity/Affirmative Action Information
Plain Text Resume
Plain Text Cover Letter
Additional Information
To consult your candidate profile and check for any missing information, click here.

To learn more about TIAA, please visit us at www.tiaa-cref.org.

Sincerely,
TIAA Talent Acquisition Department

Replies to this message are undeliverable and will not reach the Human Resources Department. Please do not reply.

*I rec'd several
Home phone calls from H.R.
Representative. She informed
me of her need in Job References
from Ace*

*Later, about 2 weeks
after when I called her
she was not interested and
asked me not to call her again.*

*I declare this
is a true & honest statement*

*Jacqueline R. Reeder*

7/3/2007

EXHIBIT II

January 24, 2007

To:        TIAA-CREF
           Human Resources Manager

From:      Jacqueline T. Robinson-Reeder
           Candidate for Administrative Assistant position

Subject:   Administrative Assistant position
           Washington, D.C.

Hello and Good Day!

I have attached my resume for your immediate consideration. I have worked at the National League of Cities for 14 years and continued my career briefly at the American Council on Education. My choice of career in the Education field has allowed my knowledge of your organization and therefore, I am a customer of your 401K retirement package.

I have worked with your D.C., office and retirement staff over the years and have been highly impressed with TIAA-CREF customer service. I am very excited to have this opportunity to apply for the Administrative Assistant position at the Washington, D.C., location.

If given the opportunity, I would definitely become an asset to your company. I have been highly regarded as a dedicated and hard working employee with outstanding performance evaluations during my career at NLC. I have enjoyed the responsibility for representing NLC at their annual conferences, arranging meetings with councilmembers, board presidents, and the U.S. Congress, as well as providing outstanding administrative support to senior staff. You will find my experience a plus in this position.

Please take a moment to arrange this interview. I would be a great fit for your organization. My dream job would be to retire at such a wonderful and exciting organization like TIAA-CREF, where I know the people are a pleasure to work with and the organization is committed to providing excellent customer care to their clients, which is something I believe in and can perform with a big smile!

I can be reached at (301) 967-1570. Thank so much for this opportunity and have a great day!

Best regards,

Jacqueline T. Robinson-Reeder

$EXHIBIT$ $II$

# Jacqueline Robinson-Reeder

| | |
|---|---|
| **From:** | "Jacqueline Robinson-Reeder" <georgia28@comcast.net> |
| **To:** | "Emily Rogers" <erogers@omnihotels.com> |
| **Sent:** | Wednesday, April 25, 2007 6:58 PM |
| **Subject:** | Re: [SPAM] RE: [SPAM] Omni Hotels |

Hello Emily,

You can reach me on my cell: (301) 996-0630 before 12:00 noon to confirm our interview, this will leave me time to catch a cab!
I received another email noting you were on vacation, so I am not sure if we are confirmed for Thursday, April 26th at 12:30 p.m.
Please leave your phone number and directions in case I miss your call. Thanks and I look forward to meeting with you!
Jackie:}

----- Original Message -----

**From:** Emily Rogers
**To:** Jacqueline Robinson-Reeder
**Sent:** Tuesday, April 24, 2007 3:58 PM
**Subject:** [SPAM] RE: [SPAM] Omni Hotels

Lets do tomorrow at 12:30. What number would you like for me to call?


Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street
Washington DC 20008



**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Tuesday, April 24, 2007 3:41 PM
**To:** Emily Rogers
**Subject:** Re: [SPAM] Omni Hotels

Hello Emily,

Thanks for considering my application. I am available during 12:00 - 1:30 pm., any day of the week.

Jacqueline
301-996-0630 - Cell
301-967-1570 - Home

----- Original Message -----
**From:** Emily Rogers
**To:** georgia28@comcast.net
**Sent:** Monday, April 23, 2007 11:08 AM
**Subject:** [SPAM] Omni Hotels


Jacqueline-

I have received your resume for the Executive Assistant position at the Omni Shoreham Hotel and would like to discuss the opportunity with
you further. Please email me times this week that you would be available for a phone interview. Thank you.


Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street

*EXHIBIT II*

# Jacqueline Robinson-Reeder

| | |
|---|---|
| **From:** | "Emily Rogers" <erogers@omnihotels.com> |
| **To:** | "Jacqueline Robinson-Reeder" <georgia28@comcast.net> |
| **Sent:** | Tuesday, April 24, 2007 3:58 PM |
| **Subject:** | [SPAM] RE: [SPAM] Omni Hotels |

Lets do tomorrow at 12:30. What number would you like for me to call?

Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street
Washington DC 20008

**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Tuesday, April 24, 2007 3:41 PM
**To:** Emily Rogers
**Subject:** Re: [SPAM] Omni Hotels

Hello Emily,

Thanks for considering my application. I am available during 12:00 - 1:30 pm., any day of the week.

Jacqueline
301-996-0630 - Cell
301-967-1570 - Home

----- Original Message -----
**From:** Emily Rogers
**To:** georgia28@comcast.net
**Sent:** Monday, April 23, 2007 11:08 AM
**Subject:** [SPAM] Omni Hotels

Jacqueline-

I have received your resume for the Executive Assistant position at the Omni Shoreham Hotel and would like to discuss the opportunity with you further. Please email me times this week that you would be available for a phone interview. Thank you.

Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street
Washington DC 20008

*I spoke w/ Ms Rogers several times and she was very impressed with my skills and experience. After calling ACS for references, I never heard back from them. She refused my calls.*

*I declare this is a true statement,*

*EXHIBIT III*

January 9, 2006

To:            Ms. Coleen Collins
               ACE, Human Resources

From:          Jacqueline T. Robinson-Reeder

Subject:       Employee reference letter

I have been trying to secure a job referral from Christine Morfit. I have left telephone messages, sent e-mail's and have asked temporary agencies to call for references so that I can find employment. All of the requests have been ignored. Therefore, I have been denied employment since November 7, 2006, because there is no reference letter from my prior employer to be obtained.

My performance at HED was productive and there was no problem stated in my letter regarding my job performance other than false and exaggerated verbal accusations. I can find no reason for my employer to behave in this manner to ruin my career and financial well-being because I complained and chose to resign from an intolerable working environment which was documented and started to occur since the employment of LaTisha Wadlington in HED.

After writing my resignation letter on November 6, 2006, to be effective on November 27, 2006, I was asked to remove my personal belongings immediately from HED on November 6, 2006, instead. Due to the short notice of this demand, my husband could not pick me up in the car to hold my boxes. He was working in Bowie, so I had to call my minister. I was devastated and none of this made any sense to me. I could not carry my boxes while walking to the subway station.

Under the circumstances, which seemed like I was being fired, I handled the situation very well and remained professional and dedicated. I volunteered to stay with Christine to assist her with completing the staff's purchase orders, organize my work area for my replacement and show her where the office key's and files were, etc., I stayed until 7:00 p.m. working to organize and prepare the office.

At the end of the day, on November 6, 2006, we did a walk-thru of the office area and I thanked Christine for hiring me. We embraced after working so well together, and she promised to write a reference letter for me, which has been ignored to date, January 9, 2007.

I believe that ACE can find a better way to handle this situation appropriately and with respect towards an employee that resigned.

Best regards, Jackie:}



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

# EMPLOYMENT REFERENCE

**From:** Chrystal Hall

---

**Candidate** Jacqueline Robinson-Reeder

**Company Contacted** National League of Cities

**Person Contacted** Chris Becker

**Date** August 30, 2006

**Phone #** 202-626-3000

**Title** Deputy Executive Director

---

What was your relationship to this person? Supervised on occassions.    For How Long? 4 months.

When did he/she work for your company? (Month/Year)    From 9/92    To 5/06

Do you have the authority to verify salary? Yes ✓    No _____    Earnings Were $ 47,880/yr

Based on their resume, it looks like this person did the following (fill in specifics), would you say this is accurate and is there anything else they did that we've missed?

> Jacqueline has worked for National League of Cities (NLC) for quite some time. However, I supervised Jacqueline intermittently on occassions when there where vacancies in the Policy and Federal Regulation deparments. Her main responsibility at those times were mostly production of reports and letters that needed to go out to members of Congress.

On the average, how often would you say this person was late or missed work?

> Jacqueline was very reliable and didn't take advantage of the leave policy. Whenever I needed her to pitch in in other departments, she made herself readily available.

What would you say were his/her strengths?

> She has solid computer skills, she's a speed typist, pays attention to detail, thorough, takes her work seriously and strives for perfection.

What area(s) would you say he/she needs to further develop?

> Again, she mainly did production work for me at the times when I needed her. She did an excellent job, her work product was top-notched.

Do you know why he/she left your company? Is he/she eligible for rehire in their previous position?

> Jacqueline has been with NLC for a very long time, we never talked about her reason for wanting to leave. I can only assume that she was ready for a change. She is definitely eligible for rehire.

 NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

Employment Reference – Page 2

Can you discuss their ability to prioritize work and their overall organizational skills?

