# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE T. ROBINSON-REEDER, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | **Civil Case: 07-0880 (JDB)** |
| ) | |
| AMERICAN COUNCIL ON EDUCATION ) | |
| ) | |
| **Defendant** ) | |

## PLAINTIFF'S MOTION TO OPPOSE JUDGEMENT ON DEFENDANT'S PLEADINGS

I, Jacqueline T. Robinson-Reeder is in opposition of the defendant's judgment on pleadings. The plaintiff alleges workplace discrimination, retaliation/adverse action, constructive discharge, and defamation during her employment with "ACE" and thereafter.

Plaintiff believes in "good faith" that the defendant, American Council on Education is in violation of Title VII, of the Civil Rights Act of 1964, 42U.S.C. 2000e-2 [703m], 2000e-3 [704a], 2000e-5[706] – Title 42 United States Code, Section 1981 (a).

The language of section 2000e-2(m), the court observed that the statue 'imposes no special [evidentiary] requirement and does not reference "direct evidence." Id., at 853. Accordingly, the court concluded that a "plaintiff may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played "a motivating factor." Id., at 853-854.

RECEIVED

JUL 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

The Plaintiff is opposing the above stated motion as *pro se* due to the reckless and malicious behavior by the defendant, the American Council on Education. [1]The defendant is presently providing negative job references and denying the plaintiff job references. This admittance by American Council on Education is proven in their answer brief under number nine (9). [2]This unfair behavior is apparent retaliation/adverse action and has caused the plaintiff loss of income and medical insurance. [3]The *pro se* plaintiff is forced to argue employment law excessively with the astute defense lawyers of the American Council on Education. In my belief this is another forced act of discrimination and unfairness that the American Council on Education has layered on the plaintiff.

I pray that the court will assist the *pro se* plaintiff in legal areas that are overlooked and afford the *pro se* plaintiff every opportunity to bring the discriminatory behavior of the American Council on Education to view of the court.

---

[1]Duke Law Journal: Retaliation cases over negative references involve claims that the negative reference was motivated by a desire to "get back" at the employee for engaging in protected activity under Title VII of the Civil Rights Act of 1964. A negative reference, although perhaps less dramatic than termination, can be just as devastating to an employee's career in that it extends beyond the current employment relationship to taint a potential future one. Both the importance of the reference issue to employers and potentially devastating consequences of negative references for employees resonate in the Tenth circuit's recent opinion of Hillig v. Rumsfeld. In Hillig, the Tenth circuit found that a negative reference constituted an adverse employment action though there was no proof that the employee would have received the job if the reference had not been given. Hillig, 381 F3d. at 1031-33.

[2] The EEOC concludes that Section 107 applies to retaliation. Courts have long held that the evidentiary framework for proving employment discrimination based on race, sex or other protected class status also applies to claims of discrimination based on retaliation. Furthermore, an interpretation of Section 107 that permits proven retaliation to go unpunished undermines the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism.

[3] Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA)

It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson (see case listed above, Pro Se Rights Section).

Elmore v. McCammon (1986) 640 F. Supp. 905 "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws."

Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233. Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment."

[4]The plaintiff is entitled to a jury trial to decide if the defendant is in violation of Title VII, of the Civil Rights Act of 1964, 42U.S.C. 2000e-2 [703m], 2000e-3 [704a], 2000e-5[706] – Title 42 United States Code, Section 1981 (a).

The plaintiff will controvert each paragraph in numbered sequence of the defendant's motion for ease.  [5]I will prove violations in Title VII, 42 U.S.C. § 2000e-5(g)(2)(B) by addressing pretext, prima facie, and disparate treatment under the categories of work place discrimination, constructive discharge, retaliation, defamation and adverse action to the best of my ability.

1.)  Pursuant to LCv R 5.3 the plaintiff followed procedures on delivery of complaint. The court and defendant has sufficient possession of certificate of affidavit  served and acknowledged by the defendant in their letter of acceptance filed electronically in the court docket.  Serving of the summons is proper and in order.

