CLERK
US DISTRICT & BANKRUPTCY
COURTS

2008 JAN -4 PM 4: 19

RECEIVED

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JACQUELINE T. ROBINSON-REEDER | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | **Civil Case: 07-0880 (JDB)** |
| AMERICAN COUNCIL ON EDUCATION | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## PLAINTIFF MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
## TO HALT IRREPARABLE HARM

The 52 year old African American pro se plaintiff respectfully requests injunctive [1]relief granted immediately and permanently to prevent severe financial harm inflicted by the defendant to prevent plaintiff's employment to gain income since November 7, 2006.

The plaintiff filed EEOC Race charge 570-2006-00606 on December 15 2006. Plaintiff Right-to-Suit was issued on February 12, 2007. Retaliation charge 570-2007-00948 was filed on March 1, 2007. [2]Defendant is retaliating by denying "standard" job reference and providing negative job references to potential employers.

The American Council on Education has basked in their violation of Title VII, of the Civil rights Act of 1964, 42 U.S.C. 2000e-3 (a) to deny a "standard" job reference for the ex-employee to gain employment starting in November 2006. Further causing financial harm on January 9, 2007, June 1 2007, June 25 2007, November 19, 2007, and as of January 4, 2008.

---

[1] Temporary or preliminary relief allows a court to stop retaliation before it occurs or continues. Such relief is appropriate if there is a substantial likelihood that the challenged action will be found to constitute unlawful retaliation, and if the charging party and/or the EEOC will likely suffer irreparable harm because of the retaliation. Although courts have ruled that financial hardships are not irreparable, other harms that accompany loss of a job may be irreparable. For example, in one case forced retirees showed irreparable harm and qualified for a preliminary injunction where they lost work and future prospects for work, consequently suffering emotional distress, depression, a contracted social life, and other related harms.

The Commission concludes that Section 107 applies to retaliation. Courts have long held that the evidentiary framework for proving employment discrimination based on race, sex, or other protected class status also applies to claims of discrimination based on retaliation. Furthermore, an interpretation of Section 107 that permits proven retaliation to go unpunished undermines the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism.

[2] Providing an adverse employment reference or refusing to provide a reference for discriminatory reasons or in retaliation for filing an EEOC charge is a violation of Title VII. Although Title VII and similar state laws typically protect only "employees" from discrimination and retaliation, courts have been willing to extend their protection to former employees in this context. See, e.g., Robinson v. Shell Oil, 519 US 337, 346 (1997) (holding that 42 USC 2000e-3(a), which makes it unlawful for an employer to discriminate against employees who have availed themselves of protections under Title VII, is applicable to former employees).

Examples of post-employment retaliation include actions that are designed to interfere with the individual's prospects for employment, such as giving an unjustified negative job reference, **refusing to provide a job reference**, and informing an individual's prospective employer about the individual's protected activity.

33 However, a negative job reference about an individual who engaged in protected activity does not constitute unlawful retaliation unless the reference was based on a retaliatory motive. The truthfulness of the information in the reference may serve as a defense unless there is proof of pretext, such as evidence that the former employer routinely declines to offer information about its former employees' job performance and violated that policy with regard to an individual who engaged in protected activity.

The defendant has retaliated against the plaintiff by denying the job reference and informing potential employers that EEOC case was filed by "firing', when the ex-employee "resigned" under constructive discharge.

The plaintiff has exhausted her unemployment benefits and depleted her retirement fund. See attachment (1). The plaintiff does not qualify for Welfare assistance. The plaintiff is without medical insurance while suffering from mental stress, unstable angina, breast tumors, tension headaches, irritable bowel syndrome and insomnia. The plaintiff has loss weight and is suffering from depression due from worrying about bills. See attachment (2). *bills*

The defendant neglected to provide and ensure COBRA notices for election due to constructive discharge on November 7, 2007, and kicked plaintiff off property without visit to Human Resources to sign papers for employees that resign. COBRA notifications **were never mailed**. See attachment (3). *ACE letter* ↓ *ATTACH "A"*

The pro se plaintiff has suffered for over three hundred and sixty five days at the malicious behavior of the defendant with no relief from the EEOC or the court. Plaintiff has direct evidence that defendant has [3] retaliated by denying a [4] "standard" job reference.

Plaintiff has [5] circumstantial and direct evidence that beginning November 7, 2006, defendant informed NRI, temporary agency, George Washington University, World Bank, Ford Agency, Graham Staffing, Omni Sheraton

---

[3]     Retaliatory acts designed to interfere with an individual's prospects for employment are unlawful regardless of whether they cause a prospective employer to refrain from hiring the individual\34. As the Third Circuit stated, "an employer who retaliates cannot escape liability merely because the retaliation falls short of its intended result."\35 However, the fact that the reference did not affect the individual's job prospects may affect the relief that is due.

[4]     38 Hashimoto, 118 F.3d at 676. See also EEOC v. L. B. Foster, 123 F.3d at 754 n.4 (plaintiff need not prove that retaliatory denial of job reference caused prospective employer to reject her; such a showing is relevant only to damages, not liability); Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C. Cir. 1981) ("the questions of statutory violation and appropriate statutory remedy are conceptually distinct. An illegal act of discrimination -- whether based on race or some other factor such as a motive of reprisal -- is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of [damages]").

[5]     On behalf of a unanimous U.S. Supreme Court, Justice Thomas declared, "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." The Court ruled that the judgment for Costa would stand even though the only evidence she had to support her claims was that she was punished more severely than her male coworker for the same fight, she was not assigned overtime as frequently as male employees and the company often tolerated sex-based slurs against her. Desert Palace, Inc. v. Costa, 537 U.S. 1009 (6/9/03).

