**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JACQUELINE ROBINSON-REEDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 1:07-cv-00880 (JDB) |
| | ) | |
| AMERICAN COUNCIL ON EDUCATION, | ) | ELECTRONICALLY FILED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTIVE RELIEF TO HALT IRREPARABLE HARM**

Defendant American Council on Education ("ACE"), through the undersigned counsel,

respectfully submits this Opposition to Plaintiff Jacqueline Robinson-Reeder's Motion for

Preliminary Injunctive Relief to Halt Irreparable Harm.  In this Motion, Ms. Robinson-Reeder

alleges that ACE has retaliated against her in violation of Title VII, because she filed a Charge

with the Equal Employment Opportunity Commission ("EEOC"), by not providing prospective

employers with a "standard job reference," but, rather, providing negative job references.  She

asks the Court to enjoin this alleged conduct.

The Court should deny the Motion.  The issues raised in it are premised entirely on the

viability of a portion of the retaliation claim in Ms. Robinson-Reeder's Complaint.  ACE has

demonstrated in its Motion for Judgment on the Pleadings (Document 8) that her entire

retaliation claim should be dismissed as a matter of law.  Simply put, Ms. Robinson-Reeder has

failed to exhaust her administrative remedies on any portion of her retaliation claim, including

the portion relating to alleged negative references.[1]  Further, she presents no "evidence" in

---

[1] In the Complaint, Ms. Robinson-Reeder also claims alleged retaliation based upon ACE's
decision to put her on a 30-day probation following repeated instances of rude and unprofessional

support of the claim that ACE has given negative references to prospective employers. The only evidence is to the contrary. Her Motion is based solely on inadmissible hearsay. The Court should, therefore, deny the current Motion for injunctive relief.

## I.     BACKGROUND

The Court is familiar with the procedural and factual background of this case through various motions already in file. In summary, Ms. Robinson-Reeder filed a Complaint on May 10, 2007, alleging that she experienced racial discrimination and retaliation during her brief period of employment at ACE. She was hired on September 7, 2006, and quit on November 7, 2006. She also claims that ACE then retaliated against and defamed her by giving negative references to prospective employers.

Two additional points bear on this Motion. First, contrary to Ms. Robinson-Reeder's assertion that "COBRA notifications were never mailed," (Motion at 2 emphasis in original), on November 29, 2006, ACE provided Ms. Robinson-Reeder with the requisite COBRA notice. Declaration of Colleen Collins at 2, attached hereto as Exhibit A ("Collins Decl."). The Notice was mailed to Ms. Robinson-Reeder's home address, 2140 Brooks Drive, Forestville, MD 20747, (*id.*) which is the same address she has used with her filings in this case. *Id*.

Second, ACE's policy, if contacted by a prospective employer for a reference, is to confirm dates of employment, salary and duties performed. Collins Decl. at 4. ACE has not treated Ms. Robinson-Reeder differently from any other former employee. Id. In fact, ACE's Assistant Vice President, Human Resources, has personally given a positive reference to a prospective employer on Ms. Robinson-Reeder's behalf. Collins Decl. at 5. There is no evidence to the contrary.

_____

(Footnote Continued)

behavior and her decision to quit after three months of employment (which she calls a "constructive discharge"). As set forth in ACE's Motion for Judgment on the Pleadings, these additional aspects of the retaliation claim are also meritless. Neither has been raised in any Charge filed with the EEOC and each also fails as a matter of law.

### A.     Procedural Status of the Case

As set forth above, Ms. Robinson-Reeder filed her Complaint on May 10, 2007 (Document 1).  ACE filed its Answer on June 1, 2007 (Document 2).  ACE then filed a Motion for Judgment on the Pleadings (Document 8) on June 29, 2007, requesting that the Court dismiss the case in its entirety.  On July 2, 2007, Ms. Robinson-Reeder filed a Motion for Summary Judgment (Document 9) on her retaliation and defamation claims, which ACE opposed (Document 16).  She amended that motion the next day (Document 10).  On July 6, 2007, the Court issued an Initial Scheduling Order, staying discovery pending the Court's resolution of the parties' dispositive motions.  On July 13, 2007, Ms. Robinson-Reeder filed two more motions, a Motion for Default Judgment (Document 15) and a Motion for Permanent Injunction (Document 14), both of which ACE opposed (Documents 17 and 18).[2]  The parties attended a Court-ordered mediation on January 3, 2008, which was unsuccessful.  Ms. Robinson-Reeder filed the present Motion the next day.

