CLERK
US DISTRICT & BANKRUPTCY
COURT

2008 JAN 15 PM 4: 26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACQUELINE T. ROBINSON-REEDER )
                                )
              Plaintiff          )
                                )
                                )      Civil Case: 07-0880 (JDB)
AMERICAN COUNCIL ON EDUCATION    )
                                )
              Defendant          )
_____)

## AMENDMENT TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF
## TO HALT IRREPARABLE HARM

Plaintiff amends motion filed on January 4, 2008, to include relief request on Defamation claim proper in this court and moves pursuant to federal civil rule 65 for preliminary injunctive relief as follows:

This court has supplemental jurisdiction over the claim "Defamation" under Title VII of the Civil Rights Act of 1964, 28 U.S.C. Sections 1331 and 1337. The plaintiff is protected under Title VII, Sec. 2000e-2 (Section 703).

  a.) restraining defendant from injuring the career reputation by informing potential employers that the plaintiff was fired, filed an EEOC complaint and that she is "rude and unprofessional."
  b.) restraining defendant from [1]denying ex-employee and potential employers a standard job reference verifying dates of employment, salary, title and status.
  c.) restraining defendant from entering any personal data or information regarding employee on computer based reference checking internet sites.
  d.) instructing defendant to remove any personal data or information regarding employee on computer based reference checking internet sites.

AS GROUNDS THEREFOR, Plaintiff asserts that such preliminary relief is necessary to preserve the ability to gain employment/income. Plaintiff is suffering irreparable harm by the defendant malicious behavior to blacklisting the plaintiff from employment by slandering the working reputation. Plaintiff has not gained income since her constructive discharge from defendant's place of employment since November 7, 2006. Plaintiff's unemployment is exhausted and retirement fund depleted. Without this

---

[1] 38 Hashimoto, 118 F.3d at 676. See also EEOC v. L. B. Foster, 123 F.3d at 754 n.4 (plaintiff need not prove that retaliatory denial of job reference caused prospective employer to reject her; such a showing is relevant only to damages, not liability); Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C. Cir. 1981) ("the questions of statutory violation and appropriate statutory remedy are conceptually distinct. An illegal act of discrimination -- whether based on race or some other factor such as a motive of reprisal -- is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of [damages]").

Memorandum and affidavit of support filed within this amendment.

## Memorandum of Facts

New evidence on plaintiff's failure to obtain employment due the defendant's behavior -- On Friday, December 28, 2007, the Plaintiff was considered for a job with overwhelming qualifications and high expectations from the recruit staff. See attachment (1). *email.* However, after receiving a reference check from the defendant, the plaintiff was denied employment again.

Defendant's H.R. director admits to giving a reference. However, this reference did not gain the employment of the plaintiff. This situation directly proves that the potential employer was interested in hiring the plaintiff, but after contacting the H.R. director did not [2] hire the plaintiff despite her non-admittance of slandering. Plaintiff is still unemployed.

Is this normal routine for the H.R. director to give references? Plaintiff was seeking employment since November 7, 2006, evidently other staff members were handling references for the plaintiff. H.R. director began referencing since the ordeal of defamation has surfaced. The employee responsible has already created the damage and so is the H.R. Director. Why would they admit to the defamation?

The defendant has repeated this injurious statement every time a potential employer has inquired about the ex-employee. Plaintiff has direct and circumstantial evidence that defendant is violating her rights under defamation and [3] defamation per se. Therefore, the plaintiff request [4] injunctive relief from slandering of reputation.

Defendant has denied job reference as retaliation and adverse action in their Answer statement defense on June 1, 2006, written under Answer no. 9. The written job reference would eliminate the interference of receiving negative references based on the probation letter stating "rude and unprofessional" behavior. The written job reference would be hand delivered on interviews and attached online when applying for a job. This would eliminate the stress of going on job interviews only to have the defendant slander my name and therefore being refused the job,

The plaintiff is getting pass the resume search to the interview process, which is a great accomplishment in obtaining a job. The last process of checking references with previous employers can make or break the job offer. The American Council on Education hired the plaintiff because the job reference checked with previous employer was great enough for permanent job offer. *See declaration ATTACH III*

---

[2] Section 706(g) empowers the court to order declaratory relief, injunctive relief such as reinstatement or hiring of employees with or without back pay, or "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g). In addition, Section 102 of the Civil Rights Act of 1991 now permits courts, in an appropriate case, to award compensatory and punitive damages for violations of Sections 703 and 704 of Title VII. 42 U.S.C.A. § 1981a (1994). This most recent expansion of the courts' remedial powers addresses a major concern in Polsby -- that appropriate relief would be difficult or impossible to fashion for former employees who, typically, obtain another job despite the best (or worst) efforts of a previous employer.

[3] Defamation per se: All states except Arizona, Arkansas, Mississippi, Missouri, and Tennessee recognize that some categories of statements are considered to be defamatory per se, such that people making a defamation claim for these statements do not need to prove that the statement was defamatory. In the common law tradition, damages for such statements are presumed and do not have to be proven. Traditionally, these per se defamatory statements include: Allegations or imputations "injurious to another in their trade, business, or profession"

[4] Title VII of the Civil Rights Act of 1964 - An Act: To enforce the constitutional right to vote, to confer jurisdiction upon the district courts of the United States to provide injunctive relief against discrimination in public accommodations, to authorize the attorney General to institute suits to protect constitutional rights in public facilities and public education, to extend the Commission on Civil Rights, to prevent discrimination in federally assisted programs, to establish a Commission on Equal Employment Opportunity, and for other purposes. Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That this Act may be cited as the "Civil Rights Act of 1964".