To the extent that I was involved, Jacqueline knew how to organize and prioritize her desk. She knew how to manage her time quite well and she also knew what was important and what could wait. She is a very efficient worker.

How well did this person take initiative and/or show self-motivation in work situations?

She showed initiative and self-motivation quite well. She was always willing to pitch in and take responsibility of what needed to be done, not only in her department, but other departments as well.

Would you say this candidate was team oriented or did he/she work alone? What type of environment would he/she be most suited?

Jacqueline is a team player and works well independently if given clear direction.

Our candidate says they are technically proficient in the following areas (fill in details), would you say that is accurate? How often and in what capacity did they use these skills?

We used Microsoft office suite and she is skilled in all areas, especially Word and Publisher.

I am considering presenting him/her for a position where (most difficult aspect or most important aspect of job). How do you think this person would fit in this type of position?

I believe Jacqueline will do just fine wherever she goes. She gets along well with all levels of staff, is a team player, hard worker and has a good work ethic.

Compared to others in this position, how does this person rank?

Because I've only supervised her for a short period of time, I can't honestly and fairly rank her compared to others. She did a great job for me when I needed her and I couldn't ask for anything more.

What skill or quality does this candidate have that would cause them to stand out over other candidates?

Her thoroughness, attention to detail and willingness to roll her sleeves up to jump in and help out all departments at a moments notice.

Occasionally, our clients will also check references before or after an offer of employment has been extended. Would you have any concerns if they contacted you directly?

I don't have any issues with that.

*If there is any other information you may want to add that may help us help this candidate, please let me leave my name, email address and number*

*EXHIBIT III*



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

# EMPLOYMENT REFERENCE

**From:**  Chrystal Hall

---

| | |
|---|---|
| **Candidate**  Jacqueline Robinson-Reeder | **Date**  June 14, 2006 |
| **Company Contacted**  National League of Cities | **Phone #**  202-626-3013 |
| **Person Contacted**  Clifford Johnson | **Title**  Executive Director |

---

What was your relationship to this person?  She was a member of my staff.     For How Long?  About 4 yrs.

When did he/she work for your company? (Month/Year)    From _____    To _____

Do you have the authority to verify salary?    Yes _____    No _____    Earnings Were $__

Based on their resume, it looks like this person did the following (fill in specifics), would you say this is accurate and is there anything else they did that we've missed?

> Jacqueline was the administrative assistant and provided a broad range of administrative and clerical duties. Alot of meeting planning, hotel arrangements, logistics for on-site events, scheduling, database management,

On the average, how often would you say this person was late or missed work?

> She was rarely late or missed work. She is very reliable in that respect. Her leave was always planned.

What would you say were his/her strengths?

> She has strong word processing skills, database adminstration, provides exceptional customer service. We often received compliments on how well she handled the members of the National League.

What area(s) would you say he/she needs to further develop?

> Her biggest challenge was working for multiple people. She would be great working one on one. However, dealing with 3 to 4 people simultaneously was a bit confusing for her.

Do you know why he/she left your company?   Is he/she eligible for rehire in their previous position?

> She just resigned. She was here for a very long time. I guess she was interested in doing something different.



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

Employment Reference – Page 2

Can you discuss their ability to prioritize work and their overall organizational skills?

Jacqueline was organized, but her ability to prioritize for several people at once was an issue. If she worked for one person, maybe two, I think she would be fine. It was hard for her to determine what was priority and what could wait. She needed direction in this area.

How well did this person take initiative and/or show self-motivation in work situations?

She definitely takes pride in her work and wants to do a good job.

Would you say this candidate was team oriented or did he/she work alone? What type of environment would he/she be most suited?

She is a team player and has had experience working independently. I think she would be best suited in a position that required minimal supervision and direction and not working for a lot of people at once.

Our candidate says they are technically proficient in the following areas (fill in details), would you say that is accurate? How often and in what capacity did they use these skills?

Excel, Word, Powerpoint and an internal contact management software.

I am considering presenting him/her for a position where (most difficult aspect or most important aspect of job). How do you think this person would fit in this type of position?

She is a senior level admin with superior customer service skills. However, she cannot be pulled in too many different directions.

Compared to others in this position, how does this person rank?

Her skills match up with everyone else that I've had work for me. On a scale of 1 - 10, I would give her an 8.

What skill or quality does this candidate have that would cause them to stand out over other candidates?

She takes a great deal of pride in her work and takes work very seriously.

Occasionally, our clients will also check references before or after an offer of employment has been extended. Would you have any concerns if they contacted you directly?

Not at all.