---

[4] § 1-2556. Private cause of action. (a) Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; provided, that where the Office has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who maintains, in a court of competent jurisdiction, any action based upon an act which would be an unlawful discriminatory practice under this chapter may file the same complaint with the Office. A private cause of action pursuant to this act shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory practice, or the discovery thereof. The timely filing of a complaint with the Office shall toll the running of the one year statute of limitations while the complaint is pending before the Office. (b) The court may grant such relief as it deems appropriate, including but not limited to, such relief as is provided in § 1-2553(a).  (1973 Ed., § 6-2296; Dec. 13, 1977, D.C. Law 2-38, title III, § 316, 24 DCR 6038; Oct. 23, 1997, D.C. Law 12-39, § 2(d), 44 DCR 4856.)

[5] When a jury finds that employer's treatment of an employee is based on an unlawful motive, the employer has crossed a "threshold" and engaged in conduct explicitly prohibited by Congress. The 1991 Amendment provides *8 limited liability in such circumstances even if the employer shows that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). Regardless of whether proof of unlawful discrimination is direct or circumstantial, the employer should take all necessary measures to keep its workplace free of unlawful discrimination. See Civil Rights Act of 1990- -Hon. Augustus F. Hawkins (Extension of Remarks-- February 7, 1990) ("any reliance on prejudice in making employment decisions is illegal"). Affirming the court below will send a message to employers that proactive measures are needed to comply with all types of discrimination prohibited by Title VII, not just sexual harassments situations/

The Plaintiff resigned on November 6, 2006, the day of the meeting in Human Resources and the receipt of Christine Morfit's probation letter dated November 6, 2006. The character of the defense, should be made prominent by the court. The defense is using my testimony and not the facts to argue the case. **See Declaration of Noreen Duggan** entered in prior evidence by the defense. *She has a copy of the probation letter dated November 6, 2006, in her possession but falsely swears that the probation notice was issued on November 7, 2006.* The plaintiff typed the wrong date of November 7, 2006 on letter of resignation due from rushing to resign before being fired on November 6, 2006. The letter of resignation was sent electronically by email and the date of November 6, 2006 can be proved.

The defense is not relying on factual information but on the plaintiff's information. *[This is a direct example of the haphazard way the American Council on Education conducts their business in the fabrication of the unidentified complaints about the plaintiff]* No investigation was done to prove the false complaints to benefit the plaintiff because they were concocted to initiate the probation and discipline or browbeat the plaintiff in prevent further complaints upon their neglect to address the insubordination of Wadlington and the negligence of supplying technical support.

The defense has conveniently told the untrue when stated they have not received the Retaliation charge that EEOC mailed 10 days after the March 1, 2007 date. They falsely state that the plaintiff did not mark "retaliation or race" on the EEOC complaint dated December 15, 2006. It is quite apparent that both boxes are marked on the copy they have in Duggan's possession. In addition, the EEOC can confirm. This is not an oversight, these types of statements are outright lies to deceive and discredit the plaintiff's complaint to the court. Notes of several other untrue tactics by the defense to dismiss my case are crucial in the view

4

of the court. Isn't there a law against writing apparent "lies" in a court paper? I have been a

witness to the false, untrue lies that the American Council on Education has engaged in during

my employment to cover their discriminatory behavior, now the court can take witness.

The defense is lacking the ability to answer issues of significance pertaining to the

allegations of the violations to Title VII.

> *An articulation not admitted into evidence will not suffice. Thus,*
> *the defendant cannot meet its burden merely through an answer to*
> *the complaint or by argument of counsel.*

The defense is required to explain the reasoning beyond a "denied" answer to inquiries

regarding workplace discrimination, retaliation/adverse action, constructive discharge and

defamation <u>before the court would even consider to dismiss the plaintiff's complaint.</u>   It is

quite apparent that the defense has no respect for the plaintiff because she is not represented by

legal counsel and therefore plead the complaint to be dismissed **without answering to their**

**pretextual behavior.**

The defense further neglects to respect the plaintiff's <u>Right-to-Suit</u> issued by the EEOC

on February 12, 2007, or the [6]EEOC Retaliation charge dated March 1, 2007. See exhibit I.