Hotel and TIAA-CREF that ex-employee filed [6]EEOC charge and was fired for being "rude and unprofessional" defaming the plaintiff, while she "resigned." The plaintiff was verbally informed by several potential employers that an [7] "unfavorable reference was given." for reasons of non-hire and denied evidence. Plaintiff tried to secure personnel files from agencies after reading D.C. law on December 27, 2007. Files were refused and references removed to prevent liability after denying employment because of knowledge of plaintiff's EEOC charge. See attachment (4) *D.C. law*

The plaintiff is requesting the court to provide immediate assistance from the onslaught of discrimination and retaliation from the defendant. The defendant is aware the "standard job reference" would provide the employment needed to improve the financial lifestyle for the plaintiff. The defendant is aware the Plaintiff is under protected activity, and has shown no respect for Title VII, CRA of 1964.

The American Council on Education cannot offer the court any reason for denying the job reference. They have not proven that denying job references is a policy. The defendant does not have to give a job reference, but to deny it shows liability to retaliation since the ex-employee filed an EEOC charge and more importantly since the ex-employee is [8]unemployed to date. Plaintiff's reputation and ability to gain employment has been intentionally harmed by the defendant's defamation of character. Plaintiff has an excellent work history of 10 – 15 years and outstanding references which allowed the permanent hire at the American Council on Education in September 2006.

If the court denies or rejects this motion, the plaintiff will be destitute.

If the American Council on Education did not intend to harm the plaintiff they would afford the "standard" job reference which they have "tempted" the plaintiff with, but later refused and denied.

 - Providing an adverse employment reference or [refusing to provide a reference for discriminatory reasons or in retaliation for filing an EEOC charge is a violation of Title VII.] Although Title VII and similar state laws typically protect only "employees" from discrimination and retaliation, courts have been willing to extend their protection to former employees in this context. See, e.g., Robinson v. Shell Oil, 519 US 337, 346 (1997) (holding that 42 USC 2000e-3(a), which makes it unlawful for an employer to

---

[6] Some employers have retaliated against former employees who have filed civil rights discrimination claims by giving prospective employers negative references and advising them of the fact of EEOC filing. Although some earlier cases refused to recognize post-employment blacklisting or negative references given to prospective employers as a cognizable claim under Title VII. - most later cases regarded such claims as consistent with the rights protected under Title VII.

[7] Title VII prohibits discrimination against a current employee, former employee, or applicant because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII,@ 42 U.S.C. '2000(e)(3)(a).

Title VII also prohibits discrimination against a current or former employee or applicant because he has opposed any practice made in unlawful practice by Title VII,@ 42 U.S.C. '2000e-3(a) the courts have held that an employee is protected if he or she had a reasonable and good faith belief that the practice they opposed constituted a Title VII violation even if it turned out that the practice they opposed was not a violation of Title VII, Dee v. Colt Construction and Delivery Company, 28 F.3d 1446 (7th Cir.)(1994).

[8] Remember, if the statement is one that is defamatory per se, the plaintiff does not need to prove any special damage. In such a case, the plaintiff is entitled to recover general damages, which include harm to reputation, without evidence of the harm incurred. Even where the defamation is actionable per se, the plaintiff may recover "special damages" over and above general damages, if he or she pleads and proves that the defamatory statement was a substantial factor in causing that harm. **Such special damage may include an inability to obtain employment.**

discriminate against employees who have availed themselves of protections under Title VII, is applicable to former employees).

> See Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997) (evidence of retaliation supported jury finding of reckless indifference to plaintiff's rights; although $7 million award for punitive damages was excessive, district court's lowered award of $300,000 was not).

Section 706(g) empowers the court to order declaratory relief or injunctive relief such as reinstatement or hiring of employees with or without back pay, or "any other equitable relief as the court deems appropriate.

**Violations under Title VII**
The defendant, the American Council on Education is intentionally retaliating against the plaintiff by the refusal of a "standard" job description under violation of the Title VII Civil Rights Act, 42 U.S.C. section 2000e-2 (m) and 2000e-5(g) (2)

> (b) It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against any individual of his race, color, religion, sex or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

> Section 704 of the Title VII establishes that is unlawful for an employer to:

> Discriminate against any of his employees or applicants for employment. because [the employee] has oppose any practice made an unlawful employment practice by this subchapter or because [the employee] has made a charge, testified, assisted or participated in any manner of an investigation, proceeding, or hearing under this chapter.

Plaintiff filed for immediate injunctive relief dated August 13, 2007 and has continued to suffer until January 4, 2008. The 52 year old, African American pro se plaintiff has exhausted her unemployment compensation benefits and entire retirement funds during the period of December 15, 2006 to January 4, 2008.

The plaintiff asks for immediate relief:

"SEC. 1977A. DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION IN EMPLOYMENT. *[42 U.S.C. 1981a]*

"(a)    Right of Recovery. -    "(1) Civil Rights. - In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

(g) (1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

4

Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

In a disparate treatment case, the statute (Title VII) allows the following remedies (as applicable): injunctive relief, reinstatement, front pay (until or in lieu of reinstatement), back pay, attorney's fees and costs, compensatory damages for any past or future out-of-pocket losses and any emotional harm, and punitive damages if the employer acted with malice or with reckless indifference to the individual's federally protected rights. Punitive damages are unavailable against a federal, state, or local government employer.