### B.     Ms. Robinson-Reeder's EEOC Charges

Ms. Robinson-Reeder's filings with the EEOC are relevant to the validity of her retaliation claims and, therefore, to the present Motion.  On December 15, 2006, Ms. Robinson-Reeder filed a charge of racial discrimination with the EEOC.  The December 15, 2006 Charge states that Ms. Robinson-Reeder "was forced to submit a letter of resignation" due to the "intolerable treatment" of being placed on probation for thirty days "based upon complaints that [she] had been rude" to other employees at ACE.[3]  The December 15, 2006 Charge alleges racial discrimination, but makes no reference whatsoever to retaliation.  The EEOC quickly dismissed

---

[2] This Motion is duplicative in several respects of the original Motion for Preliminary Injunction and seeks similar relief.

[3] The December 15, 2006 Charge is attached to the Declaration of Noreen Duggan (Document 8-2) as Exhibit A.

that Charge without seeking a response from ACE, and issued Ms. Robinson-Reeder a right to

sue letter on February 12, 2007.

Unbeknownst to ACE when it received the Complaint and filed the Motion for Judgment

on the Pleadings, Ms. Robinson-Reeder had filed a second charge with the EEOC on March 1,

2007. The March 1, 2007 Charge claimed that ACE had given negative employment references

to prospective employers in retaliation for filing the December 15, 2006 Charge. To date, the

EEOC has not contacted ACE about the March 1, 2007 Charge, nor has it issued a Right to Sue

letter on the March 1, 2007 Charge. *See* Collins Decl. at 3.[4]

## II.    ARGUMENT

### A.    Ms. Robinson-Reeder Cannot Meet the Standard for a Preliminary Injunction.

To prevail on an application for a preliminary injunction, Ms. Robinson-Reeder must

demonstrate (1) a substantial likelihood of success on the merits; (2) that she will suffer

irreparable harm absent the relief requested; (3) that other interested parties will not be harmed if

the requested relief is granted; and (4) that the public interest supports granting the requested

relief. *Trudeau v. FTC*, 384 F. Supp. 2d 281, 288 (D.D.C. 2005) (Bates, J.) (granting

defendants' motion to dismiss, denying plaintiff's motion for preliminary injunction, and holding

that plaintiff did not have a likelihood of success on the merits because he failed to state a viable

cause of action as a matter of law), *aff'd,* 456 F.3d 178 (D.C. Cir. 2006). Ms. Robinson-Reeder

cannot demonstrate substantial likelihood of success on the merits. Further, she has not shown

that she will suffer irreparable harm absent injunctive relief.

---

[4] ACE learned of the March 1, 2007 Charge only because Ms. Robinson-Reeder attached it to her July 25, 2007 Opposition to the Motion for Judgment on the Pleadings. In addition, Ms. Robinson-Reeder attached an EEOC Intake Questionnaire to her June 3, 2007 Amended Motion for Summary Judgment. ACE was also unaware of the Intake Questionnaire until it received it in this case. Collins Decl. at 3.

"If a plaintiff has no likelihood of success on the merits, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone." *Pub. Warehousing Co. KSC v. Def. Supply Ctr. Phila.*, 489 F. Supp. 2d 30, 35 (D.D.C. 2007) (Bates, J.) (citation omitted). That is the case here. As ACE has argued in its Motion for Judgment on the Pleadings, Ms. Robinson-Reeder has failed as a matter of law to state a claim of retaliation under Title VII based upon negative job reference (and each of her other retaliation theories), because she has not exhausted her administrative remedies. The EEOC never notified ACE of the March 1, 2007 EEOC Charge, nor has the EEOC issued a Right to Sue letter for the March 1, 2007 Charge.

Ms. Robinson-Reeder's failure to exhaust the administrative process poses a complete bar to the retaliation claim as a matter of law. *See* Motion for Summary Judgment on the Pleading at 7-8 and authority cited. In addition, in *Camp v. District of Columbia*, Civ. A. No. 04-234 (CKK), 2006 U.S. Dist. LEXIS 13317 (D.D.C. Mar. 14, 2006), this Court denied the plaintiff's motion to amend her Complaint to add a retaliation claim (like here, based upon alleged adverse action following the filing of an EEOC Charge), because she had not exhausted her administrative remedies with respect to that retaliation claim. *Id*. at **24-26.

The Court held:

> Only after the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a civil action within the requisite time period can that person bring a civil action herself. The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and "narrowing the issues for prompt adjudication and decision." "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible to ensure that the federal courts are burdened only when reasonably necessary."

*Camp*, 2006 U.S. Dist. LEXIS 13317, at **18-19 (internal citations omitted).