The job reference requested is a "standard" job reference verifying, title, salary, dates of employment, etc. If the defendant is not trying to ruin the career of the plaintiff and seeks peace, then why not settle this struggle for the plaintiff if not for some evil deed? The plaintiff has been without a salary since her constructive discharge and the defendant is not doing anything to improve the conditions of her inability to gain income. Is this there normal behavior towards an ex-employee? If the defendant does not have a ill will towards the plaintiff, why the denial for such a length of time?

> Employment Law defining Defamation per se
>
> If the statement is one that is defamatory per se, the plaintiff does not need to prove any special damage. In such a case, the plaintiff is entitled to recover general damages, which include harm to reputation, without evidence of the harm incurred. Even where the defamation is actionable per se, the plaintiff may recover "special damages" over and above general damages, if he or she pleads and proves that the defamatory statement was a substantial factor in causing that harm. **Such special damage may include an inability to obtain employment.**

Without the court's relief, the defendant's behavior that started in November 2006, and has continued until January 2008, is proven to cause the plaintiff irreparable financial harm by unemployment is [5]retaliation. Plaintiff has survived interviews with high interest but refused employment after reference check due to the slander and malicious behavior to prevent employment by scaring off potential employers that plaintiff filed an "EEOC" charge.

It has been very [6]hard to gain written evidence of this behavior because potential employers do not want to be involved in a civil complaint, although some individuals have informed the plaintiff verbally of the reference being [7]unfavorable. The plaintiff is currently unemployed after being employed consecutively for over 10 years. Defendant denies slandering the reputation of the plaintiff but circumstantial evidence exits that the "rude and unprofessional" behavior being stated is from their writing. See attachment (2). *Resume and probation letter*

Plaintiff has direct evidence that defendant was or is telling potential employers that an "EEOC charge was filed.

Therefore, with the previous motion filed on January 4, 2008, the plaintiff asks the court in ruling on a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded allegations of fact. Cowell v. Palmer Township, 263 F. The court must determine whether "under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Nami v. Fauver, 82 F.

**Weighs in Favor of Granting Plaintiff's Motion**

If the court allows the defendant's behavior to continue the plaintiff will suffer irreparable injury through financial harm by unemployment, loss of income. Granting the injunctive relief will not harm the American Council on Education in weight. See: American Council on Education – Statement of Financial Position (Attach F) See: Plaintiff's bank statement- Citibank (Attach G).

---

[5]/To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the anti-discrimination statutes. An individual is protected against retaliation for participation in employment discrimination proceedings even if those proceedings involved a different entity\28. For example, a violation would be found if a respondent refused to hire the charging party because it was aware that she filed an EEOC charge against her former employer.

[6] A preliminary injunction may be properly issued whenever the questions of law or fact are grave and difficult, and injury to the moving party will be immediate, certain, and great if it is denied, while the loss to the opposing party will be trivial if it is granted." Wilms v. Hand (1951) 101 Cal.App.2d 811, 815.

[7] The plaintiff-employee who established defamation *per se* is entitled to presumed damages without any specific proof of injuries. Defamation *per se* "requires that the words used are in and of themselves so obviously and naturally harmful that proof of special damages is unnecessary. Fried v Jacobson, 99 Ill.

The American Council on Education failed to properly [8]investigate allegations from unidentified employees at another location other than plaintiffs work. Those allegations of "rude and unprofessional" are in writing and has been told to a third party. *(See attach A)*.

The American Council on Education has abused their qualified privilege by a reckless act, which shows a disregard for the plaintiff's rights, including the failure to properly investigate the truth of the matter.

The defendant has not denied failing to verbally warn the plaintiff of complaints before assigning stricter punishment of the 30-day probation with threat to terminate. The plaintiff proved "prima facie" in motion filed on July 25, 2007, and defendant failed to offer non-discriminatory motive of unjustified 30 day probation with intent to terminate plaintiff. As a new employee, plaintiff was already under a 60 day probation.

The defendant denies that the 30-day probation memo was not an 'adverse employment action' sufficient to implicate Title VII. However, when understood in context as outlined above and viewed in light of the Supreme Court's 2006 decision in *Burlington Northern & Santa Fe Railway Co. v. White* 548 U.S., loosening the standards for what constitutes "adverse" employment action, this issue is not a winner for the American Council on Education.

The assigned probation was not properly investigated and it was pretext to prevent further complaints and to fire the employee because she complained.

> "Under McDonnell Douglas, to establish his prima facie case, the plaintiff need not prove that discrimination was the motivating factor, all he must do is raise in interference that such misconduct occurred."

The defendant has not offered a non-discriminatory reason for assigning probation on November 6, 2006, after the plaintiff made an internal complaint in Human Resources on November 2, 2006. Should the court and the plaintiff believe that complaints were alleged to Human Resources between Thursday, November 2 and Monday, November 6, 2006? Circumstantial evidence proves that Human Resources director and Executive Director knew of the complaints on November 2, 2006, but didn't assign probation until after the plaintiff made an internal complaint on November 2, 2006. Why didn't both individuals assign probation before the internal complaint?

There was a mixed-motive, disparage treatment, discrimination, adverse action, all of the defendant's behavior fits in either category of employment law.

The plaintiff's appearance for orientation at the H.R. location was on November 2, 2006. Did her African American appearance result in these complaints on rendering a write up on the only available day, Friday, November 3, 2006, from the same departments that she visited during her orientation? It is a fact that the orientation included each department that alleged the complaints. It is a fact that each department failed to support the plaintiff, was this retaliation because of negligence?