*If there is any other information you may want to add that may help us help this candidate, please let me leave my name, email address and number*



**National League**

**of Cities**

1301 Pennsylvania Ave., N.W.
Washington, DC 20004-1763
202-626-3000
Fax: 202-626-3043
www.nlc.org

*To strengthen
and promote
cities as centers
of opportunity,
leadership, and
governance.*

**2006 Officers**

*President*
James C. Hunt
Councilmember
Clarksburg, West Virginia

*First Vice President*
Bart Peterson
Mayor
Indianapolis, Indiana

*Second Vice President*
Cynthia McCollum
Council Member
Madison, Alabama

*Immediate Past President*
Anthony A. Williams
Mayor
Washington, DC

*Executive Director*
Donald J. Borut

May 26, 2006

To Whom It May Concern:

This letter of reference is written on behalf of Jacqueline Robinson-Reeder, who was employed as an administrative assistant on the staff of the Institute for Youth, Education and Families of the National League of Cities (NLC) from February 13, 2002 through May 8, 2006.

Ms. Robinson-Reeder is a highly experienced professional with strong administrative skills. During her tenure at the Institute, she worked directly with our most senior staff in carrying out a wide variety of tasks. Her responsibilities included planning of and preparation for large meetings, communications with an extensive network of city officials, and direct administrative support in scheduling appointments, arranging travel, and processing financial reimbursements. Ms. Robinson-Reeder was conscientious in carrying out these responsibilities and very effective in her work with officials in NLC member cities, often receiving praise for her responsiveness to their needs and concerns.

Throughout her 13 years at the NLC, Ms. Robinson-Reeder also demonstrated a sense of loyalty and commitment to the organization and its mission. She clearly understood the importance of the work in which city leaders are engaged and she often extended herself to meet their needs and ensure timely completion of key projects. Her length of service at NLC reflected these important qualities.

I appreciate the many contributions that Ms. Robinson-Reeder made to the Institute's work during the past five years, and wish her much success in her future endeavors.

Sincerely,

Clifford M. Johnson
Executive Director
NLC's Institute for Youth, Education and Families

**Past Presidents:** Clarence E. Anthony, Mayor, South Bay, Florida • John DeStefano, Jr., Mayor, New Haven, Connecticut • William H. Hudnut, III, Mayor, Town of Chevy Chase, Maryland • Sharpe James, Mayor, Newark, New Jersey • Brian J. O'Neill, Councilman, Philadelphia, Pennsylvania • **Directors:** R. Michael Amyx, Executive Director, Virginia Municipal League • Tommy Baker, Alderman, Osceola, Arkansas • Vicki Barnett, Mayor, Farmington Hills, Michigan • Thomas Bredeweg, Executive Director, Iowa League of Cities • Nora Campos, Councilmember, San Jose, California • Thomas Carlson, Mayor, Springfield, Missouri • James Condos, Council Chair, South Burlington, Vermont • Joseph Donaldson, Mayor, Flagstaff, Arizona • Ted Ellis, Mayor, Bluffton, Indiana • Makia Epie, Council Member, Cedar Hill, Texas • Margaret Finlay, Mayor, Duarte, California • Eddy Ford, Mayor, Farragut, Tennessee • Danny George, Executive Director, Oklahoma Municipal League, Inc. • Gary Graham, Mayor, O'Fallon, Illinois • Matthew Greller, Executive Director, Indiana Association of Cities and Towns • Jim Higdon, Executive Director, Georgia Municipal Association • Charles Hughes, Council President, Gary, Indiana • Steven Jeffrey, Executive Director, Vermont League of Cities and Towns • Mervin Jones, Council Member, Conyers, Georgia • Ronald Loveridge, Mayor, Riverside, California • Cynthia Mangini, Councilman-At-Large, Enfield, Connecticut • Marcia Marcoux, Councilmember, Rochester, Minnesota • Michael McGlynn, Mayor, Medford, Massachusetts • James Mitchell, Jr., Council Member, Charlotte, North Carolina • Darryl Moss, Mayor, Creedmoor, North Carolina • Ed Oakley, Councilmember, Dallas, Texas • James Perkins, Jr., Mayor, Selma, Alabama • Richard Radcliffe, Councilman, Greenacres, Florida • Dottie Reeder, Mayor, Seminole, Florida • Julie Aberg Robison, Council Member At-Large, Cary, North Carolina • Ron Schmitt, Council Member, Sparks, Nevada • Shirley Scott, Council Member, Tucson, Arizona • Anne Sinclair, Council Member, Columbia, South Carolina • Walter Skowron, Council Member, Loveland, Colorado • Connie Sprynczynatyk, Executive Director, North Dakota League of Cities • Ken Strobeck, Executive Director, League of Arizona Cities and Towns • Charles Tavares, Council Member, Columbus, Ohio • Lynne Whalen, Council Woman, Casper, Wyoming • Jacques Wigginton, Council Member, Lexington, Kentucky • Evelyn Woodson, Councilor, Columbus, Georgia