The American Council on Education is denying the plaintiff a job reference out of retaliation

from the EEOC charge filed on December 15, 2006. Noreen Duggan has in her possession the

---

[6] 33\.Retaliatory acts designed to interfere with an individual's prospects for employment are unlawful regardless of whether they cause a prospective employer to refrain from hiring the individual\34.  As the Third Circuit stated, "an employer who retaliates cannot escape liability merely because the retaliation falls short of its intended result."\35
However, the fact that the reference did not affect the individual's job prospects may affect the relief that is due.
See Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997) (evidence of retaliation supported jury finding of reckless indifference to plaintiff's rights; although $7 million award for punitive damages was excessive, district court's lowered award of $300,000 was not).

The Commission concludes that Section 107 applies to retaliation.  Courts have long held that the evidentiary framework for proving employment discrimination based on race, sex, or other protected class status also applies to claims of discrimination based on retaliation.  Furthermore, an interpretation of Section 107 that permits proven retaliation to go unpunished undermines the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism.

plaintiff's EEOC charge that was sent to the President Ward and Collen Collins, H.R. Director. This type of shared possession also gives insight on how the entire H.R. department has privy of the EEOC complaint and explains how the entire H.R. staff is participating in giving negative and refusing job references out of retaliation. One evil staff person informed a potential employer that I was "fired."

Before the American Council on Education can attempt to have my civil complaint dismissed, they should answer questions to explain the apparent disparate treatment towards the "52 year old African American employee", who engaged in "protected activity" by filing two (2) EEOC charges on December 15, 2006 and March 1, 2007, and by complaining internally on more than three (3) occasions. October 17, 26th and November 1-2, 2006.

All of the internal complaints were ignored and instead of disciplining the insubordinate employee that the plaintiff supervised, LaTisha Wadlington, office assistant and relative/friend of Phyllis Goodwin, H.R. associate -- the American Council on Education moved swiftly towards retaliation/adverse action towards the "supervisor", Jacqueline T. Robinson-Reeder, Executive Assistant and issued "probation with threat to terminate employment" one day after the meeting titled "to improve the working area" and verbally address the issues of insubordination with LaTisha Wadlington. See exhibit II.

## Insubordination and Employee Moral are Directly Linked

If you have an insubordinate employee that you allow to be insubordinate without repercussions, you will notice a decline in the moral of your other employees. They will become disgruntled as they watch their co-worker do things he or she shouldn't be doing. If you are not careful, this can lead to lawsuits as your other employees claim discrimination against them as you discipline one employee and not the other. Consistency is key when it comes to managing your employees. No matter how you personally feel about an employee, you must act on insubordination and end it immediately. If you don't, you will find yourself dealing with even bigger problems.

Due to ACE's failure to correct the insubordination of LaTisha Wadlington and offer technical assistance to the plaintiff, coupled with the unfair probation, the plaintiff resigned after two months of the intentional malicious and reckless behavior.

[7]Plaintiff felt no need to correct "rude and unprofessional" behavior because these allegations are false and defamation of character and a trial will prove it. I.d. *Moore v. Cox 341 F. Supp. 2d 570, 572 (M.D. N.C. 2004)*; I.d. *Popko v. Continental Casualty Co, 2005 Ill. App. LEXIS 28 (Ill. Ct. App. January 21, 2005)*.

**1.)** *ACE lacks the ability to identify the individuals and show record of the dates that these complaints took place,* which leans towards the complaints as being fabricated. The accusations of the plaintiff being "rude and unprofessional" are false and defaming and can be proven by bringing the complaining individuals to testify in court with dates of alleged "rude and unprofessional" behavior occurring. If these staff members are not identified, the probation was "pretext" to prevent further complaints on L. Wadlington and to continue neglect in providing assistance in technical support.

---

[7] North Carolina federal court judge recently allowed a terminated employee to pursue a defamation claim against his former employer based on allegations that a manager falsely reported to other company personnel that the employee used profanity and made a derogatory statement against management. I.d.. *Moore v. Cox 341 F. Supp. 2d 570, 572 (M.D. N.C. 2004)*. Although the court criticized the claim as "vague," it denied the employer's motion to dismiss, holding that publication and other allegations were sufficient to allow the defamation action to go forward. This case also illustrates that it is often not difficult to state a defamation claim based on intra-corporate communications that can survive a motion to dismiss.