Retaliation - Title VII prohibits discrimination against a current employee, former employee, or applicant because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII,@ 42 U.S.C. '2000(e)(3)(a). Title VII also prohibits discrimination against a current or former employee or applicant because he has opposed any practice made in unlawful practice by Title VII,@ 42 U.S.C. '2000e-3(a) the courts have held that an employee is protected if he or she had a reasonable and good faith belief that the practice they opposed constituted a Title VII violation even if it turned out that the practice they opposed was not a violation of Title VII, *Dee v. Colt Construction and Delivery Company,* 28 F.3d

*The plaintiff would not have filed the complaint if she had been able to enjoy employment. (See attachment B)*

7 /All are equal before the law and are entitled without any discrimination to equal protection of the law. All are entitled to equal protection against any discrimination in violation of this Declaration and against any incitement to such discrimination.

23 / Everyone has the right to work, to free choice of employment, to just and favorable conditions of work and to protection against unemployment.

25/Everyone has the right to a standard of living adequate for the health and well-being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control.

========

*The plaintiff prays for mercy and justice from the U.S. District Court of the District of Columbia to stop the unpunished retaliation with immediate and swift action to prevent the mental stress allowing heart conditions, tension headaches, loss of appetite, insomnia- due to worrying about being poor and evicted and the inability to gain employment. The American Council on Education hates the plaintiff because she resigned without allowing them the power to terminate employment as intended.*

*The plaintiff has suffered from November 7, 2006 until January 4, 2008. Hopefully, my prayers will be answered for the upcoming year and I can start the improvement of my life as this discrimination never occurred.*

Sincerely,

Jacqueline T. Robinson-Reeder
2140 Brooks Drive-421
District Heights, Maryland 20747
301-967-1092

5

# Certificate of Service

I, Jacqueline T. Robinson-Reeder hereby certify that on January 4, 2008, mailed a copy of the plaintiff's motion for preliminary relief the address below.

_Jacqueline T. Robinson-Reeder_
Jacqueline T. Robinson-Reeder
Plaintiff


Mailed to:
Christine N. Kearns
Pillsbury Withrop Shaw
2300 N Street, NW.
Washington DC  20037
202-663-8000

## quarterly review

**TIAA CREF**
FINANCIAL SERVICES    FOR THE GREATER GOO

*July 1, 2007 - September 30, 2007*

730 Third Avenue, New York, NY 10017-3206

1814/ 5/MBTC02

*ATTACH (1)*

**Website**
www.tiaa-cref.org

**Automated 24-Hour Information**
800 842-2252

**Personal Assistance**
800 842-2776
M-F, 8am-10pm ET
Sat., 9am-6pm ET

JACQUELINE T ROBINSON
2140 BROOKS DR # 421
FORESTVILLE MD 20747-1034

## portfolio summary

|  |  | this quarter |  | this year |
|---|---|---|---|---|
| Beginning value as of: | *(06/30/07)* | $24,268.11 | *(12/31/06)* | $32,674.88 |
| **Changes during the period:** |  |  |  |  |
| Contributions |  | 0.00 |  | 0.00 |
| Distributions & rollovers |  | -17,013.41 |  | -27,013.41 |
| Net investment gain/loss |  | 295.31 |  | 1,776.13 |
| TIAA interest |  | 59.37 |  | 171.78 |
| Ending value: |  | $7,609.38 |  | $7,609.38 |

**total value as of 09/30/07:    $7,609.38** *

Investing for retirement usually means experiencing both market upswings and downturns. Diversification across asset classes and funds may help reduce volatility over time. We invite you to visit www.TIAA-CREF.org/tools for tools to help you create a portfolio to match your investment objective. Diversification is a technique to help reduce risk, but is not a guarantee against loss.

\* *Dec 28.07*
*Requested remainder to provide income due to unemployment*



1814SOS



JOES Home | Unemployment Ir

*Secutified until 2008*

You are logged in as
**JACQUELINE T ROBINSON
REEDER**
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

## Claimant Profile

Benefit Year End:
Weekly Benefit Amo
Available Balance:

File Claims

Payment History

View Appeals

1099 Data

Direct Deposit

My Profile

Contact Us

### Profile Information

| | |
|---|---|
| **Mailing Address** | 2140 BROOKS DRIVE APT 421 |
| **State** | MD |
| **City** | DISTRICT HEIGHT |
| **Zip** | 20747 |
| **Zip Ext.** | 1034 |
| **Address Change Date** | 2/9/2007 |
| **Telephone Number** | (301) 967-1570 |
| **Cell Phone Number** | (000) 000-0000 |
| **Email Address** | |
| **Password** | 2744ROBI |

### Benefit Information

| | |
|---|---|
| **Benefit Year Begin Date** | 12/17/2006 |
| **Benefit Year End Date** | 12/15/2007 |
| **Claim Status** | BENEFITS EXHAUSTED |
| **Maximum Benefit Amount** | $9,334.00 |
| **Total Paid Amount** | $9,334.00 |
| **Balance** | $0.00 |
| **Interview Schedule Date** | |
| **Interview Schedule Time** | |
| **Eligibility Review Date** | |
| **Eligibility Review Time** | |

### Reopened Claims Filed

Edit







**AAA**
**TRANSPORT**

2015 Marlboro Road
Lothian, MD 20711-9541

Phone: (301) 952-1193

Federal Tax ID #: 521672274

| | | | |
|---|---|---|---|
| Patient Name: | Jacquelyn Robinson-Reeder | From: | Doctors Hospital |
| Run Number: | 07-96485 | To: | Washington Adventist Hospital |
| Date of Call: | 12/07/2007 | | |
| | | Primary Payor: | Bill Patient |
| Jacquelyn Robinson-Reeder | | | |
| 2140 Brooks Dr Apt 421 | | Secondary Payor: | |
| District Heights MD 20747-1034 | | | |