In this case, the EEOC provided no notice of Right to Sue on the March 1, 2007 Charge, much less have the "important purposes" of notice by the EEOC to ACE or "narrowing the issues for adjudication" been achieved. As a result, Ms. Robinson-Reeder's retaliation claim based upon negative references cannot proceed.

Ms. Robinson-Reeder has also failed to demonstrate that she will suffer "irreparable harm" that can be redressed only by injunctive relief. The Motion describes at length her financial difficulties since resigning from ACE.[5] As this Court has observed, "[t]he irreparable injury requirement erects a very high bar for a movant." *Apotex, Inc. v. FDA*, Civ. A. No. 06-0627 (JDB), 2006 U.S. Dist. LEXIS 20894, at * 53(D.D.C. Apr. 19, 2006) (citation omitted) (finding no irreparable harm and denying motion for preliminary injunction). Accordingly, "in this jurisdiction, harm that is merely economic in character is not sufficiently grave to meet the standard for a preliminary injunction." *Id.*; *see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("It is also well settled that economic loss does not, in and of itself, constitute irreparable harm. . . . Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm."). Finally, because Ms. Robinson-Reeder "has not established a likelihood of success on the merits, [her] showing of irreparable harm must be very strong." *Apotex, Inc*., 2006 U.S. Dist. LEXIS 20894, at *54 (citations omitted).[6]

---

[5] Ms. Robinson-Reeder claims that she is without medical insurance and falsely states that a COBRA notice was never mailed following her resignation from ACE. Mot. at 2. This is patently untrue. As described above, the required COBRA notice was mailed to Ms. Robinson-Reeder on November 29, 2006. Collins Decl. at 2.

[6] This Court has identified limited circumstances of irreparable injury based on economic harm when a plaintiff is "so poor" that he would face "severe consequences" absent injunctive relief. *Lee v. Christian Coalition of Am.*, 160 F. Supp. 2d 14 (D.D.C. 2001). *Lee* does not help Ms. Robinson-Reeder. First, the Court denied the motion for a preliminary injunction with respect to one plaintiff who had been

**B.    The Motion Is Supported Solely
by Inadmissible Hearsay.**

Ms. Robinson-Reeder offers no admissible evidence to support the alleged "negative

references."  Rather, the alleged "negative references" are supported entirely by inadmissible

hearsay.  Ms. Robinson-Reeder claims only that she was "verbally informed by several potential

employers" that ACE gave a negative reference.  Mot. at 3.  In contrast, ACE has proved sworn

testimony that has never given Ms. Robinson-Reeder a negative reference to a potential

employer.  *See* Collins Decl. at 4-5.  Indeed, ACE has provided at least one positive reference.

*Id*.

The absence of any evidence to support Ms. Robinson-Reeder's Motion also requires that

it be denied.

**III.    CONCLUSION**

For these reasons, Ms. Robinson-Reeder's Motion should be denied.

DATED:  January 11, 2008                    Respectfully submitted,

/s/ Christine N. Kearns
Christine N. Kearns (No. 416339)
Julia E. Judish (No. 461630)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000

Counsel for Defendant
American Council on Education

---

(Footnote Continued)

suspended for improper conduct, because "the case law is well-settled that a 'preliminary injunction
movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'"  *Id*. at 33.
(citations omitted).  Here, Ms. Robinson-Reeder claims harm from her unemployment – a situation
created by her own "Letter of Resignation" submitted after only three months of employment.  As ACE
describes in detail in its Motion for Judgment on the Pleadings, her voluntary decision to quit the day her
supervisor wrote to her "I think you have tremendous potential as an employee of ACE and HED.  Please
let me know if I can do anything to assist you" is not a constructive discharge as a matter of law.  *See*
Motion for Judgment on the Pleadings at 11-14 and authority cited.  Second, Ms. Robinson-Reeder
presents no evidence that she is "so poor" that the exception would even apply to her.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of January, 2008, the foregoing Opposition to

Motion for Preliminary Injunction was served via first-class, postage-prepaid, U.S. mail, to the

following *pro se* plaintiff:

        Jacqueline Robinson-Reeder
        2140 Brooks Drive, #421
        District Heights, MD  20747


                /s/ Christine N. Kearns

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JACQUELINE ROBINSON-REEDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 1:07-cv-00880 (JDB) |
| | ) | |
| AMERICAN COUNCIL ON EDUCATION, | ) | ELECTRONICALLY FILED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF COLEEN COLLINS

I, Coleen Collins, state as follows:

1.    I am the Assistant Vice President, Human Resources and Operations Services at American Council on Education ("ACE"), the Defendant in the above-captioned action, and have personal knowledge of the statements in this Declaration. I submit this Declaration in support of ACE's Opposition to Plaintiff's Motion for Preliminary Injunctive Relief to Halt Irreparable Harm.