Plaintiff has direct evidence that H. R. Director and Executive director assisted the plaintiff with her internal complaint engaging " [9]opposing activity" on November 2, 2006. See memo with Executive director (handwritten edits) and Human Resources Director. See attachment (A) *Cmorfit letter dated Nov. 2 and probation letter dated Nov.*

---

[8] **Employee right – Defamation:** The employee may press charges of defamation when he ex-employer provides discriminatory job references to prospective employers, which may cause harm to the employee. In an employment setting, if the employee is wrongfully accused of misconduct in writing, the employee has a valid reason to file charges of defamation against the employer or the accuser. In case the employer does not investigate the defamatory remark (s) fairly, both the employer and the accuser are held accountable.

[9] Opposition includes making internal complaints of unlawful practices, the opposition will be protected if the employee actually believes in good faith that the practice is unlawful and a reasonable person would believe the practice is unlawful. There are many examples of cases in which an employee complained about an alleged discrimination that turned out not to exist, but then the employer retaliated against the employee for making the complaint. The employee can win on retaliation claim even though she loses on the underlying discrimination claim.

4

The defendant lacks the capability to state the dates, identify the staff, and repeat the complaints from four different individuals because the complaints are false and were crafted quickly to retaliate. The plaintiff was not allowed to address the complaints, confirm or discuss with such individuals the subject matter.

Plaintiff has direct evidence that two white predecessor experienced the same negligence to install PeopleSoft on personal computers from the Technical Support from the ACE location to the HED location. However, the difference in treatment is that the white staff when complained were promoted and transferred, but the African American staff complaining was put on probation with 30 day probation. This is blatant unfair treatment.

Defendant has offered no explanation for any of their enjoyed prejudicial behavior. It is against the employees rights not to do a proper investigation before assigning punishment without verbal warnings or ability of knowledge, doing so proves the employee was treated unfairly. Employee did not receive orientation handbook at no time and orientation was conducted 2 months later.

Therefore, no investigation was done as to cover up the falsehood of the alleged complaints. Plaintiff has proven pretext behavior. Plaintiff has proven retaliation even if the discrimination charge lacked validity. Plaintiff has proven defamation per se with circumstantial evidence and direct evidence. (See declaration) Attach (D)

EEOC Manual:     *See attac (K)*

The anti-discrimination statutes do not limit or condition in any way the protection against retaliation for participating in the charge process. While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to all individuals who participate in the statutory complaint process. Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonableness of the charge\26. To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the anti-discrimination statutes.

## Relief

The Court of Appeals for this Circuit has held that, while the limited equitable relief of a retraction may be available in defamation actions, "the usual rule is that equity does not enjoin libel or slander and that the only remedy for defamation is an action for <u>damages</u>." *Community for Creative Non-Violence v. Pierce, 814 F.*

The plaintiff begs the U.S. District Court of D.C. to adhere enforcement provisions under Section 2000e-5-706 F(3)(4)5) to immediately grant the injunctive relief for Defamation and Retaliation. Where a plaintiff complaint seeks money damages, a preliminary injunction is appropriate. The defendants Statement of Financial Position is well endowed to permit the damages for relief to the plaintiff. ( Attach F)

To instruct the defendant to "cease and remit" from slandering the reputation of the plaintiff by defaming her character into informing potential employers that she is "rude and unprofessional" to grant relief on informing of "EEOC" charge and to cease from falsely stating that plaintiff was "fired." In addition to granting the damages outlined under violations in Title VII, Statute 42 U.S.C. 1981 (b). The American Council on Education employs over 200 staff members.

**Front Pay:** Yearly salary of $49,999.99 at $27.44 per hour before constructive discharge. The American Council on Education has successfully ruined the reputation of the 52 year old African American ex-employee and reinstatement is not option, although plaintiff is interested in continuing work at ACE. However, there is no guarantee that plaintiff could enjoy work until retirement based on complaint being public record. Potential employers could refuse to hire employee that filed civil complaint. Therefore, front pay is considered a relief based on:

5

This Second Circuit decision, upholding more than 20 years of front pay, is particularly distressing, not only because of the duration, but because of its presumption that victims of discrimination are otherwise unemployable, and that it is the employer's burden to show otherwise if it wants to avoid massive front pay awards

On June 4, 2001, the Supreme Court of the United States resolved the issue and held that front pay is not subject to the statutory caps of § 1981a. In the unanimous opinion, the Supreme Court noted that, in the abstract, front pay certainly could be considered compensation for future pecuniary losses. Yet, Justice Thomas, the author of the Court's opinion, believed that the better interpretation of § 1981a is that front pay is not capped. Justice Thomas stressed that courts around the nation have historically viewed front pay as equitable relief authorized under § 706 which is appropriate where reinstatement is not possible. Further, Congress made clear that the compensatory and punitive damages which were added in 1991 were in addition to other relief already authorized by § 706.

Under Title VII, the court is authorized "to order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). The district court awarded Williams one year's worth of front pay as a substitute for reinstatement, which was unavailable because a subsequent merger had eliminated the opthalmic division in which Williams had worked.

**Cobra Penalties:**  The American Council on Education failed to ensure that COBRA notices **were mailed** to continue coverage for spouse and dependent. Letters state that the document **will be mailed**. A document so importance should have been signed under certification of the postal service or in signing of a witness by having ex-employee meet with Human Resource instead of relying on faulty mail service.

Plaintiff's family has been without medical and life insurance since her constructive discharge on November 6, 2006. Therefore the attached doctor bills from previous motion should be paid by the defendant and the penalties of $110.00 per day, per dependent assessed. Medical insurance should be reinstated for ex-employee and family until plaintiff finds employment.