*Recycled Paper*

EXHIBIT II



**National League of Cities**

1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004-1763
202-626-3000
Fax: 202-626-3043
Internet: www.nlc.org

*To strengthen and promote cities as centers of opportunity, leadership, and governance.*

**1999 Officers**

*President*
Clarence E. Anthony
Mayor, South Bay, Florida

*First Vice President*
Bob Knight
Mayor, Wichita, Kansas

*Second Vice President*
Dennis W. Archer
Mayor, Detroit, Michigan

*Immediate Past President*
Brian J. O'Neill
Councilman, Philadelphia, Pennsylvania

*Executive Director*
Donald J. Borut



March 20, 2000

To Whom It May Concern:

I am writing this letter to recommend Ms. Jackie Robinson for a position in your organization. I have worked with Jackie for nearly two years at the National League of Cities, and find her to be a professional and extremely competent member of the Center for Policy and Federal Relations. I would highly recommend her for any position within your organization.

Jackie's position at the National League of Cities is one that carries an enormous amount of responsibility. Jackie handles the majority of our office's administrative functions as both for our Center Director, Cameron Whitman, and for other staff members. For example, Jackie is responsible for formatting of all of our Center's publications and congressional testimonies, finalizing and sending time-sensitive letters to Congress on behalf of the department's lobbying staff, and handling the multitude of phone calls that come into our Center daily -- all with a smile and a <u>cheery demeanor</u>. Jackie has assisted me in many of these matters and has helped me perform my job better. Her final products are excellent and help the National League of Cities look better as an organization.

Jackie is a very hard worker who is committed to our organization. I know that Jackie would devote the same level of commitment to any organization lucky enough to have her. Please feel free to contact me if you need any more information.

Very truly yours,

Susan M. Parnas
Senior Legislative Counsel
National League of Cities
(202)626-3020

*Past Presidents:* Glenda E. Hood, Mayor, Orlando, Florida • Sharpe James, Mayor, Newark, New Jersey • Gregory Lashutka, Mayor, Columbus, Ohio • Cathy Reynolds, City Council President, Denver, Colorado • *Directors:* Arnie Adamsen, Councilman, Las Vegas, Nevada • Kenneth A. Alderson, Executive Director, Illinois Municipal League • E. H. Alexander, Commissioner, Red Springs, North Carolina • John B. Andrews, Executive Director, New Hampshire Municipal Association • Larry A. Bakken, Council Member, Golden Valley, Minnesota • James T. Benham, Councilman, Baton Rouge, Louisiana • George D. Blackwood, Jr. Mayor Pro Tem, Kansas City, Missouri • George A. Brown, Jr., Councilmember, Lexington-Fayette, Kentucky • Maxine Childress Brown, Councilwoman, Rochester, New York • John P. Bueno, Councilman, Pontiac, Michigan • Michael Cathey, Alderman, Sevierville, Mississippi • Frank Clinton, Mayor, Paris, Illinois • Hal Daub, Mayor, Omaha, Nebraska • Seu Donaldson, City Council President, Seattle, Washington • Francis H. Duehay, Mayor, Cambridge, Massachusetts • Ron Gallegos, Councilman, Longmont, Colorado • John A. Garner, Jr., Executive Director, Pennsylvania League of Cities and Municipalities • Neil G. Giuliano, Mayor, Tempe, Arizona • Thomas J. Grady, Executive Director, Nevada League of Cities and Municipalities • Becky L. Haskin, Council Member, Fort Worth, Texas • Penny Jo Hilliard, Mayor, East Point, Georgia • Michael Keck, Vice Mayor, Little Rock, Arkansas • Jack Lynch, Chief Executive, Butte, Montana • Harriet Miller, Mayor, Santa Barbara, California • James F. Miller, Executive Director, League of Minnesota Cities • Linda A. Morton, Mayor, Lakewood, Colorado • William A. Moyer, Executive Director, Oklahoma Municipal League • Jim Naugle, Mayor, Fort Lauderdale, Florida • Lou Ogden, Mayor, Tualatin, Oregon • Jenny Oropeza, Councilmember, Long Beach, California • Willie J. Pitt, Council Member, Wilson, North Carolina • Mary C. Poss, Mayor Pro Tem, Dallas, Texas • Rebecca J. Rankin, Council President, Fort Wayne, Indiana • Johnny Robinson, Councilmember, College Park, Georgia • Michael Sittig, Executive Director, Florida League of Cities • Leon Smith, Mayor, Oxford, Alabama • Daniel M. Speer, Mayor, Pulaski, Tennessee • Tonnie Sprynczynatyk, Executive Director, North Dakota League of Cities • Evelyn Wright Turner, Councilor, Columbus, Georgia • Jerrilyn S. Well, Council President, Evanston, Wyoming