In *Popko v. Continental Casualty Co, 2005 Ill. App. LEXIS 28 (Ill. Ct. App. January 21, 2005)*, the Illinois Court of Appeals upheld a $300,000 jury verdict in favor of an employee who sued his former employer based on statements made in an internal company memo distributed to a manager. The memo at issue stated that the employee had engaged in a "pattern of unacceptable conduct." made derogatory comments about his managers, and became belligerent and used profanity during ad adverse performance review.

**2.) At what timeframe was Christine Morfit made aware of the complaints? If the plaintiff was categorized as "rude and unprofessional" why did Christine Morfit assist plaintiff in writing a letter on November 2, 2006. (See exhibit II)**

**3.) Why not verbally warn the plaintiff if this behavior is true before November 6, 2006? The probation letter came as a surprise to the plaintiff.**

> The courts have endorsed the concept of corrective or progressive discipline. This approach regards the purpose of discipline as a means for employees to know and understand what standards are required of them. Efforts should be made to correct employees' behavior through a system of graduated disciplinary measures such as counseling and verbal warnings.

**4.) Why did Christine Morfit choose not to engage the plaintiff in a meeting with the complainers on the unexplained date of receiving such information?** This would have been a proper investigation to receive both sides of employee disagreements. I was accused of being on the "short bus and I was a problem child", when I called for ACE for technical support. There is a mixed motive that ACE is hiding and I will prove it in my argument.

The EEOC charge was sent to President David Ward and Collen Collins, H.R. Director. The declaration from Duggan showing her possession of the EEOC charge proves that all staff in Human Resources including Phyllis Goodwin, H.R. associate – relative to "Wadlington" had privy to knowledge of plaintiff's EEOC complaint and therefore could have been responsible for the negative and denial of job references.

Constructive discharge was forced when the employer is lying, ignoring and disciplining employee without verbal warnings. My employer organized a meeting disguised to improve the work environment, but never addressed those issues. The employer turned

(retaliated on employee) instead of offering assistance. [The plaintiff was in opposition of the favored employee of the H.R. associate being "insubordinate" by making over 3 neglected internal complaints, <u>this activity was protected</u>].

> In a "disparate treatment" claim the plaintiff complains that her treatment by the employer was different from that of "similarly situated" employees because of her status as a member of a protected class( age, sex, race, etc.) <u>There is another form of "disparate treatment" claim in which the employee asserts that his treatment was discriminatory because the employers reasons for acting were false and nothing more than a "pretext" for taking action and the real reason was an intent to discriminate.  There may be allegations relating to both theories in a "disparate treatment" claim.</u>

The American Council on Education (1 Dupont) had severe problems connecting (lack of installation of computer equipment to connect (firewall) the metaframe/citrix system to computers for staff at the HED location (1331 H) executing the PeopleSoft programs to generate purchase orders.    Christine Morfit had witnessed the lack of technical support by the staff at the ACE location.  The white executive assistant and white office assistant had similar problems receiving the support to produce PeopleSoft purchase orders.  "Evidence will be supplied during trial or discovery."

Both individuals were stressed and complained about the lack of support.  Ronna Eddington was transferred to another position at ACE and Jessica Webber was promoted to Program Assistant.  A new staff member was hired (Katie to produce HED purchase orders at the ACE location)   When I was hired everyone had knowledge of the problems except for me. I was neglected and teased while trying to generate purchase orders daily.  While I attempted to figure out the problem myself and successfully installed the programs with diligence (sometimes I don't give up) supposedly complaints from Accounting and Finance were given

to my supervisor unknown to me. [8]I was put on probation for being rude, when I took the time to personally thank staff on November 2, 2006 during my orientation. Was my skin color the basis of the complaints since the letter was issued directly after the orientation? This is the PRETEXT. Explain the timeframe of receiving the complaints, the probation and why did you ignored the BLACK executive assistant? Why didn't I receive the same treatment as Ronna and Jessica, they were soothed and I was punished. I have not failed to exhaust my administrative remedies because I filed (2) EEOC charges and complained several times to management and ACE DID NOTHING BUT IGNORE AND PUNISH ME! ACE is in violation of Title VII employment statues see The Right-to-Suit.