*ATTACH II*

| Description | Qty. | Price | Contractual Allowance | Amount |
|---|---|---|---|---|
| A0426 Als Non Emerg Base Rate | 1 | 1,100.00 | 0.00 | 1100.00 |
| A0425 Als Mileage | 10 | 110.00 | 0.00 | 110.00 |

**PLEASE PAY THIS AMOUNT:** | $1,210.00 |

**THE AMOUNT OWED ON THIS BILL IS YOUR RESPONSIBILITY.**
**OUR RECORDS INDICATE YOU HAVE NO INSURANCE.**
**IF YOU HAVE INSURANCE THAT COVERS THIS SERVICE,**
**PLEASE COMPLETE THE BACK OF THIS FORM AND RETURN IT TO US.**

*Please refer to your run number on all correspondence.*

***DETACH LOWER PORTION AND RETURN STUB WITH YOUR PAYMENT. THANK YOU.***

IPPALAM011

| | CHECK CARD USING FOR PAYMENT |
|---|---|
| Cards | |
| CARD NUMBER  PLUS 3 DIGIT SECURITY CODE (on back of card) | EXP. DATE / |
| CARDHOLDER NAME | AMOUNT $ |
| CARDHOLDER SIGNATURE | |

PO Box 1050
Dunkirk MD 20754-1050
ADDRESS SERVICE REQUESTED

December 13, 2007

#BWNHRMD   0452701   0072209
#1213 1758 0072 2093#   07-96485-1

Jacquelyn Robinson-Reeder
2140 Brooks Dr Apt 421
District Heights MD 20747-1034

ALL AMERICAN AMBULANCE & TRANSPORT
PO Box 1050
Dunkirk MD 20754-1050

Run Number:   07-96485
Balance:      $1,210.00

Amount Enclosed:  $

# Southern Maryland Hospital
## 7503 Surratts Road
## Clinton, MD 20735
### (301) 868-8000
### www.SMHCHealth.org

**Person Responsible for Bill:**

**Patient:**

JACQUELINE ROBINSON
2140 BROOKS DR #421
FORESTVILLE,MD 20747

ROBINSON JACQUELINE
Account Number: 1624876
Admission Date: 10/06/07
Discharge Date: 10/06/07
Billing Date  : 10/14/07

——————————— This is for Informational Purposes Only ———————————
** THIS IS NOT A BILL **

Dear JACQUELINE ROBINSON

This is a summary of charges for the services provided during the visit for the above
named patient.  For your convenience, it has been summarized by major service area.
An itemized bill is available upon request.

| SERVICE DESCRIPTION | CHARGES |
|---|---|
| Pharmacy | 13.39 |
| * Pathology/Laboratory | 8.86 |
| * Radiology/X-Ray | 128.77 |
| * Emergency Room Services | 529.20 |
| Total | 680.22 |

* Your insurance company may be billed separately by physicians or professional
groups for reading and interpreting the service(s) identified above.  Please see the
listing for those billing services on the reverse/back of this letter.

Our records indicate that the following insurance(s) may be responsible for a portion
or all of these charges.  Please advise us of any discrepancies.

   Insurance 1:  SYMETRA LIFE INS COMPANY     ID #: 28352 8496

Charges may be added to your account as a result of services provided before dis-
charge but billed after completion of test results and physician interpretation.

If you have any questions regarding this summary bill or need additional information,
please call our billing office at (301) 877-4262 between 9:00 AM and 4:00 PM.

   >>>  PLEASE KEEP THIS SUMMARY OF CHARGES FOR FUTURE REFERENCE  <<<

View and Search our Consumer Health Information Portal!  Your Complete Guide to
Being Well and Staying Healthy..visit us at:  **www.SMHCHealth.org**



# SOUTHERN MARYLAND
## HOSPITAL CENTER
### 7503 Surratts Road ❖ Clinton, Maryland 20735
### (301) 868-8000

*Main Hospital*
**(301) 868-8000**

*Emergency Dept.*
**(301) 877-4500**

## EXITCARE® PATIENT INFORMATION

Patient Name: Jacqueline Robinson
Attending Healthcare Provider: SANDRA  BANKS, MD

# Headache

Headaches are caused by many different problems. **Most commonly, headache is caused by muscle tension from an injury, fatigue or emotional upset.** Excessive muscle contractions in the scalp and neck result in a headache that often feels like a tight band around the head.  Tension headaches often have areas of tenderness over the scalp and the back of the neck.  These headaches may last for days or longer, and some build up into migraines.

**Migraines usually cause a throbbing headache, which is made worse by activity.** Sometimes only one side of the head hurts.  Nausea, vomiting and sinus pain or stuffiness are common with migraines.  Visual symptoms such as light sensitivity, blind spots, or flashing lights may also occur.  Loud noises may worsen migraine headaches.  Many factors may cause migraine headaches:
- Emotional stress, lack of sleep, and menstrual periods
- Alcohol and some drugs (such as birth control pills)
- Diet factors (fasting, caffeine, food preservatives, chocolate)
- Environmental factors (weather changes, bright lights, odors, smoke)

Other causes of headaches include minor injuries to the head. Arthritis in the neck, problems with the jaw, eyes, ears, or nose are also causes of headaches.  Allergies, drugs, alcohol, and exposure to smoke can also cause moderate headaches. Rebound headaches can occur from excessive use of pain medications.
**Nervous system infections, brain tumors, strokes and other blood vessel problems can all cause bad headaches. These are rare.**

Treatment of headaches includes medicines for pain and relaxation. Ice packs or heat applied to the back of the head and neck help some people. Massaging the shoulders, neck and scalp are often very useful. Relaxation techniques and stretching can help prevent these headaches.  Avoid alcohol and cigarette smoking as these tend to make headaches worse.  Please see your caregiver if your headache isn't better in 2 days.