2.    A copy of the COBRA notice sent to Ms. Robinson Reeder on November 29, 2006, is attached to this Declaration. The COBRA notice was mailed to Ms. Robinson-Reeder at 2140 Brooks Drive, Forestville, MD 20747.

3.    ACE has never been contacted by the EEOC nor asked to respond in any way to the retaliation claims raised in Jacqueline Robinson-Reeder's intake questionnaire of February 12, 2007 or EEOC Charge 570-2007-00948, filed on March 1, 2007. ACE is also unaware of any Right to Sue letter relating to that Charge. ACE learned of both documents after Ms. Robinson-Reeder attached them to her court filings in this case.

4.     ACE has not denied Ms. Robinson-Reeder a "standard job reference." ACE's policy, if contacted by a prospective employer, is to confirm dates of employment, salary, and duties performed. ACE has not treated Ms. Robinson-Reeder any differently than it treats any former employee, and has not denied or deprived her of a "standard job reference."

5.     ACE has not given any negative references regarding Ms. Robinson-Reeder to prospective employers. In fact, I personally have given a positive reference on Ms. Robinson-Reeder's behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January _11_, 2008

_____
Coleen Collins

400698785v1

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

Forwarding Service Requested

MIXED AADC 207

H065 2-1260 MB 0.757
|ll|ll|lll|ll|l|lll|ll|l||lll|ll|l|ll|lll|l|lll|ll|l||l
MS. JACQUELINE TONI ROBINSON-RE      24
2140 BROOKS DRIVE
FORESTVILLE, MD 20747-1067

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| Date Processed: | 11/29/2006 |
|---|---|
| Account ID: | CFA.ADMIN |
| | ROBIN03281855112006 |
| Trns #: | COBRA.QE |
| Letter ID: | |

NOVEMBER 29, 2006

Re:  COBRA CONTINUATION COVERAGE ELECTION NOTICE

Dear:  MS. JACQUELINE TONI ROBINSON-REEDER

This notice contains important information about your right to
continue your health care coverage in the health plan sponsored by
ASSOCIATION MUTUAL HEALTH INSURANCE CO.. (the Plan)
Please read the information contained in this notice very carefully.

To elect COBRA continuation coverage, follow the instructions on the next
page to complete the enclosed Election Form and submit to NCAS.
The Election Form must be completed and returned by mail with a postmark
no later than 01-30-07.

If you do not elect COBRA continuation coverage, your coverage under the
Plan will end on 12-01-06 due to the following qualifying event:
TERMINATION OF EMPLOYMENT - GOOD CONDUCT

Each person ("qualified beneficiary") in the category(ies) listed below
is entitled to elect COBRA continuation coverage, which will continue
group health care coverage under the Plan for up to 18 months:

[Y] Employee or former employee
[Y] Spouse or former spouse
[Y] Dependent child(ren) covered under the Plan on the day before the
    event that caused the loss of coverage
[N] Child who is losing coverage under the Plan because he or she is no
    longer a dependent under the Plan

If elected, COBRA continuation coverage will begin on 12-01-06 and can
last until 06-01-08.  You may elect any of the following options for
COBRA continuation coverage:

| COVERAGE | INSURED ONLY | INSURED & SPOUSE | INSURED & CHILDREN | INSURED & FAMILY |
|---|---|---|---|---|
| CAREFIRST BPO LARGE NEUTRAL | 316.20 | 617.10 | 566.10 | 840.48 |
| DENTAL PREMIUM | 42.03 | 79.72 | 76.17 | 96.93 |
| VISION | 8.67 | 14.28 | 13.77 | 19.38 |

You do not have to send any payment with the Election Form.  Important
additional information about payment for COBRA continuation coverage is
included in the pages following the Election Form.

If you have any questions about this notice or your rights to COBRA
continuation coverage, you should contact NCAS by mail at
P.O. Box 3065, Fairfax, VA 22038 or by telephone at 703-934-6283.

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| | |
|---|---|
| Date Processed: | 11/29/2006 |
| Account ID: | CFA,ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

24451

COBRA CONTINUATION COVERAGE ELECTION FORM

INSTRUCTIONS:  To elect COBRA continuation coverage, complete this
Election Form and return it to NCAS.  Under federal law, you must have 60
days after the date of this notice to decide whether you want to elect
COBRA continuation coverage under the Plan.  The 60-day due date for
returning this form is reflected on the Election Notice.

Send the completed Election Form to:
NCAS, P.O. Box 3065, Fairfax, VA  22038.