**TIAA-CREF retirement fund:**  Plaintiff has depleted entire retirement fund to afford lifestyle and pay son's college tuition. Plaintiff was without husband's income for 8 months due to separation.

**Back pay**: Yearly salary minus $16,000.00 earned in the previous year due to temporary work at $12.00 – 16.50 per hour.

**Punitive and Compensatory damages**: Based on 211 staff members employed at the American Council on Education.

**Summary:**

*Plaintiff prays that the U.S. District Court of D.C. applies the law in the most decent way to improve the life of the plaintiff and her family and to halt the retaliation from the American Council on Education from this day forward, January 14, 2008. Granting the Preliminary Injunction will not injure the defendant in any harm based on the Annual Report financial standings for 2007. However, based on the plaintiff's bank statement (see attachment X) the financial harm is immediate without being able to obtain income due to slander from the American Council on Education.*

*The African American Plaintiff has suffered long overdue, her only crime was trying to find a healthy working environment which is fair and deserved for all American citizens.*

*Jacqueline T. Robinson-Reeder*

*2140 Brooks Drive#421*

*District Heights, MD*

## Certificate of Service

I, Jacqueline T. Robinson-Reeder hereby certify that on January 11, 2008, mailed a copy of the plaintiff's motion for preliminary relief the address below.

_____

Jacqueline T. Robinson-Reeder
Plaintiff




Mailed to:
Christine N. Kearns
Pillsbury Withrop Shaw
2300 N Street, NW.
Washington DC  20037
202-663-8000

*ATTACH (1)*

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**To:** <georgia28@comcast.net>
**Subject:** RE: Interview Confirmation
**Date:** Friday, December 28, 2007 7:16:16 PM

The same is wished for you, it was a pleasure meeting with you also.

Sincerely,



Staffing

---

**From:** georgia28@comcast.net [mailto:georgia28@comcast.net]
**Sent:** Friday, December 28, 2007 6:34 PM
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Re: Interview Confirmation

Hello Jacqueline,

I enjoyed meeting you today. I have attached my resume below. Thanks for everything!
Best wishes for a great new year.▮▮▮▮▮▮

-------------- Original message --------------
From: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮m>
Dear Ms. Robinson-Reeder:

It was a pleasure speaking with you over the phone. I look forward to meeting with you and am eager to learn more about your career search and discuss potential employment opportunities. Your interview is scheduled for Friday December 28, 2007 at 2:00pm. For your convenience, please find below important information that you will need prior to your interview. Please confirm receipt of this email by replying to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Also, remember to bring two forms of government issued identification (ex: Passport, Birth Certificate, Drivers License, Social Security Card) so we can process your paper work as quickly as possible. Be sure to dress professionally, and allow yourself at least two hours to complete the testing, and interview process.



Professional assistant with over 15 years of meeting planning experience and providing executive support. Highly experienced in assisting with preparation and coordinating all aspects of conference meetings. Extremely organized in assembling meeting materials, producing participant lists and arranging registration materials. Outstanding customer service in planning travel arrangements and securing hotel accommodations for members. Superior communication skills in negotiating hotel contracts. Experienced in conducting site visits, handling registration and hotel logistics.

Outstanding ability in production of background materials for annual meeting and special events. Independent capabilities to manage business office. Energetic and dedicated employee with pleasant personality.

## *Professional Experience*

June 2006 to November 7, 2006          **American Council on Education**
                                        **Higher Education for Development**
                                        **Office Manager / Executive Assistant**

### *Executive Support*
- Maintained appointment calendar for executive director in Microsoft Outlook. Replied to inquiries regarding USAID contract agreement, answered electronic mail, wrote correspondence to executive staff and arranged meetings with the HED Advisory Board of Directors.
- Paid honorariums for speaking contracts to board of directors and university presidents.
- Organized filing system for contract agreements codes.
- Completed travel expense reports and arranged travel itineraries with American Express Travel Agency for executive staff, consultants and advisory board council members. Generated purchase orders for payment of office invoices and staff reimbursement by using PeopleSoft program.

### *Meeting Planning*
- Assisted staff with planning summer and fall Advisory Board meetings. Sent request for proposals to hotels and finalized contracts for business. Responsible for hotel logistics by selecting meeting rooms, catering and providing rooming lists.
- Prepared meeting materials by researching, coordinating and assembling briefing papers for distribution. Stationed at the registration table providing members with information, badges and meeting materials. Approved and paid invoices for hotel services. Arranged database and merged letters of invitation to 250 board members.

### *Office manager*
- Liaison with property managers of two buildings to include overseeing of ordering office equipment, maintenance of computer equipment, coordinating security system and providing assistance to staff during emergency evacuation.
- Coordinated office procedures and organized employee handbook. Reviewed and prepared budget online. Trained and supervised work priorities for temporary and office assistants.

February 2002 to May 8, 2006          **National League of Cities**
                                        **Institute for Youth, Education & Families**
                                        **Administrative Assistant**

### *Administrative Support*
- Responsible for supporting the Executive Director with financial execution on contracts for funding technical assistance programs. Scheduled meetings on Microsoft Outlook and coordinated conference calls for director with local elected officials, board superintendents and executive directors. Responsible for proofing and editing membership letters for director's signature. Developed and organized city official's electronic database for the education and after school programs. Recorded statistics in database used for analyzing city participation to generate reports. Approved consultant invoices for payment and maintained consultant contracts for the Bill & Melinda Gates funds. Assigned accounts to contracts for staff. Reviewed resumes for new hires and contacted applicants to schedule interviews for Human Resources and the education department.