Recycled Paper

*EXHIBIT III*

To strengthen
and promote
cities as centers
of opportunity,
leadership, and
governance.



**National League
of Cities**

1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004-1763
202-626-3000
Fax: 202-626-3043
Internet: www.nlc.org

**1999 Officers**

*President*
Clarence E. Anthony
Mayor, South Bay, Florida

*First Vice President*
Bob Knight
Mayor, Wichita, Kansas

*Second Vice President*
Dennis W. Archer
Mayor, Detroit, Michigan

*Immediate Past President*
Brian J. O'Neill
Councilman, Philadelphia,
Pennsylvania

*Executive Director*
Donald J. Borut



Recycled Paper

May 9, 1999

To whom it may concern:

I am writing this letter to provide my recommendation on behalf of Jackie Robinson. Jackie served as Administrative Assistant in the Center for Policy and federal Relations during the time I served as the Director and continues to serve in that position. In that capacity, she served not only as the office manager, but also as the key individual in making sure final products reached the White House, Congress, and the 135,000 municipal elected officials NLC serves. She brings to bear enormous experience and imagination to her work. She is an outstanding packager—a person who has a capacity to envision and format a product to ensure its most positive possible reception. That requires insight, judgment, and imagination. She is tireless in her focus on the bottom line. She brings unique contributions to NLC.

Jackie's greatest contributions come from her experience and insights she brings to the job, and her willingness to commit whatever time and resources are critical to achieving a success.

The Center for Policy and Federal Relations is responsible for research, analysis, development of policy, and advocacy on any national or federal issues affecting municipalities. That is a broad mandate. This center, therefore, often more resembles a mad house than a serene center of disciplined policy and advocacy. Into that maelstrom, Jackie has always found a way to make sure we achieved on-time delivery. Her ability to take initiatives is strong. Her ability to pull together, design, and format a document so that city leaders can more easily understand the nub of the issue, the potential impacts on their municipalities, and the potential courses of action to respond most distinguish her contributions.

She is and has been a strong credit to NLC.

Sincerely,

Frank Shafroth

*Past Presidents:* Glenda E. Hood, Mayor, Orlando, Florida • Sharpe James, Mayor, Newark, New Jersey • Gregory Lashutka, Mayor, Columbus, Ohio • Cathy Reynolds, City Council President, Denver, Colorado • *Directors:* Arnie Adamson, Councilman, Las Vegas, Nevada • Kenneth A. Alderson, Executive Director, Illinois Municipal League • E. H. Alexander, Commissioner, Red Springs, North Carolina • John B. Andrews, Executive Director, New Hampshire Municipal Association • Larry A. Bekken, Council Member, Golden Valley, Minnesota • James T. Beeham, Councilman, Baton Rouge, Louisiana • George H. Blackwood, Jr., Mayor Pro Tem, Kansas City, Missouri • George A. Brown, Jr., Councilmember, Lexington-Fayette, Kentucky • Maxine Childress Brown, Councilwoman, Rochester, New York • John P. Bonea, Councilman, Pontiac, Michigan • Michael Cathey, Alderman, Senatobia, Mississippi • Frank Clinton, Mayor, Paris, Illinois • Hal Daub, Mayor, Omaha, Nebraska • Sue Donaldson, City Council President, Seattle, Washington • Francis H. Duehay, Mayor, Cambridge, Massachusetts • Ron Gallegos, Councilman, Longmont, Colorado • John A. Garner, Jr., Executive Director, Pennsylvania League of Cities and Municipalities • Neil G. Giuliano, Mayor, Tempe, Arizona • Thomas J. Grady, Executive Director, Nevada League of Cities and Municipalities • Becky L. Hinskin, Council Member, Fort Worth, Texas • Patsy Jo Hilliard, Mayor, East Point, Georgia • Michael Keck, Vice Mayor, Little Rock, Arkansas • Jack Lynch, Chief Executive, Butte, Montana • Harriet Miller, Mayor, Santa Barbara, California • James F. Miller, Executive Director, League of Minnesota Cities • Linda A. Morton, Mayor, Lakewood, Colorado • William A. Moyer, Executive Director, Oklahoma Municipal League • Jim Naugle, Mayor, Fort Lauderdale, Florida • Los Ogden, Mayor, Tualatin, Oregon • Jenny Oropeza, Councilmember, Long Beach, California • Willie J. Pitt, Council Member, Wilson, North Carolina • Mary C. Poss, Mayor Pro Tem, Dallas, Texas • Rebecca J. Ravian, Council President, Fort Wayne, Indiana • Johnny Robinson, Councilmember, College Park, Georgia • Michael Sittig, Executive Director, Florida League of Cities • Leon Smith, Mayor, Oxford, Alabama • Daniel M. Speer, Mayor, Pulaski, Tennessee • Connie Sprynczynatyk, Executive Director, North Dakota League of Cities • Evelyn Wright Turner, Councilor, Columbus, Georgia • Jerrilyn S. Wall, Council President, Evanston, Wyoming