The above facts of evidence reflect that the working conditions for the plaintiff changed immediately after her last complaint on November 3, 2006 – proven <u>disparate treatment</u>. Defendant should be made to prove to court that this decision would have occurred to a white employee. [9]See Desert Place v. Costa.


<u>Background argument:</u> Paragraphs are numbered to provide the court ease.

---

[8] g) (1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

[9] When a jury finds that employer's treatment of an employee is based on an unlawful motive, the employer has crossed a "threshold" and engaged in conduct explicitly prohibited by Congress. The 1991 Amendment provides *8 limited liability in such circumstances even if the employer shows that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). Regardless of whether proof of unlawful discrimination is direct or circumstantial, the employer should take all necessary measures to keep its workplace free of unlawful discrimination. See Civil Rights Act of 1990- -Hon. Augustus F. Hawkins (Extension of Remarks-- February 7, 1990) ("any reliance on prejudice in making employment decisions is illegal"). Affirming the court below will send a message to employers that proactive measures are needed to comply with all types of discrimination prohibited by Title VII, not just sexual harassments situations/

1.) Denied -The Right to Suit was given to the court on May 10th, evidently there was an EEOC charge, this was sufficient. I have nothing to hide and forgetting to add attachments is not illegal.

2.) Denied - The software was not properly installed, this was the problem of ACE's negligence. Previously addressed this argument under (White staff) Ronna Eddington and Jessica Weber.

3.) Denied – I was issued the letter of probation and learned the first occurrence of the false accusations of being rude and unprofessional on Monday, November 6, 2006. Defense is at ease twisting my words to benefit their argument. *There should be a law to prevent the defense on lying in pleadings to the courts.*

4.) Denied –Defamation claim is in this text. "According to the probation notice, Ms.Robinson-Reeder made the following statements, etc." The statements are not identified in the probation letter and they are false. ACE told potential employers that I was "rude and unprofessional." ACE is liable for defamation until they can produce people and dates that the plaintiff actually spoke to and the can defend the accusations. *See Gibson v. Phillip Morris, 292Ill.App.3d at 279, 685 N.E. 2d at 647. Raymond Hugley v. The Art Institute of Chicago, et. Al No. 98L 8352.*

> To establish a claim for defamation, a former employee must demonstrate that former employer published a defamatory statement about the employee In other words, en employer may be liable for defamation if the employer communicated a statement about the employee to a third person that could be harmful to the employee's reputation. If the employer cannot demonstrate the truth of the statement, the employer may be liable for defamation.

5.)    True.

6.)  Denied - The letter was written on Monday, November 6, 2006. The EEOC complaint is marked (race).

7.) True – Racial discrimination is not appropriate for a resignation letter in my professionalism, but it was acknowledged in the complaint given to EEOC. However, I did mention retaliation several times in the letter. Adverse employment action had occurred during the weeks of October 17 to November 6, 2006 leading up to the plaintiff's constructive discharge on November 6, 2006. The defendant proved to be discriminating against the plaintiff when she was asked to leave the office on the date of her resignation. _**ACE is this normal procedures for staff that resign?**_

I was treated as if I was fired. Christine Morfit immediately asked me leave the office after receiving my resignation. I asked could I take my things on Tuesday, November 7, 2006 and she said "no" I had to leave today. I fought back tears and called by husband but he was in Bowie, Maryland. I could not walk to the subway with the boxes that I had to pack. So, I called my minister, Rev. Ivory L. Teague, Jr. to pick up my belongings.

See declaration – Exhibit A

I was extremely stressed on November 6th from the day meeting occured, the lies and LaTisha Wadlington was raising her voice at me needlessly during her own conversations  was slinging paperwork at my desk, which landed on the floor. I was already threatened if another complaint was confirmed I would be terminated. No normal employee would work under these conditions that changed because of the hiring of the favored employee on October 16, 2006. The discrimination was stressful, but it seemed to be controllable. However, this disrespectful behavior in addition to the discrimination was to much to endure.