## SEEK IMMEDIATE MEDICAL CARE IF:
- You develop a high fever, chills, or repeated vomiting
- You Pass out or have difficulty with vision
- You develop unusual numbness or weakness of your arms or legs
- You develop severe pain despite medication
- You develop confusion, or neck stiffness
- You have a worsening of a headache or do not obtain relief

FOLLOW-UP INSTRUCTIONS

**YOUR STATEMENT**

...nk you for choosing Adventist HealthCare for your healthcare services. **The balance shown is your responsibility and is due no later than 10 days from the date of this statement.** Please pay your balance in full or contact a customer service representative for payment arrangements at the appropriate telephone numbers listed on the back of this statement.

## ► SUMMARY OF CHARGES

| | |
|---|---|
| BLOOD | 30.51 |
| CARDIAC CATH LAB | 803.27 |
| SUPPLIES | 574.31 |
| PHARMACY | 2.24 |
| **Total Charges** | 1410.33 |

## ► INSURANCE INFORMATION

**PRIMARY**
| | |
|---|---|
| Insurance Name | |
| Name of Insured | SELF - PAY |
| Policy Number | JACQUELINE ROBINSO |

## ► QUESTIONS

Billing questions or an itemized bill request? Call your Customer Service representative at (301) 315-3660, Mon-Thurs 9:00am to 4:30pm, Friday 9:00am to 4:00pm. See back for more information.

## ► ACCOUNT SUMMARY

| | |
|---|---|
| Statement date | 12/13/2007 |
| Date of Service | 12/07/07 |
| Account Number | 11676558 |
| Insurance Payments | $.00 |
| Contractual Adjustments | $.00 |
| Patient Payments | $.00 |

---

PLEASE RETAIN THIS PORTION FOR YOUR RECORDS

| This is your balance | $1410.33 |
|---|---|

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT
☐ Check box if below address is incorrect and indicate change(s) on reverse side.



**Adventist HealthCare**

WASHINGTON ADVENTIST HOSPITAL
PO BOX 62121
BALTIMORE, MD 21264-2121

RETURN SERVICE REQUESTED

**PATIENT NAME:** ROBINSONREEDER ,JACQUELI    34621
Please write your account number on your check.
Make check payable to Adventist HealthCare.    34621*T900MB8GU000421



| IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW. |
|---|
| CHECK CARD USING FOR PAYMENT |

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER _____    SIGNATURE CODE _____

SIGNATURE _____    EXP. DATE _____

| DUE DATE | STATEMENT DATE | ACCT. # |
|---|---|---|
| 12/23/2007 | 12/13/07 | 11676558 OUT |

| AMOUNT DUE | SHOW AMOUNT PAID HERE |
|---|---|
| $1410.33 | $ |

652752C

0101

JACQUELINE ROBINSONREEDER
2140 BROOKS DRIVE #421
SUITE 300
DISTRICT HEIGHTS, MD 20747-1067

WASHINGTON ADVENTIST HOSPITAL
PO BOX 62121
BALTIMORE, MD 21264-2121

Doctors Community Hospital
P.O. Box 630824
Baltimore, MD 21263-0824
301-552-8092

| | PAGE 1 |
|---|---|
| AMOUNT ENCLOSED | TYPE FINAL |

| PATIENT NAME | | | | |
|---|---|---|---|---|
| ROBINSON-REEDER,JACQUELINE | | | | |

| PATIENT ACCOUNT NO. | ADMISSION DATE | DISCHARGE DATE | BILLING DATE |
|---|---|---|---|
| V00000996486 | 12/06/07 | 12/07/07 | 12/11/07 |

GUARANTOR

ROBINSON-REEDER, JACQUELINE
2140 BROOKS DRIVE #421
DISTRICT HEIGHTS   MD   20747

*20747*

INSURANCE COVERAGE            POLICY NUMBER

PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

| DESCRIPTION | QTY | AMOUNT |
|---|---|---|
| SEMI PRIVATE ROOM AND BOARD | 1 | 1120.00 |
| ADMISSION CHARGE | 1 | 130.00 |
| PHARMACY | 5 | 5.36 |
| MED SUR SUPPLIES | 2 | 137.85 |
| LABORATORY | 1 | 13.85 |
| CHEMISTRY | 8 | 155.15 |
| HEMATOLOGY | 3 | 36.05 |
| DX XRAY | 1 | 55.55 |
| EMERGENCY MEDICAL SCREENING | 1 | 50.00 |
| ER BEYOND EMTALA | 1 | 343.00 |
| EKG ECG | 1 | 14.60 |

This statement is for informational purposes only. Please review the insurance information at the top of this statement. If the information is incorrect, please contact the Business Office by calling (301-552-8093). An itemized bill is available upon request.