If you do not submit a completed Election Form by the due date reflected
on the Election Notice, you will lose your right to elect COBRA
continuation coverage.  If you reject COBRA continuation coverage before
the due date, you may change your mind as long as you furnish a completed
Election Form before the due date.

READ THE IMPORTANT INFORMATION ABOUT YOUR RIGHTS INCLUDED IN THE PAGES
AFTER THIS ELECTION FORM.

EMPLOYER NAME:  ASSOCIATION MUTUAL HEALTH INSURANCE CO.
EVENT CAUSING LOSS OF COVERAGE (QUALIFYING EVENT):
TERMINATION OF EMPLOYMENT - GOOD CONDUCT
DATE OF QUALIFYING EVENT: 12-01-06

I(WE) ELECT COBRA CONTINUATION COVERAGE AS INDICATED BELOW:
Note:  coverage plan options elected and plan levels (e.g. family,
individual) must be from those listed in the election notice

| | LAST NAME/<br>FIRST NAME | SOC SEC<br>NUMBER | BIRTHDATE | COVERAGE<br>PLAN OPTIONS | COVERAGE<br>LEVEL |
|---|---|---|---|---|---|
| INSURED/<br>EMPLOYEE | | | | | |
| SPOUSE | | | | | |
| DEPENDENT | | | | | |
| DEPENDENT | | | | | |

## ncas.

National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

**PHONE INQUIRIES: (800)888-6227**

**E-MAIL INQUIRIES:**
SERVICE@NCAS.COM

| | |
|---|---|
| Date Processed: | 11/29/2006 |
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

DEPENDENT

DEPENDENT

DEPENDENT

MAILING ADDRESS (IF CHANGED BY THE QUALIFYING EVENT):

APPLICANT'S SIGNATURE: _____     DATE SIGNED: _____

[ ] I HAVE ENCLOSED A CHECK MADE PAYABLE TO NCAS, INC.,
IN THE AMOUNT OF $ _____

[ ] I HAVE NOT ENCLOSED PAYMENT AT THIS TIME.
I UNDERSTAND I HAVE 45 DAYS FROM MY CONTINUATION COVERAGE ELECTION DATE
(THE DATE THE ELECTION FORM IS POSTMARKED, IF MAILED) TO PAY PREMIUMS
THROUGH THE CURRENT COVERAGE MONTH.

IMPORTANT INFORMATION
ABOUT YOUR COBRA CONTINUATION COVERAGE RIGHTS

What is continuation coverage?

Federal law requires that most group health plans (including this Plan)
give employees and their families the opportunity to continue their health
care coverage when there is a "qualifying event" that would result in a
loss of coverage under an employer's plan. Depending on the type of
qualifying event, "qualified beneficiaries" can include the employee
(or retired employee) covered under the group health plan, the covered
employee's spouse, and the dependent children of the covered employee.

Continuation coverage is the same coverage that the Plan gives to other
participants or beneficiaries under the Plan who are not receiving
continuation coverage. Each qualified beneficiary who elects continuation
coverage will have the same rights under the Plan as other participants or
beneficiaries covered under the Plan, including open enrollment and
special enrollment rights.

How long will continuation coverage last?

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM



| Date Processed: | 11/29/2006 |
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

In the case of a loss of coverage due to end of employment or reduction in hours of employment, coverage generally may be continued only for up to a total of 18 months. In the case of losses of coverage due to an employee's death, divorce or legal separation, the employee's becoming entitled to Medicare benefits or a dependent child ceasing to be a dependent under the terms of the plan, coverage may be continued for up to a total of 36 months. When the qualifying event is the end of employment or reduction of the employee's hours of employment, and the employee became entitled to Medicare benefits less than 18 months before the qualifying event, COBRA continuation coverage for qualified beneficiaries other than the employee lasts until 36 months after the date of Medicare entitlement. This notice shows the maximum period of continuation coverage available to the qualified beneficiaries.

Continuation coverage will be terminated before the end of the maximum period if:

> any required premium is not paid in full on time,
> a qualified beneficiary becomes covered, under another group health plan that does not impose any pre-existing condition exclusion for a pre-existing condition of the qualified beneficiary,
> a qualified beneficiary becomes entitled to Medicare benefits (under Part A, Part B, or both) after electing continuation coverage, or
> the employer ceases to provide any group health plan for employees.

Continuation coverage may also be terminated for any reason the Plan would terminate coverage of a participant or beneficiary not receiving continuation coverage (such as fraud).
-------------------------------------------------------------------
-------------------------------------------------------------------

How can you extend the length of COBRA continuation coverage from an 18-month qualifying event?