### *Meeting Planning*
- Responsible for assisting program staff with preparation of workshops and annual conferences. Edited program agendas, designed and prepared evaluation questionnaires, coordinated meeting materials for the Education Policy Advisors Network and Leadership Academy meetings scheduled several times a year. Performed outreach to improve meeting participation by communicating with direct member city mayor's for targeted city populations.

- Negotiated and generated the request for proposal and contracts to hotels for hosting all meetings for the Education and Afterschool Initiatives team. Conducted site visits to hotels in D.C. and out-of-town. Responsible for selecting banquet orders, reviewing contracts

- and approving the master billing. Managed meeting registration, set-up database to generate participant lists, name badges and rooming list. Responsible for coordinating and shipping meeting materials to the Washington Hilton and out-of-town hotels. Represented NLC at registration booth by greeting members, distributing badges, materials and assist staff with meeting room set-up during annual conference meetings.

**August 1992 to February 2002**           **National League of Cities**
                                            **Office of Policy & Federal Relations**
                                            **Office Manager / Administrative Assistant**

*Office manager*

- Maintained congressional database for Senators and House of Representatives. Searched via Internet for House and Senate bills for mark-ups on Capitol Hill for legislative analysts. Responsible for editing the National Municipal Policy under five policy committees. Responsible for supervising and ensuring deliveries of Congressional mailings to Capitol Hill. Responsible for finalizing merged letters to Congress. Produced charts and typed legislative articles for Nations Cities Weekly newspaper.

- Assisted Human Resources in selecting new staff by scheduling interviews, selecting resumes and providing new staff orientation for the Office of Policy and Federal Relations. Paid all subscription invoices for publication center and maintained filing system. Supervised senior secretary and Interns.

*Meeting Planning*

- Responsible for arranging the Legislative Briefing for Delegates meeting at the annual Congressional Conference held at the Washington Hilton. Coordinated the annual Resolution Committee meeting hosted by various member cities for 10 years.
- Coordinated and ordered meeting materials from Baldwin's Graphics print shop for distribution at workshops held at the Washington Hilton and out-of-town meetings. Prepared meeting materials for packing and delivery. Responsible for determining the participation by state representation at the annual Resolutions committee meeting and recognized for outstanding organization and coordination of the meeting by the executive director.

*Administrative Support*
- Served as personal assistant to Center Director and administrative assistant to lobbying staff. Designed and edited the "Hot Issue papers" for legislative workshops written under the National Municipal Policy. Responsible for designing and editing the bi-weekly State Municipal League newsletter to executive directors. Maintained the executive director's database for distribution of newsletter.

**November 1979 – August 1987**           **Woodward & Lothrop Department Store**
                                            **Washington, D.C.**
                                            **Special Assistant – Public Relations Department**

*Administrative Support*

- Assisted event planners with coordinating Breakfast with Santa, Celebrity book signing, and Radio Promotion special events. Maintained database of lawyers, doctors and city officials for purposes of invitation. Coordinated Model Rooms special event held annually. Edited and typed press releases, special events reports and budget analysis for director. Handled walk-in customer complaints verbally and filed reports in Business office. Maintained records of office expenditures and held responsibility for providing payments to models and contract holders. Maintained and filed dated materials for archives. Assisted donations coordinator with selecting shelters and businesses to donate retail merchandise. Modeled during special events and represented P.R. during in-store special events.

*Education*
- Cardozo High School graduate - Studied courses in Business Management at Prince Georges Community College
- Certificate courses taken at the National League of Cities: Career Development, Interpersonal Communication, Management Support, and Business Writing - Attended 3 day seminar for event planners at (HSMAI) – Hospitality Sales and Marketing Association International – Event planning workshop for managers.

*Computer Skills*
- Type 75 wpm - Advanced in Microsoft Word, Outlook, PowerPoint and Excel.

&#10086; Excellent letters of reference available - 10 years of superior performance evaluations &#10087;

DRAFT FOR APPROVAL - Attachment of unprofessional behavior following this memo.

November 2, 2006

MEMORANDUM

To:        LaTisha Wadlington

From:      Jacqueline T. Robinson-Reeder

Subject:   Verbal warning – Insubordinate attitude

During the term of your employment starting October 16, 2006, I have encountered a number of issues of great concern as your supervisor. In my evaluation you have acted unprofessionally with back talk, refusing to do assignments in a timely manner and approaching staff for assignments without my approval.

I met with you on October 17, 2006, when I determined you were surfing the Internet excessively and putting my assignments aside. Unexpectedly, your behavior was so unprofessional during your first days, of employment (*returning from a late lunch, challenging my direction on assignments –Federal Express, excessive interruptions and unprofessional clothing was an issue*) that I called Phyllis Goodwin in H.R. for advice.

You have since then disrespected your supervisor in the manner of talking back excessively in the front office several times occurring on October 31st and November 1st, 2006.

I have documented your lack to complete other assignments and your challenging behavior to behave leisurely instead of spending time working on assignments given to you. Your behavior thus far as been evaluated as insubordination to your supervisor. I have highlighted the situations needing improvement immediately in the following paragraphs.

On October 31, 2006, I inquired about the completion of an assignment given to you on Wednesday, October 25, 2006. You informed me that it would be done another day. You continued to verbally converse with me after I told you the issue was resolved. Unexpectedly, you became argumentative again starting at 4:45 p.m. until 5:05 p.m., upon your departure of the office. The following day you apologized and and I understood this a change in your attitude and respect towards me.

On November 2, 2006, another situation involving insubordination took place. Later in the day while waiting for an assignment you rushed me when I was interrupted by my supervisor to work on a project. You confronted me with constant verbal questioning about when the assignment was coming, and your behavior was demanding while I was working on a project for the Executive Director.