# indigoT LLC

August 5, 2004

*EXHIBIT III*

Ms. Janice Pauline
National League of Cities
1301 Pennsylvania Avenue
Suite 550
Washington, DC 20004

Dear Janice:

I worked closely with Jackie Robinson at the Institute for Youth, Education, and Families, where I relied on her assistance in planning site visits and meetings for our technical assistance projects and the Mayors' Education Policy Advisors Network.

She played an instrumental role in arranging logistics for our meeting participants, as well as speakers, and coordinated the correspondence with them on how to book their flight and hotels. Whenever I gave her clear instructions and a deadline to meet, she always came through and delivered. In addition, she was very helpful in serving as our liaison with the hotel meeting staff, communicating our requirements for room set-up, guest relations, and menus.

As the meetings became more frequent, Jackie became a self-starter, and invariably knew exactly what was required to begin our meeting process. She even showed initiative by arranging transportation for representatives of our project cities to a dinner we hosted for them at the 2003 Congress of Cities in Nashville. Initially, we thought they could just catch their own cabs to the dinner venue, for which we would reimburse them. Jackie had the foresight to see what a logistical nightmare that could have turned into, and she arranged for a shuttle to pick us up from the hotel and return us back after dinner.

In addition, she used her creative side to design a Certificate of Appreciation for participating cities at the conclusion of two of our technical assistance projects. It was actually something that I had started, but was struggling with, and she asked if she could work on them. I was glad to have the help, and she really ran with the opportunity and did a great job.

As these brief insights demonstrate, Jackie is a resourceful, creative, and solutions-oriented person—characteristics that would undoubtedly serve her well in a position with your office.

If you would like me to elaborate further, or if you have any questions, please do not hesitate to contact me at (703) 444-6685, ext. 114.

Sincerely,

Denise G. Van Wyngaardt

*Proof of work performance.*
*Defendant back at my to address: JDB reform*

Jackie, I think you have tremendous potential as an employee of ACE and HED. Please let me know if I can do anything to assist you as you address these concerns.

I, Jacqueline Robinson-Reeder, have received a copy of this document:

_Jacqueline Robinson-Reeder_    _Jacqueline T. Robinson-Reeder_

Jacqueline Robinson-Reeder

_November 7, 2006_
Date

*EXHIBIT V.*

**From:** Robert B. Fitzpatrick, PLLC
**To:** Georgia28@comcast.net
**Sent:** Monday, June 04, 2007 11:15 AM
**Subject:** Your Case Against American Council on Education

I have your facts of last Friday afternoon. With the very clear understanding that I do not and will not and cannot represent you in your litigation, I would be prepared at my normal hourly rate to negotiate with Ms. Judish with whom I am slightly acquainted in an effort to resolve your case once and for all. As I believe you know, my hourly rate is $500. I assume that there would be some hours of time spent by me to learn the facts – the good, the bad, and the ugly; there would be time presenting you with my evaluation of your case and my recommendations regarding settlement; once I have settlement authority from you, there would be time spent negotiating with Ms. Judish which typically entails many phone calls back and forth between her and I, and I and you. I would assume that the foregoing could easily entail 20 hours or more of my time, and thus $10,000 or more in legal fees. Needless to say, I shall want to be paid at the front end before investing time in this matter.

I am distressed by your report that I am not listed anymore, I gather, with the telephone company and that you could not locate me on the internet. I would greatly appreciate it if you could provide some more detail as to the efforts that you made and the problems you encountered in reaching us as this obviously concerns me deeply.


All the best.