12

8.)    Denied – Retaliation and Racial discrimination is checked. EEOC received a letter of premature dismissal from me and they later asked me to submit a request for reconsideration.

9.)    True – It was dismissed, but plaintiff received the "Right-to-Suit and personal advice from an EEOC officer to file a retaliation claim and remove ACE from my resume immediately.

**A. Standards for Dismissal**:  All paragraphs are argued by the Prima Facie described below.  The claim on which the court can grant relief has been addressed by the defendant in the conference on July 5, 2006, under Title 42, section 1981a.

**B. Title VII claims must be dismissed, etc**.   The EEOC dismissed my case my lack of convenience.  The notes from the intake officer will reveal my discussion on discrimination. He was rushed (took 10 days to receive charge) and said that the investigation would look into the discrimination, but in their need to dismiss my case they choose convenience and sent me to court to fight with the Right to Suit.  The EEOC however, seems to feel bad about it and asked me to request an "Reconsideration" but I had already decided on bringing ACE to court for their behavior.

**2. The Discrimination claim fails, etc.**   This information is included in the below document where it is supposed to be address in a "court of law".

**a. Ms. Robinson-Reeder's Probation Notice was, etc.**

Argument: Probation is considered adverse action employment when it is not justified. If the allegations were true,  I would have stayed in my position and improved my character.  I have never been accused of this in my career and being put on probation with intent to terminate me, in my belief was discrimination.

13

### b. Ms. Robinson-Reeder's resignation does not, etc.

The working conditions had changed to intolerable after October 16, 2006. The American

Council cannot explain to date why they ignored the plaintiff's complaints regarding

Lack of technical support and the insuborindate office assistant. Why not address them in your

argument? If the reason is not discriminatory give the court the reason? Avoiding the answer

Leaves one to believe that ACE was discriminating against the Black employee and did

nothing to improve her work environment, but ignore her and assign probation. In other

words, shut up or leave!  **Aggravating factors**:  How many times do we need to discuss the

negligence. **Intentional discrimination**:  No assistance or soothing for the Black executive

assistant as the white staff experiencing same situations. No orientation until one month after

employment, no orientation handbook. Executive assistant forced to hire office assistant with

no opportunity to interview other candidates. In other words, we don't care about you because

you are BLACK. *No job references, do you do this to your WHITE employees*? *Do you kick*

*your WHITE employees out of the office when they resign?* Are you focused on the truth?

### c. Retaliation claim must be dismissed, etc.

Why, the defense admitted to denying job references.  EEOC Retaliation charge is attached and

it is real, deal with it!

### 2. Even if the Court considers, etc.

I have addressed the prima facie outline below for discrimination and retaliation during and

after employment at The American Council on Education.

### D. The court should decline to exercise, etc.

I have lacked the ability to find court cases identical to mine.  I believe in justice and
know that the court and judge will see the apparent discrimination that I have outlined in my
complaints. Even though I can't acknowledge all of the cases that the defendant has, the justice

I deserve will be recognized in a court of law. I feel that the Judge and the court will have my best interest as they apply the law toward my case.

Argument: Why case cannot be dismissed until the defense answers with a legitimate, nondiscriminatory reason for the adverse employment action. Then, the plaintiff will show pretext.

## Prima Facie for Discrimination and Retaliation during employment:

1.      **Activity protected under Title VII.** – African American employee, opposing internal behavior of favored employee. Plaintiff believed in "good faith" that this was illegal. – *Submitted three written internal complaints on October 17, November 26 and November 2, 2006. Initiated several verbal complaints directly to supervisor regarding lack of technical support.*

2.      **Casual Connection between the adverse employment action and the protected activity** - Christine Morfit, Executive Director of HED, issued the African American executive assistant a "30 day Probation pending termination" on November 6, 2006, immediately after the meeting on November 2, 2006 staged to discipline the office assistant. None of her complaints were acknowledged and the complaints against here were "hearsay" and not proven. Christine Morfit verbally threatened the executive assistant in the meeting on November 2, 2006 in front of her insubordinate assistant.