ACCOUNT NUMBER   V00000996486

| | |
|---|---|
| TOTAL | 2061.41 |
| TOTAL CREDITS | 0.00 |
| TOTAL DUE | 2061.41 |
| ESTIMATED INSURANCE COVERAGE | 0.00 |

FFSUMBILL.PCL - 040607    **RETAIN THIS PORTION FOR YOUR RECORDS**    **(THIS IS NOT A BILL)**    2061.41



CAPITOL CARDIOLOGY ASSOCIATES
8100 GOOD LUCK ROAD
SUITE #302
LANHAM, MD 20706-3504

31380

RETURN SERVICE REQUESTED

0101

BALANCE FORWARD:
LAST PAYMENT AMOUNT:  0.00
LAST PAYMENT DATE:
POSTING DATES:  FROM 12/14/2005  TO  12/14/2007
BILLING INQUIRIES, CALL:  (301) 552-1270 • FAX:(301) 552-1202
MONDAY THRU THURSDAY 9AM-4PM

IF PAYING BY MASTERCARD OR VISA, FILL OUT BELOW.

CHECK CARD USING FOR PAYMENT

☐ MASTERCARD    ☐ VISA

CARD NUMBER

SIGNATURE                          SIGNATURE CODE

                                   EXP. DATE

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 12/14/2007 | $6365.00 | 1-115350.0 |

PAGE: 1 of 1

SHOW AMOUNT
PAID HERE   $

200002A

JACQUELINE T. ROBINSON-REEDER
2140 BROOKS DR.
#421
DISTRICT HEIGHTS, MD 20747-1034

CAPITOL CARDIOLOGY ASSOCIATES
8100 GOOD LUCK ROAD
SUITE #302
LANHAM, MD 20706-3504

31380*T910NKNIH000899

☐ Please check box if address is incorrect or insurance
☐ information has changed, and indicate change(s) on reverse side.

## STATEMENT

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

| SERVICE DATE | PATIENT | PROC. CODE | DESCRIPTION | PROVIDER | AMOUNT |
|---|---|---|---|---|---|
| 12/05/2007 | JACQUELINE | 78465 | SPECT/STRESS (THALLIUM/CARDIOLI | KO, THOMAS Y | 0.00 |
| 12/05/2007 | JACQUELINE | 93015 | CARD-VASC STRESS TEST, SUPERV, | KO, THOMAS Y | 1300.00 |
| 12/05/2007 | JACQUELINE | 78478 | MYOCARDIAL PERFUSION & WALL MOT | KO, THOMAS Y | 400.00 |
| 12/05/2007 | JACQUELINE | 78480 | MYOCARDIAL PERFUSION & EJECTION | KO, THOMAS Y | 240.00 |
| 12/05/2007 | JACQUELINE | A9500 | CARDIOLITE/SESTAMIBI--PER DOSE | KO, THOMAS Y | 245.00 |
| 12/05/2007 | JACQUELINE | A4216 | STERILE WATER/SALINE, 10 ML | KO, THOMAS Y | 320.00 |
| | | | | | 10.00 |
| | | | | *PATIENT RESPONSIBILITY-*-> | 2515.00 |
| 12/07/2007 | JACQUELINE | PWAHO | PWAHO-WAH-OUTPAT | Proc, Ashai | 0.00 |
| 12/07/2007 | JACQUELINE | 9351026 | CATH, LEFT HEART, PERCUTANEOUS- | Proc, Ashai | 1800.00 |
| 12/07/2007 | JACQUELINE | 93543 | CATH, INJ PROCEDURE LT VENT | Proc, Ashai | 350.00 |
| 12/07/2007 | JACQUELINE | 93545 | INJ PROCEDURE FOR SELECTV COR A | Proc, Ashai | 500.00 |
| 12/07/2007 | JACQUELINE | 9355626, | IMAGING SUPER,I&R PULM ANGIOG,E | Proc, Ashai | 800.00 |
| 12/07/2007 | JACQUELINE | 9355526, | IMAGING SUPER, I&R VENTRIC ANGI | Proc, Ashai | 400.00 |
| | | | | *PATIENT RESPONSIBILITY-*-> | 3850.00 |

| | CURRENT | 31-60 | 61-90 | OVER 90 | TOTAL | ACCOUNT BALANCE |
|---|---|---|---|---|---|---|
| PATIENT AGING | 6365.00 | 0.00 | 0.00 | 0.00 | 6365.00 | ▶▶▶▶▶▶ $6365.00 |
| INSURANCE AGING | | | | | | DUE FROM PATIENT |
| TOTAL AGING | | | | | | ▶▶▶▶▶▶ $6365.00 |

DUE DATE: 12/29/2007

MESSAGES:
THIS IS YOUR MONTHLY STATEMENT.  CALL THE OFFICE WITH ANY QUESTIONS.  THANK YOU.   CAPITOL
CARDIOLOGY ASSOCIATES  (301) 552-1270



*Attach. 3*

**American Council on Education**
Human Resources Department

November 13, 2006

*Why was I forced out on November 2? Adverse for ?*

Ms. Jacqueline Robinson-Reeder
2140 Brooks Drive, #421
Forestville, MD 20747

Dear Jackie:

This letter is to confirm that you resigned from the American Council on Education effective November 27, 2006, and that your employment terminates on that date. Your benefits are affected as follows:

The Council will continue to pay your medical and dental insurance with the Association Mutual Health Insurance Company (AMHIC) and Select Benefit Plan Administrators through November 30, 2006. If you wish to continue your dental, vision and/or health insurance coverage beyond November 30, 2006, please complete the election form which will be attached to the COBRA letter you will receive and forward to AMHIC by January 31, 2007. If you have any questions, please contact the AMHIC office at 240/482-1700.