If you elect continuation coverage, an extension of the maximum period of coverage may be available if a qualified beneficiary is disabled or a second qualifying event occurs. You must notify, in writing, NCAS or a disability and the Plan Administrator of a second qualifying event in order to extend the period of continuation coverage. Failure to provide written notice of a disability or second qualifying event may affect the right to extend the period of continuation coverage.

Disability

An 11-month extension of coverage may be available if any of the qualified beneficiaries is determined by the Social Security Administration (SSA) to be disabled. The disability has to have started at some time before the 60th day of COBRA continuation coverage and must last at least until the end of the 18-month period of continuation coverage. You must provide a copy of the written determination of disability from the Social Security

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| | |
|---|---|
| Date Processed: | 11/29/2006 |
| Account ID: | OFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

Administration to NCAS within 60 days of the date of the Social Security
Administration's determination of disability and prior to the end of the
18-month continuation period. Each qualified beneficiary who has elected
continuation coverage will be entitled to the 11-month disability
extension if one of them qualifies. If the qualified beneficiary is
determined by SSA to no longer be disabled, you must notify NCAS of that
fact within 30 days after SSA's determination.

Second Qualifying Event

An 18-month extension of coverage will be available to spouses and
dependent children who elect continuation coverage if a second qualifying
event occurs during the first 18 months of continuation coverage. The
maximum amount of continuation coverage available when a second qualifying
event occurs is 36 months. Such second qualifying events may include the
death of a covered employee, divorce or legal separation from the covered
employee, the covered employee's becoming entitled to Medicare benefits
(under Part A, Part B, or both), or a dependent child's ceasing to be
eligible for coverage as a dependent under the Plan. These events can be
a second qualifying event only if they would have caused the qualified
beneficiary to lose coverage under the Plan if the first qualifying event
had not occurred. You must notify the Plan Administrator in writing with
proper documentation within 60 days after the second qualifying event
occurs if you want to extend your continuation coverage.

------------------------------------------------------------

How can you elect COBRA continuation coverage?

To elect continuation coverage, you must complete the Election Form and
furnish it according to the instructions on the form. Each qualified
beneficiary has a separate right to elect continuation coverage.
For example, the employee's spouse may elect continuation coverage even if
the employee does not. Continuation coverage may be elected for only one,
several, or for all dependent children who are qualified beneficiaries.
A parent may elect to continue coverage on behalf of all of the qualified
beneficiaries.

In considering whether to elect continuation coverage, you should take
into account that a failure to continue your group health coverage will
affect your future rights under the federal law.
First, you can lose the right to avoid having pre-existing condition
exclusions applied to you by other group health plans if you have more
than a 63-day gap in health coverage, and election of continuation
coverage may help you not have such a gap.
Second, you will lose the guaranteed right to purchase individual health
insurance policies that do not impose such pre-existing condition
exclusions if you do not get continuation coverage for the maximum time
available to you.
Finally, you should take into account that you have special enrollment
rights under federal law. You have the right to request special
enrollment in another group health plan for which you are otherwise

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)886-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| Date Processed: | 11/29/2006 |
|---|---|
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112008 |
| Letter ID: | COBRA.QE |

eligible (such as a plan sponsored by your spouse's employer) within 30 days after your group health coverage ends because of the qualifying event listed above. You will also have the same special enrollment right at the end of continuation coverage if you get continuation coverage for the maximum time available to you.

----------------------------------------------

How much does COBRA continuation coverage cost?

Generally, each qualified beneficiary is required to pay the entire cost of continuation coverage. The amount a qualified beneficiary is required to pay may not exceed 102 percent (or, in the case of an extension of continuation coverage due to a disability, 150 percent) of the cost to the group health plan (including both employer and employee contributions) for coverage of a similarly situated plan participant or beneficiary who is not receiving continuation coverage. The required payment for each continuation coverage period for each option is described in this notice.

If applicable: The Trade Act of 2002 created a new tax credit for certain individuals who become eligible for trade adjustment assistance and for certain retired employees who are receiving pension payments from the Pension Benefit Guaranty Corporation (PBGC). Under the new tax provisions, eligible individuals can either take a tax credit or get advance payment of 65% of premiums paid for qualified health insurance, including continuation coverage. If you have questions about these new tax provisions, you may call the Health Coverage Tax Credit Customer Contact Center toll-free at 1-866-628-4282. TTD/TTY callers may call toll-free at 1-866-626-4282. More information about the Trade Act is also available at www.doleta.gov/tradeact/2002act_index.asp.

----------------------------------------------

When and how must payment for COBRA continuation coverage be made?