You became impatient and I took time from my deadline to explain to you what I was doing. You jumped from your chair and took it upon yourself to walk around and disturb staff by asking for assignments without my approval. You later apologized and said you made me look bad to staff. You have acted unprofessionally and this behavior is unacceptable to me.

LaTisha Wadlington
November 2, 2006
Page Two

You lack self-control of your behavior, and sound decision-making. This behavior is immature, unprofessional and demeaning to me as your immediate supervisor. This is the second act of insubordination due to the fact you didn't seek guidance from your supervisor before acting and refused to wait for the assignment after being instructed to do so. *I am frustrated by this behavior*

~~You are frustrating me entirely~~ and I cannot anticipate when you are going to behave in an unprofessional manner. I cannot concentrate on my work with your constant interruptions. Your unpredictable behavior has caused the necessity of this warning to make you aware that these situations of insubordination are serious and in violation to what my standards are for an employee reporting to me.

**If there is another ~~behavior occurrence~~ like the two mentioned above, I would have to ask my supervisor and H.R. for your probationary period to end prematurely due to your lack of maturity and professionalism.**

I definitely would not recommend you at this time to continue your career at HED or ACE with the disrespectful behavior and immaturity you have displayed in the position as Office ~~Manager~~ *Assistant* reporting to me.

I have no reason to accept this type of behavior from you in the immediate future. I will ask H.R. to assist you in attending classes in professional development to ensure that your behavior improves during your probationary period.

cc:
Christine A. Morfit
Coleen Collins



American Council on Education
Higher Education in Development

## INTERNAL MEMORANDUM

TO:       Jacqueline Robinson-Reeder
          Executive Assistant

FROM:     Christine Morfit
          Executive Director, HED

DATE:     November 6, 2007

SUBJECT:  Probation


I received your letter today and I have reviewed it. I appreciate your concern about LaTisha, and take them seriously. We intend to address her performance with her. I am, however, concerned about your conduct and, in particular, the manner in which that you have reacted to this situation and other situations over the course of your two months with us.

I was planning to review these issues with you last Friday, but you did not come to work. Over the short course of your employment with us, I have received complaints from ACE staff at One Dupont Circle about your behavior. Specifically, I have received complaints that you have been rude to a variety of individuals. I have received complaints from 4 departments, including Accounting and Financial Reporting, Service Center, PDSC, and Human Resources. You have been quoted as saying the following statements: "I want to talk to someone who knows what they are doing", "I have 15 years experience and I don't have to deal with you", and "I am an Executive Assistant, I don't have to deal with this crap." I am very concerned about these complaints because it shows a pattern of behavior, not just an isolated complaint.

The letter you sent after the meeting with LaTisha also was not appropriate for a professional with respect to its tone, content and presentation.

The behavior described above is not tolerated at ACE. My expectation is that you will change your behavior immediately. I am putting you on 30 days probation. If at any point during the 30 days, I receive a complaint that I confirm, I will have no other choice but to terminate your employment. This probation does not affect your at will status during and after the probation or our continuing expectations of you if you successfully complete the probation.

*Proof of work performance.*
*Defendant lack ability to address - JBRJackson*

Jackie, I think you have tremendous potential as an employee of ACE and HED. Please let me know if I can do anything to assist you as you address these concerns.

I, Jacqueline Robinson-Reeder, have received a copy of this document:

_____
Jacqueline Robinson-Reeder

*November 7, 2006*
Date

*ATTACH (F)*

STATEMENT OF FINANCIAL POSITION

SEPTEMBER 30, 2006

**ASSETS**

| | |
|---|---:|
| Cash and cash equivalents | $11,678,267 |
| Receivables (note 3) | 9,955,738 |
| Inventories | 14,113,678 |
| Investments (note 4) | 16,327,228 |
| Other assets | 177,134 |
| Property, net (note 5) | 8,520,066 |
| **TOTAL ASSETS** | **$60,772,111** |

**LIABILITIES AND NET ASSETS**
LIABILITIES:

| | |
|---|---:|
| Accounts payable and accrued expenses | $6,761,108 |
| Deferred revenue (note 7) | 7,598,639 |
| Funds held in trust | 291,103 |
| Interest rate swap (note 8) | 211,682 |
| Bonds payable (note 8) | 5,219,176 |
| Postretirement benefit obligation (note 9) | 2,989,252 |
| Total liabilities | $23,070,960 |

COMMITMENTS AND CONTINGENCIES (notes 11 and 12)

NET ASSETS:

| | |
|---|---:|
| Unrestricted | 35,985,145 |
| Temporarily restricted (note 10) | 1,716,006 |
| Total net assets | 37,701,151 |
| **TOTAL LIABILITIES AND NET ASSETS** | **$ 60,772,111** |

*See accompanying notes to financial statements.*



Welcome georgia28@comcas...
You have 0 messages

**My Home**    Account Info    Payments    Transfers    Investments    Service (

# My Home

Last visit: 01/13/2008 04:34 PM EST

customize thi

**Did you know**...A federal rule—Regulation D—limits the number of certain types of transactions that can be made from a savings or money market account to six each statement period. Learn more.