Robert B. Fitzpatrick
Robert B. Fitzpatrick, PLLC
Universal Building South
1825 Connecticut Avenue, N.W.
Suite 640
Washington, D.C. 20009-5728
Telephone: (202) 588-5300
Facsimile: (202) 588-5023
E-mail: fitzpatrick.law@verizon.net

6/7/2007

EXHIBIT I



June 14, 2007

Ms. Jacqueline Robinson-Reeder
2140 Brooks Drive, Apt. 421
District Heights, MD 20747

Dear Ms. Robinson-Reeder:

This letter serves as documentation that you have consulted with an associate attorney in the Law Office of Snider & Associates, LLC with regard to your pending lawsuit in the District Court of DC. As part of the consultation process, you did tender payment in the amount of $150. In addition, you sent two sets of faxes that have been reviewed by the consulting attorney and shredded in connection with your instructions.

Good luck with all your future endeavors. Please feel free to contact us for any future issues or concerns you may encounter.

Respectfully Submitted,

Michael J. Snider, Esq.
Ari Taragin, Esq.
Jason I. Weisbrot, Esq.
Snider & Associates, LLC
104 Church Lane, Suite 100
Baltimore, MD 21208

# Catholic Community Services
Opening doors to help and hope.

May 31, 2007

*[handwritten: I have written on Wednesdays overpriced and very little assistance from law students etc]*

**CONFIDENTIAL**
Jacqueline T. Robinson-Reeder
2140 Brooks Drive #421
District Heights, MD 20747

Re:    **Legal Network File No. 07-317**

Dear Ms. Robinson-Reeder;

Thank you for contacting the Archdiocesan Legal Network for assistance.

We are referring you to another legal services provider. Please call the agency named below immediately.

*[handwritten: no. Wed.]*

**Worker's Rights Clinic sponsored by the DC Employment Justice Center**  *[handwritten: — 659-9589]*
**1525 7th Street, NW**
**Washington, DC 20001**
**(202) 265-2400**  *[handwritten: 9675]*

This clinic is held every Wednesday from 6-7:30pm at Bread for the City at 1525 7th Street, NW. It is located at the Shaw/Howard University Metro Stop on the Green Line if you are traveling by Metro. **Please call the Clinic at (202) 828-WORK before you go to the Justice Center.**

Further, with regards to your representation to the Court on page 5 of your Complaint, please note that when you signed the Conditional Agreement Regarding Archdiocesan Legal Network Procedures you agreed that you understood "That the Network has NOT accepted" your case yet" but that you would be notified within 45 days whether the case is accepted or not. Accordingly, since we have not accepted your case for placement, please do make any further such representations with regards to our interest in and/or involvement with your legal matter.

Please be advised that the Legal Network is now closing your file. We wish you the best of luck.

Sincerely,

Natalia Meneses-Brooks
Legal Intern

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Jacqueline T. Robinson-Reeder )
Plaintiff )
)
)
vs. )        Civil Case: 07-0880 (JDB)
)
)
American Council on Education )
Defendant )
)

## <u>Proposed order on Motion for Summary Judgment</u>

Please grant motion on Summary Judgment on this case due to defendant's violation

of Title VII of the Civil Rights Act of 1964 of pursuant to Federal Rule 56, declaring that ACE

violated Title VII, of the Civil Rights Act of 1964, (42 U.S.C. section 2000e-2 Section [703] (m)

and 2000e-3 Section [704] (a).


"If discrimination against a member of protected class is a motivating factor in the giving of a

negative reference or the choice of discipline, the employer is in violation of Title VII of the Civil

Rights Act of 1964 regardless of the truth of the statement or the appropriateness of the

discipline".


The defendant admitted the denial of giving plaintiff a job reference during periods of November

7, 2006 through July 3, 2007. Plaintiff has not been permanently employed during this time due

to defendant's retaliatory employer references.

1

Plaintiff is African American, plaintiff filed Retaliation Claim with EEOC on February 12, 2007, plaintiff filed (first) EEOC complaint in December 2006. Plaintiff received Right-To-Suit and filed within 90 day period. Plaintiff immediately suffered adverse action by being denied ability to gain employment without proper job reference. Defendant offered job reference during meeting on June 25, 2007, but became intimidating and offensive when plaintiff inquired as to Title 42 Section 1981.

Plaintiff believes the above motion is sufficient for Judge Bates to rule on in favor of plaintiff.

Respectfully submitted,                                July 3, 2007

Jacqueline T. Robinson-Reeder
2140 Brooks Drive, #421
District Heights, Maryland 20747
(301)633-7791 – Cell or (301) 967-1092

2