3.      **Employee suffers adverse employment action** - Plaintiff/employee had no choice but to resign under "constructive discharge" on November 6, 2006. Christine Morfit instructed the plaintiff to leave the office immediately. See declaration – Exhibit A. Employee calls NRI employment agency to seek employment, but NRI neglects to provide employment due to the negative reference given by ACE. Plaintiff calls several other employment agencies who neglected to send plaintiff on employment assignments due to the references received from ACE. Plaintiff is forced to apply for "unemployment compensation" and is granted under "constructive discharge" instructed by the EEOC to the Unemployment Compensation Board.

## Prima facie for "Retaliation" after employment:

1.      **Activity protected under Title VII.** – African American employee of ACE, filed EEOC charge on December 15, 2006 and Retaliation charge on March 1, 2007.

2.      **Casual Connection between the adverse employment action and the protected activity:**

During November 6, 2006 until the present, all staff in the Human Resources are made aware and have privy of the EEOC charge. See Noreen Duggan declaration of possession. EEOC charge sent to President Ward and Collen Collins, H.R. Director. Phyllis Goodwin, H.R. Associate and friend/relative has a casual connection to LaTisa Wadlington and the EEOC

complaints. Ms. Goodwin has worked in the H.R. department for over 10 years and the staff are intimidated and friends with her. She is aware of the EEOC complaint and engaged in giving negative references of plaintiff "being fired" and refusal of job references.   Several potential employers informed the plaintiff that the references were not favorable and to remove ACE from resume in addition to the EEOC.  Employment difficulties are growing worse. Several employment agencies would not send me on temporary or permanent jobs although plaintiff was extremely qualified.  Test scores were high, professional appearance and years of experience.  Plaintiff was forced to work in mailroom, drive to Bethedsa and work for $10.00 per hour due to the issue of receiving "bad references" to support her family.  Salary changed from $27.00 per hour to $12.00 per hour.

I am being BLACKLISTED by the H.R staff at the American Council on Education..  I wrote a letter to the President. See Exhibit B.

### 3.    Employee suffers adverse employment action:

Plaintiff has no medical insurance for family. The 52 year-old African American plaintiff is presently without health insurance and is suffering from tension or migraine headaches daily, bloating, lack of appetite and sleep, constipation and breast pain.   The plaintiff cannot visit a doctor for medical care due to not having medical insurance.   Again, the American Council on Education is responsible. Plaintiff was refused employment with three potential employers due to the negative job references.

Plaintiff has no permanent job at the salary she was making before and during employment at ACE.  $49,000 – 50,000 per year.  Plaintiff has not earned her hourly rate of $27.00 since her constructive discharge at ACE on November 6, 2006.  Plaintiff has not been able to afford the payment of tuition for son at Bowie State University.

### *Plead: For Mercy*

*I pray the court will not further harm the plaintiff by the dismissal of this case due to my lack of legal expertise in quoting law.  I am very tired and don't feel well and really need to see a doctor for the headaches I have endured daily.   Submitting these motions are necessary but very draining.  The defendant has accused the plaintiff of submitting frivolously motions.  They are all necessary and I have enjoyed reading the rules that pertain to my complaint, I just wish I could have afforded a lawyer and that I was about 30 years old!.*

*Sincerely,*

Jacqueline T. Robinson-Reeder
2140 Brooks Drive- 421
District Heights, MD
301-967-1092

16

EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACQUELINE T. ROBINSON-REEDER, )<br><br>Plaintiff )<br><br>vs. )<br><br>AMERICAN COUNCIL ON EDUCATION )<br><br>Defendant ) | Civil Case: 07-0880 (JDB) |

**DECLARATION OF IVORY L. TEAGUE, JR.**

I, Ivory L. Teague, Jr, states as follows:

That on Monday, November 6, 2006, at around the timing of 7:30 p.m., I assisted Mrs. Jacqueline T. Robinson-Reeder with the removal of her office belongings from 1331 H Street, N.W.  The belongings consisted of: 2 boxes filled with plants, books, and other items and 2 large picture frames.