*letter rec'd no mention of dependents*

The Council will continue to pay your life insurance coverage in the amount of $75,000 through November 30, 2006. I have enclosed an Application for Coverage of Group Life Insurance, should you wish to continue coverage beyond November 30, 2006. The application should be sent directly to AMHIC at 7735 Old Georgetown Road, Suite 920, Bethesda, MD 20814 within 31 days of your termination date if you wish to convert your group coverage to an individual policy.

Your check for accrued annual leave you had on record as of November 7, 2006, not to exceed 24 days, will be mailed to your home address.

Good luck and best wishes to you.

Sincerely,

Noreene Duggan
Assistant Director

Enclosure

*EXHIBIT "A"*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JACQUELINE T. ROBINSON-REEDER,<br><br>               **Plaintiff**<br><br>**vs.**<br><br>AMERICAN COUNCIL ON EDUCATION<br><br>               **Defendant** | )<br>)<br>)<br>)<br>)<br>)    **Civil Case: 07-0880 (JDB)**<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF IVORY L. TEAGUE, JR.

I, Ivory L. Teague, Jr, states as follows:

That on Monday, November 6, 2006, at around the timing of 7:30 p.m., I assisted Mrs.

Jacqueline T. Robinson-Reeder with the removal of her office belongings from 1331 H

Street, N.W.   The belongings consisted of: 2 boxes filled with plants, books, and other

items and 2 large picture frames.

I declare that the foregoing is true and correct.

_____

Signature of Ivory L. Teague, Jr.

Executed on Date:    7-17-07

8-66   8-67

## EMPLOYEES' ACCESS TO PERSONNEL RECORDS

(See also text at § 8.05.)

| | Employers Covered by Statute | | May Records Be Reviewed? | Are There Penalties for Employer Violations? | Citations to Authority |
|---|---|---|---|---|---|
| | Public | Private | | | |
| AL | Yes. | — | Documents relating to disciplinary actions must be supplied to employee. | — | Ala. Code § 36-26-27.1. |
| AK | Yes. | Yes. | Yes. | State has no statutory requirements. | Alaska Stat. § 23.10.430. |
| AZ | Yes. | — | Yes. | — | Ariz. Admin. Code R2-5-105(6). |
| AR | Yes. | No. | Yes. | Yes, if negligent, Violator shall be guilty of a class C misdemeanor. | Ark. Code Ann. §§ 25-19-104, 25-19-105. |
| CA | No. | Yes. | Yes. At reasonable times and intervals. | Employer that violates any provision of the statute shall be guilty of a misdemeanor, punishable by a fine of not less than $100, imprisonment of not less than 30 days, or both. | Cal. Lab. Code §§ 1198.5, 1199. |
| CO | Yes. | No. | Yes. | State has no statutory requirements. | Colo. Rev. Stat. Ann. § 24-72-204. |
| CT | No. | Yes. | Yes. Twice per year. | No. | Conn. Gen. Stat. Ann. §§ 31-128a-31-128h. |
| DE | Yes. | Yes. | Yes. Except for reasonable cause, employer may limit inspection to once per year. Employer may require requesting employee to inspect records on employee's free time. | Yes. Not less than $1,000 and not more than $5,000 for each violation. | Del. Code Ann. tit. 19, §§ 730-735. |
| DC | Yes. | No. | Yes. | State has no statutory requirements. | D.C. Code Ann. §§ 1-632.1 et seq. |
| FL | — | — | — | — | State has no statutory provisions. |
| GA | — | — | — | — | State has no statutory provisions. |
| HI | Yes. | No. | Yes, except for material prohibited by statute. | — | Haw. Rev. Stat. §§ 92F-3, 92F-21, 92F-22. |

(Table continues.)

Table 8-5

# Table 8-5
## LAWS GOVERNING
## BLACKLISTING AND REFERENCES

CHAPTER 8—WORKPLACE PRIVACY

8-62

(See also text at § 8.05.)

| | Does State Have Any Statutes Governing Blacklisting? | Prohibition Against Employer Acting to Prevent Former Employee from Obtaining Employment? | On Request, May Employer Make Truthful Statements About Former Employee? | On Request, Must Employer Furnish Former Employee with Written Reasons for Discharge? | Penalties for Violation of Statute | Citations to Authority |
|---|---|---|---|---|---|---|
| AL | Yes. | Yes. | State has no statutory requirements. | State has no statutory requirements. | Violator is guilty of a misdemeanor. | Ala. Code § 13A-11-123. |
| AK | Yes. | — | Yes. | — | — | Alaska Stat. Ann. § 09.65.160. |
| AZ | Yes. | Yes. | Yes. | State has no statutory requirements. | Violator is guilty of a Class 2 misdemeanor. | Ariz. Rev. Stat. Ann. §§ 23-1361, 23-1362. |
| AR | Yes. | Yes. | Yes. | State has no statutory requirements. | Violator may incur a fine of $100-$500, be imprisoned for 1 year, or both. | Ark. Code. Ann. § 11-3-202. |
| CA | Yes. | Yes. | Yes. | State has no statutory requirements. | Violator is guilty of a misdemeanor. | Cal. Lab. Code § 1050; Newberry v. Pacific Racing Ass'n, 854 F.2d 1142 (9th Cir. 1988) (holding that former employer can make truthful statements about former employee as long as no misrepresentation is involved). |
| CO | Yes. | Yes. | Yes. | State has no statutory requirements. | Violator is guilty of a misdemeanor, punishable by a fine of $10-$250, imprisonment for not more than 60 days, or both. | Colo. Rev. Stat. Ann. §§ 8-2-111.5, 8-2-114, 8-2-115. |
| CT | Yes. | Yes. | Yes. | State has no statutory requirements. | Violator may incur a fine of $50-$200. | Conn. Gen. Stat. Ann. § 31-51. |
| DE | Yes. | — | Yes. | — | — | Del. Code Ann. tit. 19, § 709. |
| DC | — | — | — | — | — | State has no statutory provisions. |

February 26, 2006

*EXHIBIT 1*

Mr. David Ward
President
American Council on Education
1 Dupont Circle, N.W.
Washington, D.C.