First payment for continuation coverage

If you elect continuation coverage, you do not have to send any payment with the Election Form. However, you must make your first payment for continuation coverage not later than 45 days after the date of your election. (This is the date the Election Form is postmarked, if mailed.) If you do not make your first payment for continuation coverage in full not later than 45 days after the date of your election, you will lose all continuation coverage rights under the Plan. You are responsible for making sure that the amount of your first payment is correct. You may contact NCAS to confirm the correct amount of your first payment.

----------------------------------------------

Regular payments for continuation coverage

After you make your first payment for continuation coverage, you will be required to make regular payments for each subsequent coverage period.

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| Date Processed: | 11/29/2006 |
|---|---|
| Account ID: | OFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

29451

The amount due for each coverage period for each qualified beneficiary is shown in this notice. The regular payments are to be made on a monthly basis. Under the Plan, each of these regular payments for continuation coverage is due on the first day of the coverage period. If you make a regular payment on or before the first day of the coverage period to which it applies, your coverage under the Plan will continue for that coverage period without any break.

Grace period for regular payments

Although regular payments are due on the dates shown above, you will be given a grace period of 30 days after the first day of the coverage period to make each regular payment. Your continuation coverage will be provided for each coverage period as long as payment for that coverage period is made before the end of the grace period for that payment. However, if you pay a regular payment later than the first day of the coverage period to which it applies, but before the end of the grace period for the coverage period, your coverage under the Plan may be suspended as of the first day of the coverage period and then retroactively reinstated (going back to the first day of the coverage period) when the regular payment is received. This means that any claim you submit for benefits while your coverage is suspended may be denied and may have to be resubmitted once your coverage is reinstated.

If you fail to make a regular payment before the end of the grace period for that coverage period, you will lose all rights to continuation coverage under the Plan.

Your first payment and all regular payments for continuation coverage should be sent to: NCAS, P.O. Box 79921, Baltimore, MD 21279.

Premium payment coupons will be issued to you. You will be responsible for paying the full premium when due even if you do not receive a coupon booklet.

If you have any questions concerning the information in this notice or your rights to coverage, you should contact your COBRA Administrator, NCAS, by mail at P.O. Box 3065, Fairfax, VA 22038 or by telephone at 703-934-6283. If you want a copy of your summary plan description, you should contact your Plan Administrator.

For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA website at www.dol.gov/ebsa.
(Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website.)

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| | |
|---|---|
| Date Processed: | 11/29/2006 |
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | COBRA.QE |

Keep your Plan Informed of Address Changes

In order to protect your and your family's rights, you should keep the
Plan Administrator and NCAS informed of any changes in your address and
the addresses of family members.  You should also keep a copy, for your
records, of any notices you send to the Plan Administrator and NCAS.

# ncas.

National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

**Forwarding Service Requested**

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

· MIXED AADC 207

4065 2.1260 MB 0.757

MS. JACQUELINE TONI ROBINSON-RE          24
2140 BROOKS DRIVE
FORESTVILLE, MD 20747-1047

| Date Processed: | 11/29/2006 |
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | NCS.CERT |

Re: Certificate of Health Insurance Creditable Coverage

Name of group health plan:      ASSOCIATION MUTUAL HEALTH INSURANCE CO,
Name of participant:            ROBINSON-REEDER,JACQUELINE TONI
ID number of participant:       B432AM11C
Period of coverage:             11.19.2004 - 12.01.2006
Waiting period began:

Name, address, and telephone number of plan administrator or issuer
responsible for providing this certificate:

        NCAS
        P.O. BOX 3065
        FAIRFAX, VA 22038

For further information, call: (703)-934-6239

[ X ] Individual(s) listed have at least 18 months of
        creditable coverage (disregarding periods of
        coverage before a 63-day break)

Dependents to whom this certificate applies:

| NAME | RELATION | BIRTH DATE |
| --- | --- | --- |
| Jacqueline Toni Robi | Insured | 03.28.1955 |
| Robert Reeder Jr | Spouse | 02.24.1958 |
| Jarrell E Humphries | Child | 01.21.1987 |

*************Statement of HIPAA Portability Rights*****************
IMPORTANT - KEEP THIS CERTIFICATE. This certificate is evidence of your
coverage under this plan. Under a federal law known as HIPAA, you may
need evidence of your coverage to reduce a preexisting condition exclusion
period under another plan, to help you get special enrollment in another
plan, or to get certain types of individual health coverage even if you
have health problems.