## account summary ⬚

Edi

| Checking | On Deposit | Available Now |
|---|---|---|
| Interest Checking XXXXXXX999 | $ 22.95 | $ 22.95 |

| Savings | On Deposit | Available Now |
|---|---|---|
| Ultimate Money Account XXXXXXX027 | $ 332.73 | $ 332.73 |

**ThankYou** View or redeem your ThankYou® Points at thankyou.com. ⬚

statements | banking alerts | download activity | link an account

## payment & transfer center

**future payments**

**None**

**future transfers**

**None**

**payments:**
express | one-time | recurring | change or cancel

**transfers to linked accounts:**
one-time | recurring | change or cancel

## market watch

Edi



| | As of 01/11/2008 - 00:00 ET | |
|---|---|---|
| Dow Jones 30 Industrials | 12,606.30 | -246.79 |
| NASDAQ Composite | 2,439.94 | -48.58 |
| S&P 500 | 1,401.02 | -19.31 |

©BigCharts.com
As of Close on 1/11/2008

**Quote Finder**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

US DISTRICT & BANKRUPTCY
CLERK
COURT

2008 JAN 15 PM 4: 27

RECEIVED

| | |
|---|---|
| JACQUELINE T. ROBINSON-REEDER | ) |
| **Plaintiff** | ) |
| | ) |
| | ) Civil Case: 07-0880 (JDB) |
| AMERICAN COUNCIL ON EDUCATION | ) |
| | ) |
| **Defendant** | ) |
| | ) |

### Declaration of Jacqueline T. Robinson-Reeder

I, Jacqueline T. Robinson-Reeder states as follows:

1.) That I have applied for jobs and was granted an interview with the George Washington University Biostatics Center, the Omni Sheraton Hotel, United Colors of Benetton, The World Bank, The International Finance Corporation, TIAA-CREF, and The Ford Agency. Plaintiff has applied online to over 50 potential employers and denied employment.

2.) That I was denied employment based on direct verbal conversation with staff employees at the George Washington University and the Ford Agency that unfavorable job references from the American Council on Education had been given and the job would not be offered.

3.) That plaintiff made the short list and spoke with Vice-President at the World Bank who was interested in hiring but later refused to speak or hire plaintiff after checking reference with the American Council on Education.

3.) That I was directly advised from the staff adviser of the EEOC to remove the American Council on Education work history from resume to prevent retaliation by receiving negative job references.

4.) That the above mentioned employers were highly interested in hiring the plaintiff, but advised that after completing the reference check process they chose to not offer the position that I qualified for.

5.) That plaintiff did not receive notification that I was eligible to elect benefits under COBRA. Plaintiff had received retirement fund to allow for expenses and paying for medical would have been an option if the ability had been known.

6.) That plaintiff and those of concern has been denied a 'standard job reference in writing" in over five different occasions of request and pleading to improve the standards of living by earning income through employment. Plaintiff has the direct evidence of denial in writing.

7.) That plaintiff has direct written evidence that the American Council on Education informed potential employers that she filed an "EEOC" charge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2008

Jacqueline T. Robinson-Reeder

**Jacqueline Robinson-Reeder**

*EXHBT II*

**From:** "TIAA-CREF Human Resources" <Careers@tiaa-cref.org>
**To:** "Jacqueline Robinson-Reeder" <georgia28@comcast.net>
**Sent:** Monday, February 05, 2007 8:00 PM
**Attach:** current_email_in_html.html
**Subject:** [SPAM] Administrative Assistant-1681797 at TIAA

[x]

*I rec'd several Home phone calls from H.R. Representative. She informed me of her need in Job references from Ace*

February 5, 2007

Dear Jacqueline Robinson-Reeder:

We have received your resume for the position of Administrative Assistant-1681797 and are currently reviewing your experience and qualifications.
A preliminary review of your candidate profile indicates that you may meet the pre-selection criteria for this position. However, the following information may be missing:

U.S. Equal Employment Opportunity/Affirmative Action Information
Plain Text Resume
Plain Text Cover Letter
Additional Information
To consult your candidate profile and check for any missing information, click here.

*Later, about 2 weeks after when I called her she was not interested and asked me not to call her again.*

To learn more about TIAA, please visit us at www.tiaa-cref.org.

Sincerely,
TIAA Talent Acquisition Department

Replies to this message are undeliverable and will not reach the Human Resources Department. Please do not reply.

*I declare this is a true & honest statement*

*Jacquelyn R. Reeder*

7/3/2007

*EXHIBIT II*

## Jacqueline Robinson-Reeder

**From:** "Emily Rogers" <erogers@omnihotels.com>
**To:** "Jacqueline Robinson-Reeder" <georgia28@comcast.net>
**Sent:** Tuesday, April 24, 2007 3:58 PM
**Subject:** [SPAM] RE: [SPAM] Omni Hotels

Lets do tomorrow at 12:30. What number would you like for me to call?

Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street
Washington DC 20008

*I spoke w/ Ms Rogers several times and she was very impressed with my skills and experience. After calling ACE for references, I never heard back from her and she refused my calls.*

**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Tuesday, April 24, 2007 3:41 PM
**To:** Emily Rogers
**Subject:** Re: [SPAM] Omni Hotels

Hello Emily,

Thanks for considering my application. I am available during 12:00 - 1:30 pm., any day of the week.

Jacqueline
301-996-0630 - Cell
301-967-1570 - Home

*I declare this is a true statement,*

----- Original Message -----
**From:** Emily Rogers
**To:** georgia28@comcast.net
**Sent:** Monday, April 23, 2007 11:08 AM
**Subject:** [SPAM] Omni Hotels

Jacqueline-

I have received your resume for the Executive Assistant position at the Omni Shoreham Hotel and would like to discuss the opportunity with you further. Please email me times this week that you would be available for a phone interview. Thank you.