I declare that the foregoing is true and correct.

_____
Signature of Ivory L. Teague, Jr.

Executed on Date: ___7-17-07___

Mr. David Ward
President
American Council on Education
1 Dupont Circle, N.W.
Washington, D.C.

Dear Mr. Ward,

I hope that you find me eligible for re-hiring in a comparable position at the ACE location. My reason for filing the EEOC case was a reaction to the inappropriate probation that did not afford me the opportunity to explain the accusations that were exaggerated due to my inability to install the PeopleSoft program alone or ignore the intolerable conditions after Ms. Wadlington's hire to HED.

The EEOC has issued a paper giving me the 'Right to Sue" in court. I have no interest in this procedure, if given the opportunity to find a reasonable job where I can work with the respect that I am accustomed to. In reference to the probation, I have found the below information from the D.C. Superior Court regarding the procedures for handling my situation. Mr. Ward, I never received a warning or counseling. I wasn't aware of any complaints until the probation letter. This was totally unfair.

> (2) The courts have endorsed the concept of corrective or progressive discipline. This approach regards the purpose of discipline as a means for employees to know and understand what standards are required of them. Efforts should be made to correct employees' behavior through a system of graduated disciplinary measures such as counseling and warnings.

My reputation with prior employers has been excellent and I have never been accused of being rude to anyone in my career. There is no history of these accusations in my work ethic. I was well liked by the HED board members and staff. I staffed the HED Board meeting and the Annual Meeting where my personality was well received. My work performance during my service as a temporary employee in June 2006, was well-liked enough to allow my permanent hiring in September 2006. My personality has been described as compassionate, hard-working and fun-loving.

During my orientation visit to ACE, I thanked everyone personally who tried to help me with the installation of PeopleSoft. I went so far as to embrace staff and search for supervisors to render compliments. This behavior can be proven.

I have several letters of recommendation from executive staff; however the last negative reference from ACE has taken priority and caused my failure to find employment. Someone at ACE is giving references to potential employers that I was "fired instead of my resignation."

I have been advised to remove HED from my resume to be successful in completing my job search, where the experience at HED was a great achievement to my career commitment in the Education field.

Mr. Ward, I have the potential of being an excellent employee at ACE and deserve to continue my career at your organization without the conditions being so forced. I truly believe that you are an honest and respectful human-being, seeing fit to make the decision to assist me in continuing my career to provide for my son's education during his sophomore year at Bowie State University. Any assistance that you could provide at this time would be deeply appreciated.

Thank you.

Sincerely,
Jacqueline T. Robinson-Reeder

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 570-2007-00948 |

D.C. Office Of Human Rights
*State or local Agency, if any*                                                         and EEOC

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Jacqueline T. Robinson-Reeder | (301) 967-1570 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2140 Brooks Drive | Forestville, MD 20747 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| AMERICAN COUNCIL ON EDUCATION | 101 - 200 | (202) 939-9300 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1 Dupont Circle | Washington, DC 20036 |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-16-2006**   Latest **2-12-2007**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by American Council on Education in September of 2006. I worked as an Executive Assistant when I was constructively discharged on 11/07/06. I filed a Charge of discrimination with the EEOC (Charge Number 570-2006-00606) on 12/26/06. I am currently being subjected to retaliation for filing a Charge with the EEOC. The Respondent has been providing negative references about me to my potential employers. I believe I have been retaliated against for filing a Charge with the EEOC, in violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC WASHINGTON FIELD OFFICE
2007 MAR -1 P 2: 33
1801 L ST. NW
WASHINGTON DC 20507

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2/28/07  *Date*   *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# Certificate of Service

I, Jacqueline T. Robinson Reeder, mailed a copy of the plaintiff's opposition to motion of the pleadings to the lawfirm listed below on July 25, 2006.

Jacqueline T. Robinson-Reeder

Christine N. Kearns
Pillsbury Winthrop Shaw Pittman
2300 N Street, N.W
Washington, DC  200037