Dear Mr. Ward,

I hope that you find me eligible for re-hiring in a comparable position at the ACE location. My reason for filing the EEOC case was a reaction to the inappropriate probation that did not afford me the opportunity to explain the accusations that were exaggerated due to my inability to install the PeopleSoft program alone or ignore the intolerable conditions after Ms. Wadlington's hire to HED.

The EEOC has issued a paper giving me the 'Right to Sue" in court. I have no interest in this procedure, if given the opportunity to find a reasonable job where I can work with the respect that I am accustomed to. In reference to the probation, I have found the below information from the D.C. Superior Court regarding the procedures for handling my situation. Mr. Ward, I never received a warning or counseling. I wasn't aware of any complaints until the probation letter. This was totally unfair.

> **(2) The courts have endorsed the concept of corrective or progressive discipline. This approach regards the purpose of discipline as a means for employees to know and understand what standards are required of them. Efforts should be made to correct employees' behavior through a system of graduated disciplinary measures such as counseling and warnings.**

My reputation with prior employers has been excellent and I have never been accused of being rude to anyone in my career. There is no history of these accusations in my work ethic. I was well liked by the HED board members and staff. I staffed the HED Board meeting and the Annual Meeting where my personality was well received. My work performance during my service as a temporary employee in June 2006, was well-liked enough to allow my permanent hiring in September 2006. My personality has been described as compassionate, hard-working and fun-loving.

During my orientation visit to ACE, I thanked everyone personally who tried to help me with the installation of PeopleSoft. I went so far as to embrace staff and search for supervisors to render compliments. This behavior can be proven.

I have several letters of recommendation from executive staff; however the last negative reference from ACE has taken priority and caused my failure to find employment. Someone at ACE is giving references to potential employers that I was "fired instead of my resignation."

I have been advised to remove HED from my resume to be successful in completing my job search, where the experience at HED was a great achievement to my career commitment in the Education field.

Mr. Ward, I have the potential of being an excellent employee at ACE and deserve to continue my career at your organization without the conditions being so forced. I truly believe that you are an honest and respectful human-being, seeing fit to make the decision to assist me in continuing my career to provide for my son's education during his sophomore year at Bowie State University. Any assistance that you could provide at this time would be deeply appreciated.

Thank you.

Sincerely,
Jacqueline T. Robinson-Reeder

EXHIBIT C

January 9, 2006

To:        Ms. Coleen Collins
           ACE, Human Resources

From:      Jacqueline T. Robinson-Reeder

Subject:   Employee reference letter

I have been trying to secure a job referral from Christine Morfit. I have left telephone messages, sent e-mail's and have asked temporary agencies to call for references so that I can find employment. All of the requests have been ignored. Therefore, I have been denied employment since November 7, 2006, because there is no reference letter from my prior employer to be obtained.

My performance at HED was productive and there was no problem stated in my letter regarding my job performance other than false and exaggerated verbal accusations. I can find no reason for my employer to behave in this manner to ruin my career and financial well-being because I complained and chose to resign from an intolerable working environment which was documented and started to occur since the employment of LaTisha Wadlington in HED.

After writing my resignation letter on November 6, 2006, to be effective on November 27, 2006, I was asked to remove my personal belongings immediately from HED on November 6, 2006, instead. Due to the short notice of this demand, my husband could not pick me up in the car to hold my boxes. He was working in Bowie, so I had to call my minister. I was devastated and none of this made any sense to me. I could not carry my boxes while walking to the subway station.

Under the circumstances, which seemed like I was being fired, I handled the situation very well and remained professional and dedicated. I volunteered to stay with Christine to assist her with completing the staff's purchase orders, organize my work area for my replacement and show her where the office key's and files were, etc., I stayed until 7:00 p.m. working to organize and prepare the office.

At the end of the day, on November 6, 2006, we did a walk-thru of the office area and I thanked Christine for hiring me. We embraced after working so well together, and she promised to write a reference letter for me, which has been ignored to date, January 9, 2007.

I believe that ACE can find a better way to handle this situation appropriately and with respect towards an employee that resigned.

Best regards, Jackie:}

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACQUELINE T. ROBINSON-REEDER,** )<br>)<br>**Plaintiff** )<br>)<br>**vs.** )<br>)<br>)<br>**AMERICAN COUNCIL ON EDUCATION** )<br>)<br>)<br>**Defendant** )<br>) | **Civil Case: 07-0880 (JDB)** |

## PROPOSED ORDER

Jacqueline T. Robinson-Reeder, hereby requests pursuant to LCvR7, this matter before

Judge John D. Bates on the plaintiff's motion for "Preliminary Injunctive Relief" against

the American Council on Education to gain employment. After through consideration,

Judge John D. Bates finds that this motion is well taken and should be granted.


IT IS THEREFORE ORDERED that the plaintiff's motion is granted and so ordered

on date:_____

Judge John D. Bates
United States District Court for District of Columbia