Preexisting condition exclusions. Some group health plans restrict
coverage for medical conditions present before an individual's enrollment.
These restrictions are known as "preexisting condition exclusions." A
preexisting condition exclusion can apply only to conditions for which
medical advice, diagnosis, care, or treatment was recommended or received
within 6 months before your "enrollment date." Your enrollment date is
your first day of coverage under the plan, or, if there is a waiting period
the first day of your waiting period (typically, your first day of work).
In addition, a preexisting condition exclusion cannot last for more than 12
months after your enrollment date (18 months if you are a late enrollee).



**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

PHONE INQUIRIES: (800)888-6227

E-MAIL INQUIRIES:
SERVICE@NCAS.COM

| | |
|---|---|
| Date Processed: | 11/29/2006 |
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN03281955112006 |
| Letter ID: | NCS.CERT |

Finally, a preexisting condition exclusion cannot apply to pregnancy and cannot apply to a child who is enrolled in health coverage within 30 days after birth, adoption, or placement for adoption.

If a plan imposes a preexisting condition exclusion, the length of the exclusion must be reduced by the amount of your prior creditable coverage. Most health coverage is creditable coverage, including group health plan coverage, COBRA continuation coverage, coverage under an individual health policy, Medicare, Medicaid, State Children's Insurance Program (SCHIP), and coverage through high-risk pools and the Peace Corps. Not all forms of creditable coverage are required to provide certificates like this one. If you do not receive a certificate for past coverage, talk to your new plan administrator.

You can add up any creditable coverage you have, including the coverage shown on this certificate. However, if at any time you went for 63 days or more without any coverage (called a break in coverage) a plan may not have to count the coverage you had before the break.

Therefore, once your coverage ends, you should try to obtain alternative coverage as soon as possible to avoid a 63-day break. You may use this certificate as evidence of your creditable coverage to reduce the length of any preexisting condition exclusion if you enroll in another plan.

Right to get special enrollment in another plan. Under HIPAA, if you lose your group health plan coverage, you may be able to get into another group health plan for which you are eligible (such as a spouse's plan), even if the plan generally does not accept late enrollees, if you request enrollment within 30 days. (Additional special enrollment rights are triggered by marriage, birth, adoption, and placement for adoption.)

Therefore, once your coverage ends, if you are eligible for coverage in another plan (such as a spouse's plan), you should request special enrollme enrollment as soon as possible.

Prohibition against discrimination based on health factor. Under HIPAA, a group health plan may not keep you (or your dependents) out of the plan based on anything related to your health. Also, a group health plan may not charge you (or your dependents) more for coverage, based on health, than the amount charged a similarly situated individual.

Right to individual health coverage. Under HIPAA, if you are an "eligible individual", you have a right to buy certain individual health policies (or in some states, to buy coverage through a high-risk pool) without a preexisting conditions exclusion. To be an eligible individual, you must meet the following requirements:

* You have had coverage for at least 18 months without a break in coverage of 63 days or more;
* Your most recent coverage was under a group health plan (which can be shown by this certificate);
* Your group coverage was not terminated because of fraud or nonpayment

**ncas.**
National Claims Administrative Services
P.O. Box 3065
Fairfax, VA 22038-8022

**PHONE INQUIRIES: (800)888-8227**

**E-MAIL INQUIRIES:**
SERVICE@NCAS.COM

| Date Processed: | 11/29/2006 |
|---|---|
| Account ID: | CFA.ADMIN |
| Trns #: | ROBIN0328195511-2006 |
| Letter ID: | NOS.CERT |

of premiums;
* You are not eligible for COBRA continuation coverage or you have exhausted your COBRA benefits (or continuation coverage under a similar state provision); and
* You are not eligible for another group health plan, Medicare, or Medicaid, and do not have any other health insurance coverage.

The right to buy individual coverage is the same whether you are laid off, fired, or quit your job.

Therefore, if you are interested in obtaining individual coverage and you meet the other criteria to be an eligible individual, you should apply for this coverage as soon as possible to avoid losing your eligible individual status due to a 63-day break.

**State flexibility.** This certificate describes minimum HIPAA protection under federal law. States may require insurers and HMOs to provide additional protections to individuals in that state.

**For more information.** If you have questions about your HIPAA rights, you may contact your state insurance department or the U.S. Department of Labor Employee Benefits Security Administration (EBSA) toll-free at 1-866-444-3272 (for free HIPAA publications ask for the publications concerning changes in health care laws). You may also contact the CMS publication hotline at 1-800-633-4227 (ask for "Protecting Your Health Insurance Coverage"). These publications and other useful information are also available on the Internet at: http://www.dol.gov/ebsa, the DOL's interactive web pages - Health Elaws, or http://www.cms.hhs.gov.hipaa1.