Emily Rogers
Omni Shoreham Hotel
Recruiter

2500 Calvert Street
Washington DC 20008

7/3/2007



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

# EMPLOYMENT REFERENCE

**From:** Chrystal Hall

| | |
|---|---|
| **Candidate** Jacqueline Robinson-Reeder | **Date** August 30, 2006 |
| **Company Contacted** National League of Cities | **Phone #** 202-626-3000 |
| **Person Contacted** Chris Becker | **Title** Deputy Executive Director |

What was your relationship to this person? Supervised on occassions.    For How Long? 4 months.

When did he/she work for your company? (Month/Year)    From 9/92    To 5/06

Do you have the authority to verify salary? Yes ✓    No _____    Earnings Were $ 47,880/yr

Based on their resume, it looks like this person did the following (fill in specifics), would you say this is accurate and is there anything else they did that we've missed?

Jacqueline has worked for National League of Cities (NLC) for quite some time. However, I supervised Jacqueline intermittently on occassions when there where vacancies in the Policy and Federal Regulation departments. Her main responsibility at those times were mostly production of reports and letters that needed to go out to members of Congress.

On the average, how often would you say this person was late or missed work?

Jacqueline was very reliable and didn't take advantage of the leave policy. Whenever I needed her to pitch in in other departments, she made herself readily available.

What would you say were his/her strengths?

She has solid computer skills, she's a speed typist, pays attention to detail, thorough, takes her work seriously and strives for perfection.

What area(s) would you say he/she needs to further develop?

Again, she mainly did production work for me at the times when I needed her. She did an excellent job, her work product was top-notched.

Do you know why he/she left your company? Is he/she eligible for rehire in their previous position?

Jacqueline has been with NLC for a very long time, we never talked about her reason for wanting to leave. I can only assume that she was ready for a change. She is definitely eligible for rehire.



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

Employment Reference – Page 2

Can you discuss their ability to prioritize work and their overall organizational skills?

To the extent that I was involved, Jacqueline knew how to organize and prioritize her desk. She knew how to manage her time quite well and she also knew what was important and what could wait. She is a very efficient worker.

How well did this person take initiative and/or show self-motivation in work situations?

She showed initiative and self-motivation quite well. She was always willing to pitch in and take responsibility of what needed to be done, not only in her department, but other departments as well.

Would you say this candidate was team oriented or did he/she work alone? What type of environment would he/she be most suited?

Jacqueline is a team player and works well independently if given clear direction.

Our candidate says they are technically proficient in the following areas (fill in details), would you say that is accurate? How often and in what capacity did they use these skills?

We used Microsoft office suite and she is skilled in all areas, especially Word and Publisher.

I am considering presenting him/her for a position where (most difficult aspect or most important aspect of job). How do you think this person would fit in this type of position?

I believe Jacqueline will do just fine wherever she goes. She gets along well with all levels of staff, is a team player, hard worker and has a good work ethic.

Compared to others in this position, how does this person rank?

Because I've only supervised her for a short period of time, I can't honestly and fairly rank her compared to others. She did a great job for me when I needed her and I couldn't ask for anything more.

What skill or quality does this candidate have that would cause them to stand out over other candidates?

Her thoroughness, attention to detail and willingness to roll her sleeves up to jump in and help out all departments at a moments notice.

Occasionally, our clients will also check references before or after an offer of employment has been extended. Would you have any concerns if they contacted you directly?

I don't have any issues with that.

*If there is any other information you may want to add that may help us help this candidate, please let me leave my name, email address and number*



NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

# EMPLOYMENT REFERENCE

**From:** Chrystal Hall

| | |
|---|---|
| **Candidate** Jacqueline Robinson-Reeder | **Date** June 14, 2006 |
| **Company Contacted** National League of Cities | **Phone #** 202-626-3013 |
| **Person Contacted** Clifford Johnson | **Title** Executive Director |

What was your relationship to this person? ___She was a member of my staff.___    For How Long? ___About 4 yrs.___

When did he/she work for your company? (Month/Year)    From _____    To _____

Do you have the authority to verify salary?    Yes _____    No _____    Earnings Were $__

Based on their resume, it looks like this person did the following (fill in specifics), would you say this is accurate and is there anything else they did that we've missed?

> Jacqueline was the administrative assistant and provided a broad range of administrative and clerical duties. Alot of meeting planning, hotel arrangements, logistics for on-site events, scheduling, database management,

On the average, how often would you say this person was late or missed work?

> She was rarely late or missed work. She is very reliable in that respect. Her leave was always planned.

What would you say were his/her strengths?

> She has strong word processing skills, database adminstration, provides exceptional customer service. We often received compliments on how well she handled the members of the National League.

What area(s) would you say he/she needs to further develop?

> Her biggest challenge was working for multiple people. She would be great working one on one. However, dealing with 3 to 4 people simultaneously was a bit confusing for her.

Do you know why he/she left your company? Is he/she eligible for rehire in their previous position?

> She just resigned. She was here for a very long time. I guess she was interested in doing something different.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JACQUELINE T. ROBINSON-REEDER,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **vs.** ) | **Civil Case: 07-0880 (JDB)** |
| ) | |
| **AMERICAN COUNCIL ON EDUCATION** ) | |
| ) | |
| ) | |
| **Defendant** ) | |

## PROPOSED ORDER

Jacqueline T. Robinson-Reeder, hereby requests pursuant to LCvR7, this matter before

Judge John D. Bates on the plaintiff's motion for "Preliminary Injunctive Relief" against

the American Council on Education to gain employment.  After through consideration,

Judge John D. Bates finds that this motion is well taken and should be granted.


IT IS THEREFORE ORDERED that the plaintiff's motion is granted and so ordered

on date:_____

Judge John D. Bates
United States District Court for District of Columbia