CLERK
US DISTRICT &
BANKRUPTCY COURTS

2008 JAN 18 PM 3: 32

RECEIVED

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JACQUELINE T. ROBINSON-REEDER** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **Civil Case: 07-0880 (JDB)** |
| **AMERICAN COUNCIL ON EDUCATION** ) | |
| ) | |
| **Defendant** ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION
FOR PRELIMINARY INJUNCTIVE RELIEF
TO HALT IRREPARABLE HARM**

The American Council on Education is in violation of Title VII, 42 U.S. C. 2000(e)(3)(a). The plaintiff moves the court to grant preliminary [1]injunctive relief immediately to stop the [2]retaliation by defamation from the defendant.

**Plaintiff has proof of Retaliation claim mailed to the American Council on Education**
        The U.S. Employment Opportunity Commission has written a letter on behalf of the plaintiff to prove that the Retaliation charge written on February 12, 2007, and finalized on March 1, 2007, was mailed on March 13, 2007, to Mr. David Ward, President of the American Council on Education.  See attachment (R). *Letter from Kyle Wegner.*

The defense has asked the court to dismiss the retaliation claim because the plaintiff failed to exhaust her administrative remedies. In full view of the court, the satisfaction of filing the Retaliation charge no. 570-2007-00948 is in order and effect. Therefore, in victory of satisfying the administrative remedies, the court should grant the preliminary injunctive relief immediately to improve the plaintiff's life which is so desperately needed. See attachment (RI) *Retaliation from EEOC.*

**Plaintiff has a right-to-suit:**
        *Job Discrimination Law Reference: Library of Congress Section 1982, Civil rights 367, 368*
The right-to-sue as an exception exists as a prerequisite to suit under Title VII if the complainant has previously received a right-to-sue letter on another EEOC charge, and the two charges are "reasonably related" to each another. See attachment (RII) *Right-to-sue from EEOC on February 12, 2007.*

---

[1] Title VII of the Civil Rights Act of 1964 – Remedies and Damages:  Injunctive Relief is available when there is an intentional discriminatory employment practice. For instance, an employee can be re-reinstated and an employer can be ordered to prevent future discrimination.

[2] SEC. 2000e-3. *[Section 704]:*  (a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor management committee controlling apprenticeship or other training or retraining, including on the job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**New Evidence of negative reference from the American Council on Education – Adverse Action**

On January 16, 2008, Plaintiff went on interview and was informed that reference was checked with the defendant, during the interview the recruiter offered the plaintiff a temporary job with the hourly earnings of $12.00 per hour.

This evidence is direct that the defendant is purposely retaliating to harm the income of the plaintiff. Plaintiff earned salary of more than $27.00 per hour prior to her employment at the American Council on Education and enjoyed finding temporary to hire employment during breaks of employment due to her experience and skills acquired since 1975.

The [3] circumstantial evidence persists constantly that the defendant is responsible for the lower earning rate and the lack of not being able to find employment at earnings of $49,999.99. The lack of plaintiff's ability to find employment and lower pay rate is directly attributed to after employment with the defense. See attachment (1) *Pay stubs from NLC, ACE, TeleSec.*   Plaintiff is under protected activity – Retaliation claim and [4] Discrimination claim.

Although direct evidence is very hard to collect, because potential employers do not want to be held liable for their behavior towards employee after being informed that [5] EEOC charge was filed. Potential employers don't hire the plaintiff or offer a lower pay rate. The potential employer hides their behavior as well, while the plaintiff suffers. Victoriously, plaintiff has direct evidence that defendant has informed potential employers of EEOC charge.

On December 27, 2007, during times of plaintiff trying to secure personnel files as evidence from previous employers, it appeared that the potential employer and the defendant had conspired to avoid liability.

The defendant will continue to harm the plaintiff's career and income, by denying the slander because there is no system to catch the defendant committing the harm. The only system to prevent the slander is the court justice to grant the

---

[3] / Turning to the language of 2000e-2(m) the court observed that the statue "imposed no special [evidentiary] requirement and does not reference "direct evidence" Id., at 853. Accordingly, the court concluded that a 'plaintiff' may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played a "motivating factor" Id. At 853-854.

[4] /Title VII also prohibits discrimination against a current or form employee or applicant because he opposed any practice made in unlawful practice by Title VII @ 42 U.S.C. 2000e-3(a) the courts have held that an employee is protected if he or she had a reasonable and good faith belief that the practice they opposed constituted a Title VII violation even if it tuned out that the practice they opposed was not a violation of Title VII, Dee vs. Colt Construction and Delivery Company, 28 F.3d 1446 (7th Cir. ) (1994)

[5] /Pursuant to Title VII, employers are not allowed to discriminate when it comes to hiring, firing, privileges, compensation and promotion. At first glance, the prohibited conduct addresses employees' rights both before and during employment. However, many employers may not realize that the prohibitions encompass post-employment conduct as well. An employer who discriminates against a former employee or retaliates against an employee who filed a claim with the EEOC through the use of a pejorative and damaging reference can also be held liable for violation of Title VII.

immediate preliminary injunctive relief to prevent retaliation by defamation. The [6]retaliation is proven in the probation letter dated by the defendant on November 6, 2006.

## Background  - Some examples of employment prevented by American Council on Education

Plaintiff resigned on November 6, 2006. **Contacted NRI, temporary agency for new assignment.** NRI never referred plaintiff for new assignment. NRI was confronted about their behavior (See attached (B)) They denied it. But, never called the plaintiff for jobs that are available under plaintiff's skill level. This behavior is directly attributable to defendant reference. NRI has come up with many excuses for not referring plaintiff for jobs to avoid liability.

Plaintiff registered with **Graham staffing for assignments**. Graham staffing never referred plaintiff for jobs that are available under plaintiff's skill level. (See attach C)

Plaintiff worked for **George Washington University** – received excellent letter of recommendation (See attach (GW)) George Washington University has several executive assistant openings for skill level. Denied all openings.

Plaintiff worked for the **International Finance Corporation and World Bank** – Assignment extended due to skills and personality. Applied for jobs and made short list with high recommendations for employment. Job not received after reference check.

Plaintiff registered with the **Ford Agency** – Same behavior see attached (FA)

**Summary**: All of the above have conspired with the defendant because they discriminated against plaintiff because I filed a EEOC charge informed by the defendant . They didn't mean to do it, they had no choice. After being told of the EEOC charge, they hired someone else. They will not admit to it to avoid liability and has given me other convenient excuses.

1.) This paragraph is true.

2.) **False – COBRA notice not received by plaintiff.** On January 11, 2008, H.R., director produces COBRA notification held since November 26, 2006. The plaintiff has been without medical insurance from November 26, 2006

---

[6]/ Duke Law Journal: Retaliation cases over negative references involve claims that the negative reference was motivated by a desire to 'get back" at the employee for engaging in protected activity under Title VII of the Civil Rights Act of 1964.  A negative reference, although perhaps less dramatic than termination, can be just as devastating to an employee's career in that it extends beyond the current employment relationship to taint a potential future one.  Both the importance of the reference issue to employers and potentially devastating consequences of negative references for employees resonate in the Tenth circuit's recent opinion of Hillig v. Rumsfeld.  In Hillig, the Tenth circuit found that a negative reference constituted an adverse employment action though there was no proof that the employee would have received the job if the reference had not been given.  Hillig, 381 F3d. at 1031-33.

3

until January 17, 2008. The defendant failed to use Certified Mail. The defendant failed to provide notification for plaintiff to continue medical insurance for family. The defendant failed to request plaintiff to visit (1 Dupont Circle) to sign the notice to ensure receipt of important notice and continuation of medical insurance. The defendant failed to use proper address (#421 omitted), therefore the notice was not received, no fault of plaintiff. Due to the neglect of employer providing COBRA notice, the plaintiff has incurred medical bills without medical coverage. Based on the defendant's prior untruth of denying receipt of the Retaliation charge mailed by EEOC, this declaration is intended as cover-up to avoid liability. Noreen Duggan was suppose to mail the COBRA notification, but now the H.R. director has the notice in her possession. Everyone has the COBRA notice, except the plaintiff.

The plaintiff has mentioned in several prior pleadings that she has no medical coverage and the defense never produced this notice before the declaration on January 11, 2008. Therefore, the declaration is quickly executed to avoid liability while the plaintiff suffered from November 26, 2006 until January 11, 2008.

Plaintiff's dependents never received notification at address provided. Therefore, based on neglect the defendant should be penalized to afford the plaintiff to pay for medical bills caused by stress, lack of sleep, headaches, breast tumors, irritable bowel syndrome, etc. Plaintiff is sick without the ability to see a doctor. Plaintiff has no insurance and is being treated unfairly in full view of the court. See attachment (C) *letter from Duggan*

2.)    **False – Collins did not give positive reference**. Evidence that positive reference was not given is proven by the unemployment of the plaintiff. The H.R. director's so-called positive [7]reference resulted in the plaintiff unemployment. Collins has been aware of complaint filed on May 10, 2007, alleging negative references. Now, on January 11, 2008, the H.R. director admits to giving a positive reference for the plaintiff.

This admittance has a boomerang effect not favoring the defense. On January 11, 2008, the declaration of giving a "positive" reference denied the plaintiff employment as of January 17, 2008. Declaration was made to avoid liability. Collins has no proof of whom she gave the "positive reference" to --with such high stakes in a civil complaint in U.S. District Court of D.C., keeping a record would be to the advantage to the defense. Therefore, in absence of such records

---

[7] / Employment Law defining Defamation per se: If the statement is one that is defamatory per se, the plaintiff does not need to prove any special damage. In such a case, the plaintiff is entitled to recover general damages, which include harm to reputation, without evidence of the harm incurred. Even where the defamation is actionable per se, the plaintiff may recover "special damages" over and above general damages, if he or she pleads and proves that the defamatory statement was a substantial factor in causing that harm. **Such special damage may include an inability to obtain employment.**

4

for proof other than deceitful cover-ups, the plaintiff or court has no basis to believe the defendant's stunts of untruths to avoid liability. The potential employer was interested in hiring the plaintiff after her interview and resume was highly favored. Unfortunately, the final step was checking the job reference with the ex-employee's previous employer resulted in the non-hire of the plaintiff. The Human Resources department is responsible for the unemployment of the plaintiff. H. R. staff informed potential employers of the [8]EEOC charge prior to Collins declaration on January 11, 2008.

## Procedural Status of the Case

Defendant neglected to state the "Sureply" leave to file granted by Judge Bates on August 24, 2007. Defendant neglected to state on June 25, 2007, the first mediation was unsuccessful due to the denial of a "standard job reference." Defendant neglected to state their attempt to have the complaint dismissed at hearing on July 5, 2007, but was denied and Mediation was recommended for the second time by the honorable and unprejudiced Judge Bates by October 5, 2007. Defendant neglected to state the failure of second mediation held on January 3, 2008, was due to denial of "standard job reference" for an "apology letter" instead.

## 3.) False – Retaliation charge received on March 13, 2007.   Right-to-sue not needed charges are related.

Plaintiff has provided court with copies of EEOC charge with retaliation box checked on intake form. Plaintiff has provided court copies of Retaliation charge. EEOC asked the plaintiff to file a "reconsideration" to address the discrimination of inappropriate probation, but plaintiff had already filed complaint on May 10, 2007. The EEOC has been instrumental with advising and assisting plaintiff with her retaliation charge. David Ward, President of the American Council on Education received retaliation charge on March 13, 2007.

## II. False - Ms. Robinson-Reeder can meet the standard for a Preliminary Injunction

The plaintiff has met her obligation to meet all administrative remedies by filing the retaliation charge with the EEOC on February 1, 2007. The finalized charge was stamped March 1, 2007 and mailed to David Ward, President on March 13, 2007. See letter from Wegner (Attach R).

To rest the likelihood of success on the retaliation merits, the plaintiff will follow the [9]**Prima Facie for Defamation**:

---

[8] A number of cases have recognized Title VII liability if a former employer discloses to prospective employers that the employee had filed EEOC charges. Thus, in London v. Coopers & Lybrand,|5~ the employer was held liable under Title VII for not only telling other employers that the plaintiff had been terminated because she was a "troublemaker" but also telling other accounting firms and her graduate school that she had filed an EEOC charge.

[9] Citing Meloff v. New York Life Ins. Co., 240 F3d 138, 145 (2d Cir. 2001), Judge Larimer found that in order to state a claim for libel or slander, a plaintiff must allege: (1) a false and defamatory statement of fact made either orally (slander) or in writing (libel); (2) regarding the plaintiff; (3) that was published to a third party by the defendant; and (4) that resulted in injury to the plaintiff.   In ruling in favor of the plaintiff, Judge Larimer

**Engaged in protected activity**: Discrimination charge on December 15, 2006/Retaliation charge dated March 1, 2007/
**False and defamatory statement**: "Rude and unprofessional" written in memorandum on November 6, 2006. False
statement not investigated in Human Resources. Defendant admits to failing to properly investigate false allegations.
**Adverse action**: Defendant admits to adverse action by assigning probation on November 6, 2006, after plaintiff
complained internally on November 2, 2006.
**Statement told to third party**: In December 2006, plaintiff was informed by Ford Agency and George Washington
University that unfavorable references were given which caused the failure in referring for jobs and hiring. In August and
June of 2006, plaintiff denied employment after checking references with defendant. Later was told verbally that
defendant had informed potential employers that EEOC charge was filed.
**Injury result**: Plaintiff hourly salary has changed from $27.44 per hour to $12.00 – 17.00 per hour. Last date of
temporary employment October 3, 2007. Plaintiff has been denied temporary and permanent work because electronically
the enforcement of EEOC being charges is made public record. Potential employers are verifying the defendant's
information of the EEOC charge against the American Council on Education. Therefore, the plaintiff is considered a
problem and no one will hire me. **Plaintiff is unemployed without ability to obtain income no matter how hard she
tries.**

[10]**Prima Facie for Retaliation:**

**Engaged in protected activity:**  Discrimination charge on December 15, 2006/Retaliation charge dated March 1, 2007/
**Knowledge of protected activity**: Noreen Duggan has the plaintiff's EEOC charge in her possession on June 22, 2007.
**Adverse action: Refusal of job reference** – On June 1, 2006, the defendant states that plaintiff is not entitled to a job
reference.  Answer complaint  See no. 9.
**Casual connection:** Plaintiff has been denied employed starting November 7, 2006. Human Resources staff are
responsible for giving job references to potential employers. H.R. staff employee made complaint.(Plaintiff did not
receive orientation for 2 months after hire, nor did she receive orientation handbook. When plaintiff called to inquire
about orientation the H.R. staff member became defensive due to neglect. H.R. staff member friend of office assistant
that was insubordinate to plaintiff. Therefore, everyone in H.R. has ill will towards the plaintiff and has worked
maliciously to give negative references to prevent the employment of the plaintiff.

---

wrote, Plaintiff's allegations sufficiently state a claim for libel or slander. Falsely stating that someone was discharged for misconduct on the job,
knowing that the statement was false, is considered defamatory in nature, and possibly even defamatory per se.

[10] Citing Reed v. A.W. Lawrence & Co., 95 F3d 1170, 1177 & n. 9 (2d Cir. 1996), Judge Larimer explained that to state a prima facie claim of
retaliation, plaintiff must allege: (1) that he engaged in protected activity; (2) that the hotel knew he engaged in that activity; (3) that the hotel took
adverse employment action against him; and (4) that a causal connection existed between the protected activity and the adverse action.

**Adverse Action:**  Defendant has refused to give "standard reference" to plaintiff to avoid the negative referencing to potential employers.  Defendant refused to give the Court Appointed Attorney, the "standard reference" --this denial for over one year has caused the plaintiff unemployment without income.

Plaintiff is unemployed and begs the U.S. District Court of D.C. to grant preliminary injunctive relief to gain income by employment immediately.

## Suffer Irreparable harm:

The plaintiff's court appointed attorney requested the "standard job reference" from the defendant, but it was maliciously denied to continue the pain and suffering towards the plaintiff to prevent an income.

Plaintiff has met this criteria by submitting bank statements, exhausted unemployment benefits.  Defendant has and will continue to enjoy verbally assassinating the plaintiff's career on the telephone in their Human Resource office and later denies behavior.

## Constructive Discharge:

The American Council on Education contributed to making the plaintiff's working conditions intolerable.  Three internal complaints ignored from plaintiff to Human Resources and supervisor, Executive Director.  Management retaliated by adverse action putting the executive assistant on probation with threat to terminate --one day after the complaint.

All of this behavior and documents have been submitted to the court under previous motions.  The defense states that the supervisor mentioned " **I think you have tremendous potential as an employee of ACE and HED"** *This statement should be verbally given to potential employers and would be helpful in gaining employment instead of informing them of the EEOC charge and that plaintiff was "rude and unprofessional"*

The statement that caused the constructive discharge of the plaintiff was **"I am putting you on 30 days probation, if at any point during the 30 days, I receive a complaint that I confirm, I will have no choice but to terminate your employment."**

It further mentioned, even after the 30 days she could fire me because of my at will status.  Evidently, defense believes that Judge Bates is not reading the attachments.  I am tired and weak and feel close to mental death. I have argued enough.  I believe that Judge Bates has enough evidence to rule in my favor. Plaintiff has direct evidence, but not having attorney has caused the plaintiff confusion as to when to present it.

## The American Council on Education lacks Integrity

The court and plaintiff is witness to the American Council on Education denying receiving the retaliation charge from the EEOC proves that their word is of the untruth and they would go to any means to dismiss the case while they are guilty of discrimination, adverse action, defamation and retaliation.  The court should move swiftly to end the deceit of the American Council on Education because of their mere ability to cover their behavior with lies.  The defense has made several untrue statements throughout their pleadings.

The American Council on Education is caught in deceit and apparently, they believed they could discriminate against the 52 year old African American employee without having to account for their behavior. **Evidently, they believe a "simple" apology for such malicious and intentional behavior is capable of covering their wrong doing.**  Although the plaintiff has been a weakling in comparison, her belief in the justice system will prove to prevail for her righteous.

7

**Conclusion:** I am poor due to the malicious behavior of the defense. See attachment: (P) I have skills to provide for my family and lifestyle, but the American Council on Education has blacklisted and ruined by reputation. The American Council on Education has harmed my health with this behavior and I am deteriorating.

I have continued to look for healthy employment since my constructive discharge on November 6, 2006, but the American Council on Education, Human Resources staff is allowed to retaliate against me and will continue until the court stops them.

Sincerely,

Jacqueline T. Robinson-Reeder
2140 Brooks Drive - #421
District Heights, MD  20747

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE T. ROBINSON-REEDER, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | **Civil Case: 07-0880 (JDB)** |
| ) | |
| AMERICAN COUNCIL ON EDUCATION ) | |
| ) | |
| ) | |
| **Defendant** ) | |

## PROPOSED ORDER

On January 18, 2008, Jacqueline T. Robinson-Reeder, hereby requests pursuant to

LCvR7, this matter before Judge John D. Bates on the plaintiff's motion for "Permanent

Injunction to gain employment against the American Council on Education. After

through consideration, Judge John D. Bates finds that this motion is well taken and

should be granted.


IT IS THEREFORE ORDERED that the plaintiff's motion is granted and so ordered

on date:_____

Judge John D. Bates
United States District Court for District of Columbia

# Certificate of Service

I, Jacqueline T. Robinson-Reeder hereby certify that on January 18, 2008, mailed a copy of the plaintiff's motion for preliminary relief the address below.


Jacqueline T. Robinson-Reeder
Plaintiff



Mailed to:
Christine N. Kearns
Pillsbury Withrop Shaw
2300 N Street, NW.
Washington DC  20037
202-663-8000



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Toll Free (866) 408-8075
General Information (800) 669-4000

ATTAC (R)

January 15, 2008

Re:    570-2007-00948
       Jacqueline T. Robinson-Reeder vs. American Council on Education

To Whom it May Concern:

The Washington Field Office of the U.S. Equal Employment Opportunity Commission sent a Notice of Charge of Discrimination to Mr. David Ward, President of the American Council on Education on March 13, 2007 at the following address: 1 Dupont Circle, Washington, DC 20036

Should you have any questions, feel free to contact me at (202) 419-0725.

Sincerely,

Kyle D. Wegner
Federal Investigator

an individual's charge once the charging party has been issued a right to sue letter and has initiated litigation based upon that charge.[10]

## § 1982  Receipt of right-to-sue notice

**Research References**

West's Key Number Digest, Civil Rights ⮵367, 368

In some jurisdictions, a complainant may not bring a Title VII suit without having first received a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC)[1] and dismissal of a plaintiff's Title VII complaint is warranted due to the absence of a right-to-sue letter from Equal Employment Opportunity Commission (EEOC).[2]

In other jurisdictions, the receipt of a right to sue letter from the Equal Employment Opportunity Commission is not a jurisdictional prerequisite to the suit, but is, instead, a statutory prerequisite or condition precedent analogous to a statute of limitations and subject to equitable modification when appropriate;[3] the lack of a right-to-sue letter may constitute a defense to a Title VII claim[4] and where a Title VII plaintiff has not received a right to sue letter, the action is subject to dismissal without prejudice.[5]

Even when receipt of the right-to-sue notice is considered a jurisdictional prerequisite to a Title VII action, the failure to receive the notice does not disqualify a plaintiff from bringing the action if he filed a charge and requested the notice from the EEOC, but the EEOC erred in refusing to issue it.[6] An exception also exists to the receipt of a right-to-sue letter as a prerequisite to suit under Title VII if the complainant has previously received a

---

[10]E.E.O.C. v. Hearst Corp., 103 F.3d 462 (5th Cir. 1997).

**[Section 1982]**

[1]Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465 (3d Cir. 2001); Hollowell v. Michigan Consolidated Gas Co., 18 Fed. Appx. 332 (6th Cir. 2001).

Receipt of right to sue notice as triggering limitations period, see § 1925 et seq.

[2]Dickerson v. Associates Home Equity, 13 Fed. Appx. 323 (6th Cir. 2001); Sheppard v. Texas Dept. of Transp., 158 F.R.D. 592, 7 A.D.D. 461 (E.D. Tex. 1994).

A plaintiff's Title VII claims were dismissed (with leave to amend) where the complaint did not allege that the plaintiff had received a right to sue letter from EEOC, and no documentation was provided which indicated the existence of such a letter. Wheeler v. Holtzman, 2 A.D.D. 610 (S.D. N.Y. 1993).

A former employee's Title VII discrimination claim was barred by her failure to either file a discrimination charge with the Equal Employment Opportunity Commission (EEOC)

or receive a right-to-sue letter, despite her argument that she satisfied these requirements by contacting the Minnesota Department of Human Rights (MDHR). Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570 (8th Cir. 1997).

[3]Rice v. New England College, 676 F.2d 9 (1st Cir. 1982); Gooding v. Warner-Lambert Co., 744 F.2d 354 (3d Cir. 1984); Pinkard v. Pullman-Standard, a Div. of Pullman, Inc., 678 F.2d 1211 (5th Cir. 1982); Worth v. Tyer, 276 F.3d 249 (7th Cir. 2001); Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 35 Fed. R. Serv. 3d 911 (11th Cir. 1996); Sheppard v. Texas Dept. of Transp., 158 F.R.D. 592, 7 A.D.D. 461 (E.D. Tex. 1994).

[4]Worth v. Tyer, 276 F.3d 249 (7th Cir. 2001).

[5]Sheppard v. Texas Dept. of Transp., 158 F.R.D. 592, 7 A.D.D. 461 (E.D. Tex. 1994).

[6]National Organization for Women v. Sperry Rand Corp., 457 F. Supp. 1338 (D. Conn. 1978); Kahn v. Pepsi Cola Bottling Group, 526 F. Supp. 1268 (E.D. N.Y. 1981).

---

JOB DISCRIM

right-to-sue sonably rela charge alleg defendants i lated, and th previous righ

Similarly, rather than i jurisdiction.[9] suit without to the organiz

In another letter may be acts by the El

## § 1983  Cur

**Research Re**

West's Key Numb

The failure receipt of the l

A suit's initi by the filing o right-to-sue let filed suit.[3]

However, an ing suit and to had received th basis properly right-to-sue lett

---

[7]Hall v. New Environmental Coi 386 (N.D. N.Y. 1989

[8]Hall v. New Environmental Coi 386 (N.D. N.Y. 1989

[9]Perdue v. Roy S F.2d 1091 (4th Cir. 1 Telephone Co. of Mi (W.D. Mich. 1985).

[10]Equal Employme sion v. Rinella and F (N.D. Ill. 1975).

[11]Movement for O v. General Motors C Cir. 1980).

ATTACH
R

right-to-sue letter on another EEOC charge, and the two charges are "reasonably related" to each another.[7] However, where a plaintiff's first EEOC charge alleged discrimination on the part of 14 persons, none of whom were defendants in the second action, the two charges were not reasonably related, and the complainant could not bring suit based on the issuance of the previous right-to-sue letter.[8]

Similarly, it has been held that the entitlement to a "right to sue" notice, rather than its actual issuance or receipt, is the prerequisite to federal court jurisdiction.[9] Therefore, a member of an organization was permitted to bring suit without having received a right-to-sue letter, where the letter was sent to the organization that had filed the charge on her behalf.[10]

In another jurisdiction, the strict requirement of receiving a right-to-sue letter may be loosened only where the claimant's failure is due to misleading acts by the EEOC, the employer, or a union.[11]

## § 1983 Curing lack of right-to-sue notice

### Research References

West's Key Number Digest, Civil Rights ⚖367, 368

The failure to receive a right-to-sue letter is cured by the subsequent receipt of the letter prior to dismissal of the claims.[1]

A suit's initiation before the issuance of a right-to-sue letter also is cured by the filing of an amended complaint subsequent to the issuance of the right-to-sue letter.[2] The later issuance of that letter ratifies the previously filed suit.[3]

However, an employee who fails to receive a right-to-sue letter prior to filing suit and to amend his court complaint to include the information that he had received the notice after the employer filed a motion to dismiss on that basis properly has his suit dismissed by the district court;[4] attaching the right-to-sue letter to a response to the employer's motion to dismiss is insuf-

---

[7]Hall v. New York State Dept. of Environmental Conservation, 726 F. Supp. 186 (N.D. N.Y. 1989).

[8]Hall v. New York State Dept. of Environmental Conservation, 726 F. Supp. 186 (N.D. N.Y. 1989).

[9]Perdue v. Roy Stone Transfer Corp., 690 F.2d 1091 (4th Cir. 1982); Bradford v. General Telephone Co. of Michigan, 618 F. Supp. 390 (E.D. Mich. 1985).

[10]Equal Employment Opportunity Commission v. Rinella and Rinella, 401 F. Supp. 175 (N.D. Ill. 1975).

[11]Movement for Opportunity and Equality v. General Motors Corp., 622 F.2d 1235 (7th Cir. 1980).

**[Section 1983]**
[1]Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258 (4th Cir. 1972); Pinkard v. Pullman-Standard, a Div. of Pullman, Inc., 678 F.2d 1211 (5th Cir. 1982); Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346 (9th Cir. 1984); Sheppard v. Texas Dept. of Transp., 158 F.R.D. 592, 7 A.D.D. 461 (E.D. Tex. 1994).

[2]People of State of N.Y. by Abrams v. Holiday Inns, Inc., 656 F. Supp. 675 (W.D. N.Y. 1984).

[3]People of State of N.Y. by Abrams v. Holiday Inns, Inc., 656 F. Supp. 675 (W.D. N.Y. 1984).

[4]Gibson v. Kroger Co., 506 F.2d 647 (7th Cir. 1974).

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 570-2007-00948 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jacqueline T. Robinson-Reeder** | **(301) 967-1570** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2140 Brooks Drive** | **Forestville, MD 20747** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **AMERICAN COUNCIL ON EDUCATION** | **101 - 200** | **(202) 939-9300** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1 Dupont Circle** | **Washington, DC 20036** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **08-16-2006** | **2-12-2007** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by American Council on Education in September of 2006. I worked as an Executive Assistant when I was constructively discharged on 11/07/06. I filed a Charge of discrimination with the EEOC (Charge Number 570-2006-00606) on 12/26/06. I am currently being subjected to retaliation for filing a Charge with the EEOC. The Respondent has been providing negative references about me to my potential employers. I believe I have been retaliated against for filing a Charge with the EEOC, in violation of Title VII of the Civil Rights Act of 1964, as amended.

WASHINGTON FIELD OFFICE
EEOC
2007 MAR -1  P 2: 33
1801 L ST. NW
WASHINGTON DC 20507

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *2/28/07*<br>Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jacqueline T. Robinson-Reeder<br>2140 Brooks Drive<br>#421<br>Forestville, MD 20747 | From: | Washington Field Office - 570<br>1801 L Street, N.W.<br>Suite 100<br>Washington, DC 20507 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2007-00606 | Janet Stump,<br>Enforcement Supervisor | (202) 419-0736 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Dana Hutter_    **FEB 1 2 2007**

Enclosures(s)

**Dana Hutter,**
**Director**    (Date Mailed)

cc:   **David Ward**
      **President**
      **AMERICAN COUNCIL ON EDUCATION**
      **One Dupont Circle, N.W.**
      **Washington, DC 20036**

*ATTACH 1*

(GW)

| For Internal Use Only | | Refer all employment verifications for loans, leases, mortgages and the like to: |
|---|---|---|
| 1102  M | MADC | **THE WORK NUMBER FOR EVERYONE**<br>To obtain salary call 1-800-367-2884 or go to www.theworknumber.com<br>Company Code = 10571; At prompt provide: SS#, and PIN#<br>Give verifier salary key and number to call: 1-800-367-5690<br>For additional assistance, please call customer service at 1-800-998-7566 |

JACQUELINE ROBINSON-REEDER
421
2140 BROOKS DRIVE
DISTRICT HEIGHTS MD 20747

SSN:    XXX-XX-8496

Check #:       0482232
Pay Date:      31 Aug 2007
Pay Period:    20 Aug 2007   to   26 Aug 2007

Net Pay:    $278.23

| Tax Data | Federal | State |
|---|---|---|
| Marital Status: | S | S |
| Allowances: | 2 | 2 |
| Addl. Amt: | 0.00 | 0.00 |

## EARNINGS/REIMBURSEMENTS

| CLIENT SITE | DESCRIPTION | TAXABLE | RATE | HOURS | CURRENT |
|---|---|---|---|---|---|
| GEORGE WASHINGT | REGULAR WA | Y | 12.00 | 28.00 | 336.00 |
| TOT CURR GROSS | | | | | 336.00 |

## TAX WITHHOLDINGS

| DESCRIPTION | CURRENT | YTD |
|---|---|---|
| FEDERAL | 15.96 | 1195.42 |
| FICA OASDI | 20.83 | 849.59 |
| FICA MED | 4.87 | 198.69 |
| MARYLAND | 16.11 | 817.21 |
| TOTAL WITHHOLDINGS | 57.77 | 3060.91 |

I will notify CORESTAFF that I am available for continued employment no later than the next business day after an assignment ends and at least once every week thereafter, to be kept on a current available list. Failure to do so may be considered a voluntary quit and may result in a loss of unemployment benefits.

## DEDUCTIONS

| DESCRIPTION | PRETAX | CURRENT | YTD |
|---|---|---|---|
| TOTAL DEDUCTIONS | | | |

| | TAXABLE GROSS BEFORE PTD | NON-TAXABLE GROSS | GROSS CHECK | FED W/H | FICA W/H | OTHER TAX W/H | DEDUCTIONS | NET CHECK |
|---|---|---|---|---|---|---|---|---|
| **CURRENT** | 336.00 | | 336.00 | 15.96 | 25.70 | 16.11 | | 278.23 |
| **YTD** | 13703.07 | | 13703.07 | 1195.42 | 1048.28 | 817.21 | | 10642.16 |

## NET PAY DISTRIBUTION

| 278.23 | Direct Deposit to | Acct#   XXXXX6908 | Trnst#  051000101 |
|---|---|---|---|

| | TOTAL: | ******$278.23 |
|---|---|---|

JACQUELINE ROBINSON-REEDER
421
2140 BROOKS DRIVE
DISTRICT HEIGHTS MD 20747

*ATTACH 1*

**American Council on Education**
# 1 Dupont Circle NW
Washington, DC 20036

| | |
|---|---|
| Pay Group: | SEM-Semi-Monthly Pay Group |
| Pay Begin Date: | 10/08/2006 |
| Pay End Date: | 10/22/2006 |

| | |
|---|---|
| Business Unit: | ACE |
| Advice #: | 0530442 |
| Advice Date: | 10/30/2006 |

Jacqueline T. Robinson-Reeder
2140 Brooks Drive
Apt. #421
Forestville, MD 20747

| | |
|---|---|
| Employee ID: | 5318 |
| Department: | 5660-Higher Education Development |
| Location: | Corporate Headquarters |
| Job Title: | Administrative Level II |
| Pay Rate: | $2,083.33 Semimonthly |

| TAX DATA: | Federal | MD State |
|---|---|---|
| Marital Status: | Single | n/a |
| Allowances: | 2 | 2 |
| Addl. Pct.: | | |
| Addl. Amt.: | | |

## HOURS AND EARNINGS

| Description | Rate | Current Hours | Current Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|
| Regular Pay | | | 1,891.02 | 252.00 | 7,211.52 |
| Vacation | 27.472527 | 7.00 | 192.31 | 7.00 | 192.31 |
| Sick | | 0.00 | 192.31 | 7.00 | 192.31 |
| Total: | | 7.00 | 2,083.33 | 266.00 | 7,596.14 |

## TAXES

| Description | Current | YTD |
|---|---|---|
| Fed Withholdng | 243.84 | 902.35 |
| Fed MED/EE | 27.77 | 105.27 |
| Fed OASDI/EE | 118.74 | 450.11 |
| MD Withholdng | 129.73 | 487.05 |
| Total: | 520.08 | 1,944.78 |

## BEFORE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| PO Medical | 135.50 | 271.00 |
| METLIFE DENTAL | 26.91 | 53.82 |
| Vision | 9.50 | 19.00 |
| Total: | 171.91 | 343.82 |

## AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Total: | 0.00 | 0.00 |

## EMPLOYER PAID BENEFITS

| Description | Current | YTD |
|---|---|---|
| EE Medical | 254.50 | 509.00 |
| METLIFE DENTAL | 20.61 | 41.22 |
| Life & AD/D | 7.69 | 15.38 |
| Life & AD/D* | 2.88 | 5.76 |
| Dependent Life | 0.56 | 1.12 |
| Dependent Life* | 0.88 | 1.76 |

* Taxable

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current: | 2,083.33 | 1,915.18 | 520.08 | 171.91 | 1,391.34 |
| YTD: | 7,596.14 | 7,259.84 | 1,944.78 | 343.82 | 5,307.54 |

### VACATION HOURS

| | YTD |
|---|---|
| Start Balance: | 0.0 |
| Earned: | 23.3 |
| Bought: | |
| Taken: | 7.0 |
| Sold: | |
| Adjustments: | 2.2 |
| End Balance: | 14.1 |

### SICK HOURS

| | YTD |
|---|---|
| Start Balance: | 0.0 |
| + Earned: | 17.5 |
| + Bought: | |
| - Taken: | 7.0 |
| - Sold: | |
| + Adjustments: | 1.7 |
| End Balance: | 8.8 |

### NET PAY DISTRIBUTION

| | |
|---|---|
| Advice #0530442 | 1,391.34 |
| Total: | 1,391.34 |

MESSAGE: Reminder: You are allowed to carryover no more than 30 days annual leave and 180 days sick leave!

Control Number
**D530442**

---

# AMERICAN COUNCIL ON EDUCATION
### One Dupont Circle, NW
### Washington, DC 20036-1193

Date
**10/30/2006**

Deposit Amount: **$1,391.34**

*ADVICE ONLY*

### DIRECT DEPOSIT DISTRIBUTION

| Account Type | Account Number | Deposit Amount |
|---|---|---|
| Checking | 1010113234121 | $1,391.34 |
| | Total: | $1,391.34 |

*THIS IS NOT A CHECK DIRECT*

The
count(s) Of

JACQUELINE T. ROBINSON-REEDER
2140 Brooks Drive
Apt. #421
Forestville, MD 20747

## NON-NEGOTIABLE

THE BACK OF THIS DOCUMENT IS PRINTED WITH A HEAT SENSITIVE INK

# Earnings Statement

**ADP**

NATIONAL LEAGUE OF CITIES SERVICES
1301 PENNSYLVANIA AVENUE N.W.
SUITE 550
WASHINGTON, DC 20004

CO.   FILE   DEPT.   CK NUMBER   052
UBP   010014  021275        0070241838   1

Period Ending:     01/06/2006
Pay Date:          01/13/2006

*ATTACH I*

Taxable Marital Status:  Single
Exemptions/Allowances:
  Federal:        2
  MD:             2 Prince George's Cnty

JACQUELINE ROBINSON
2140 BROOKS DR 421
FORESTVILLE MD 20747

Social Security Number: XXX-XX-8496

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 24.3083 | 45.00 | 1,093.87 | 1,093.87 |
| Holiday | 24.3083 | 15.00 | 364.62 | 364.62 |
| Sick | 24.3083 | 7.50 | 182.31 | 182.31 |
| Vacation | 24.3083 | 7.50 | 182.31 | 182.31 |
| **Gross Pay** | | | **$1,823.11** | 1,823.11 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| 401(K) Er | 182.31 | 182.31 |
| Ytd Lve Taken | | 7.50 |
| Ytd Sick Taken | | 7.50 |
| Leave Balance | | 38.12 |
| Sick Balalnce | | 13.76 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -226.50 | 226.50 |
| | Social Security Tax | -109.96 | 109.96 |
| | Medicare Tax | -25.72 | 25.72 |
| | MD State Income Tax | -120.20 | 120.20 |
| | **Other** | | |
| | Dental | -3.45* | 3.45 |
| | Medical | -39.92* | 39.92 |
| | Optional Life | -11.30 | 11.30 |
| | Vision | -6.23* | 6.23 |
| | **Net Pay** | | **$1,279.83** |

\* Excluded from federal taxable wages

Your federal taxable wages this period are
$1,773.51

©2001 Automatic Data Processing, Inc.

© 2000 ADP, Inc.

COPY    COPY

▼TEAR HERE



# TeleSec
## CORESTAFF

P.O.BOX 1664

Houston, TX 77251

For Internal Use Only

| 1102 | MADC |
|------|------|

Refer all employment verifications for loans, leases, mortgages and the like to:
**THE WORK NUMBER FOR EVERYONE**
To obtain salary key call 1-800-367-2884 or go to www.theworknumber.com
Company Code = 10571; At prompt provide: SS#, and PIN#
Give verifier salary key and number to call: 1-800-367-5690
For additional assistance, please call customer service at 1-800-996-7566

JACQUELINE ROBINSON-REEDER
421
2140 BROOKS DRIVE
DISTRICT HEIGHTS MD 20747

SSN:    -  -8496

| | |
|---|---|
| Check #: | 9005824 |
| Pay Date: | 08/09/2007 |
| Pay Period: | 07/30/2007  to  08/05/2007 |
| Net Pay: | $241.33 |

| Tax Data | Federal | State |
|----------|---------|-------|
| Marital Status: | S | S |
| Allowances: | 2 | 2 |
| Addl. Amt: | 0.00 | 0.00 |

## EARNINGS/REIMBURSEMENTS

| CLIENT SITE | DESCRIPTION | TAXABLE | RATE | HOURS | CURRENT |
|-------------|-------------|---------|------|-------|---------|
| WORLD BANK | REGULAR WA | Y | 17.86 | 16.00 | 285.76 |

TOTAL CURRENT GROSS: 285.76

I will notify CORESTAFF that I am available for continued employment no later than the next business day after an assignment ends and at least once every week thereafter, to be kept on a current available list. Failure to do so may be considered a voluntary quit and may result in a loss of unemployment benefits.

## TAX WITHHOLDINGS

| DESCRIPTION | | CURRENT | YTD |
|-------------|--|---------|-----|
| FEDERAL | | 10.40 | 1,179.46 |
| FICA OASDI | | 17.72 | 828.76 |
| FICA MED | | 4.14 | 193.82 |
| MARYLAND | | 12.17 | 801.10 |
| TOTAL WITHHOLDINGS: | | 44.43 | 3,003.14 |

## DEDUCTIONS

| DESCRIPTION | PRETAX | CURRENT | YTD |
|-------------|--------|---------|-----|
| | | | |

TOTAL DEDUCTIONS:

| | TAXABLE GROSS BEFORE PTD | NON-TAXABLE GROSS | GROSS CHECK | FED W/H | FICA W/H | OTHER TAX W/H | DEDUCTIONS | NET CHECK |
|---|-----|-----|-----|-----|-----|-----|-----|-----|
| CURRENT | 285.76 | | 285.76 | 10.40 | 21.86 | 12.17 | | 241.33 |
| YTD | 13,367.07 | | 13,367.07 | 1,179.46 | 1,022.58 | 801.10 | | 10,363.93 |

## NET PAY DISTRIBUTION

| | TOTAL: | ******$241.33 |
|--|--------|---------------|

*ATTACH B*

March 12, 2007

Mr. Robert Mulberger
President/CEO
NRI Employment Agency
Washington, D.C.

Dear Mr. Mulberger:

I believe that your agency has treated me unfairly due to my inability to work under unhealthy conditions at the American Council on Education in the Higher Education Office for Development. I was assigned a temporary position at HED through your employment agency in June of 2006. I was hired permanently in September 2006. You received your fee for my hire and unfortunately, my position withstood many complications after my hiring. I never received orientation, was left to install technical equipment alone and was forced to supervise the H.R. associate's immature relative. The working conditions at HED became intolerable daily while I struggled to maintain my job.

My work performance was excellent and my position in assisting the Executive Director was well received. However, when I complained about the insubordination of the office assistant that I supervised, I received no assistance from Human Resources or management. The outcome was an inappropriate probation with a threat of being fired approximately one day after the H.R. Associate screamed at me in the front office while employees witnessed her behavior. I found it necessary to resign from this position immediately to keep my untarnished reputation intact and to find employment with a healthier environment.

I contacted Crystal Hall the day I received the probation letter on November 6, 2006, to make sure that NRI had received their fees and after doing so, informed her that I found it necessary to resign from my job. I should be rewarded for my loyalty to NRI to ensure that your fees were received before resigning from my assignment.

Ms. Hall said she would assist me in finding another position, but played games of ignoring my calls, for a month until I had no choice but to register with another employment agency to find a job. I later determined that ACE was giving references that I was fired instead of my resignation. I am struggling to find employment while receiving no empathy for the pain I endured to keep my job.

I cannot believe that NRI would treat an employee in this manner. When I needed your agency most, you turned your back on me. I have had no choice but to file a complaint to report this behavior to the Equal Employment Agency Commission, The Federal Trade Commission, Bureau of Consumer Protection and the Better Business Bureau.

I have visited your webpage and witnessed many positions that I qualify for. NRI has advertised positions for Executive Assistants in the Washington Post every Sunday. Donna, the account manager told me to call Crystal Hall daily to beg for assignments, while she continues to ignore my calls.

The bottom line is that NRI has refused to assist me in finding another position for discriminatory reasons. I don't deserve to be treated like this when I represented NRI in a professional manner until my day of unemployment.

Sincerely,

Jacqueline T. Robinson-Reeder

*EXHIBIT B*

## Jacqueline Robinson-Reeder

**From:** "Mulberger, Robb" <mulberger@nri-staffing.com>
**To:** "Jacqueline Robinson-Reeder" <georgia28@comcast.net>
**Sent:** Monday, March 12, 2007 12:40 PM
**Subject:** [SPAM] RE: NRI Temporary Employee – Complaint

Ms Robinson-Reeder –

Thank you for your email and accompanying letter.

I will look into this matter immediately...and get back to you soon. I am traveling the latter part of the week... so it might not be until early next week until I am able to respond.

Again – thank you for drawing this to my attention.

Robb Mulberger

---

**From:** Jacqueline Robinson-Reeder [mailto:georgia28@comcast.net]
**Sent:** Monday, March 12, 2007 12:26 AM
**To:** Mulberger, Robb
**Subject:** NRI Temporary Employee – Complaint

March 12, 2007

Hello Mr. Mulberger,

I have attached a letter for your review. I hope you find time to read it.  Your input to your staff is important to teach them how to handle difficult situations for employees.

Thank you so much,
Jacqueline T. Robinson-Reeder



**NRI** NRI Accounting Resources
NRI Technology Solutions
NRI Staffing Resources
NRI Legal Resources
NRI HealthCare

| EMPLOYEE TIMESHEET |

*ATACH B*

Employee Name: *JACQueline Robin Reader* Company Name: *HIGHER Education for Development*

*I certify that I have worked the number of hours listed on this timesheet.*

Employee Signature: *Jaquele T. Robinfheader*

**Employee Instructions:**
- Round off your hours to the nearest quarter hour
- This timesheet must be signed by your supervisor in order to get paid
- Please be sure to fill out this timesheet completely, with your name, the company name and dates worked
- Turn in the timesheet to our office no later than the close of business Monday
- Timesheets must be returned within 3 weeks or no check will be issued

| Day | Date | Time In | Time Out | Less Lunch | Total Hours |
|-----|------|---------|----------|------------|-------------|
| Monday | 9/4 | | Holiday | | |
| Tuesday | 9/5 | 9:00 | 5:00 | 1 | 7 |
| Wednesday | 9/6 | 9:00 | 5:00 | 1 | 7 |
| Thursday | 9/7 | ACE Employee | | | |
| Friday | 9/8 | ACE employee | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| | | | | Total Hours | 14.0 |

| Fax Numbers | |
|-------------|---|
| ☐ Rockville | 202-349-8677 |
| ☐ Annandale | 202-349-8635 |
| ☐ Reston | 202-349-8655 |
| ☑ 15th Street | 202-349-8631 |
| ☐ L Street | 202-349-8616 |
| ☐ Linthicum | 410-850-5263 |

Distribution of Check:

Mail _____

Direct Deposit _____

Pick up at
Office indicated    ✓
above

**CLIENT AGREEMENT**

In consideration for the services provided to us by NRI, we (CLIENT) hereby agree as follows:

1. By approving this timesheet, CLIENT agrees that the NRI temporary employee (EMPLOYEE) worked the hours indicated and performed satisfactorily, and that we agree to pay NRI's invoice for these hours according to the previously determined hourly rate.

2. NRI has incurred substantial recruiting, screening and administrative expenses in connection with the temporary employees assigned to CLIENT. CLIENT agrees to not hire NRI's EMPLOYEE as an employee of CLIENT or transfer EMPLOYEE to become the employee of another staffing service without prior notification to NRI, and compliance with the terms and conditions below:

   A. If CLIENT desires to hire EMPLOYEE on a permanent basis, CLIENT agrees to adhere to the terms set forth in the "*NRI-Terms & Guarantee*" document provided. They must either work the specified number of hours as outlined in the document or, in the alternative, CLIENT may immediately hire EMPLOYEE by paying the NRI placement fee also detailed in NRI's "*Terms & Guarantee*" document. CLIENT acknowledges receipt of NRI's "*Terms & Guarantee*" document.

   B. CLIENT agrees that they will not hire any employee within 6 months of the completion of an assignment without notifying NRI and following the terms and conditions as outlined in "A" above.

3. CLIENT shall not modify the duties of EMPLOYEE from those that were originally provided to NRI without NRI's express authorization. CLIENT will not permit EMPLOYEE to operate vehicles, equipment other than standard office equipment, nor to handle cash, credit cards or other valuables without NRI's express authorization. CLIENT agrees to exercise reasonable oversight of the workplace to minimize the opportunity for any occurrence of theft, incurrence of unauthorized expenses or damage in the workplace.

*Jeanne-Marie Duval*
CLIENT NAME (Please Print)

*Jeanne-Marie Duval*
CLIENT SIGNATURE

Department *HED - Director of Programs*

P.O. # _____

*ATTACH B*

**Administrative Assistant**
Location: Northern Virginia
Salary: 45K-50K

Contact: Kristi Radzieta
Phone: 703-813-1511

One of the largest public accounting firms based in Washington D.C.
is looking for a highly motivated Administrative Assistant with a proven
background supporting multiple individuals in a professional services
firm for their Northern Virginia location. Essential duties include
support up to five managers, directors and/or partners in the firm,
handle telephone calls, respond to inquiries and distribute messages,
maintain Outlook calendars, coordinate appointments and organize
meetings. Additionally, you would be responsible for coordinating
travel arrangements as needed, track work in progress projects, staff
assignments for client engagements and assemble client financials.
The ideal candidate will have, at least 5 years of administrative
support experience, excellent communication skills (written and oral),
writing and proofreading skills, experience with Microsoft Word, Excel
and PowerPoint, ability to manage multiple tasks in a fast paced
environment, professional demeanor and ability to handle matters of a
confidential nature, experience working for a professional service
industry is a plus. This is a great opportunity to join one of the fastest
growing firms in Washington D.C. with an amazing benefits package,
contact Kristi Radzieta for immediate consideration at 703-813-1511
or via email at kradzieta@nri-staffing.com.

*Date Posted: 11/05/07*   **Apply Now!**

**Great Opportunities Available**
Location: DC Metro Area
Salary: Depends on experience

Contact: Andrea Daniels
Phone: (202) 628-3022;
fax (202) 628-2838

Is your resume getting the responses that you would like? Are you
looking to work with some of the best, most progressive companies
that Washington, DC has to offer? Are you looking for the opportunity
to explore your greatest potential? You're smart, professional and
business savvy so I know the answer is yes. NRI Staffing Resources
has several Temporary or Temporary-to-Hire opportunities that may
be the perfect fit for your next career move. Ideal candidates will
possess a strong Administrative background, an in depth knowledge
of Microsoft Word, Excel, PowerPoint and Outlook Calendar.
Candidates should also possess a typing speed of 45-50 words per
minute, be a team player, familiar with a professional environment and
enjoy taking on new tasks. If this sounds like you, send your resume
TODAY!!! to me at ldorsey@nri-staffing.com.

*Date Posted: 10/02/07*   **Apply Now!**

**Executive Assistant**
Location: Washington, DC
Salary: Depends on Experience

Contact: Andrea Daniels
Phone: (202) 628-3022;
fax (202) 349-8625

Looking for top level Executive Assistant to support Director. Your
skills will be utilize to the fullest. Will coordinate meetings, manage
projects and assist staff members. Must be a self-starter, with college
degree and two years experience in a professional environment. Hill
interships a plus. Must have excellent computer, communication and
organizational skills. Contact Andrea 202.628.3022, qualified
candidates will be contacted.

*Date Posted: 07/20/07*   **Apply Now!**

If you have AT LEAST 6+ years of HR experience, this may be the job for you! A large DC consulting firm is looking for an HR generalist to join their team. A qualified candidate will have experience with compliance and FDA regulations, taxes, and strong benefits. If this sounds like the position for you, email your resume to mbrinsfield@nri-staffing.com today!

*Date Posted: 01/10/08*  **Apply Now!**

**Short/Long Term Temps Needed**
Location: DC Metro Area
Salary: $11-$17 based on postition and experience

Contact: Melissa Brinsfield
Phone: 202-628-3022

Do you need a job? If you have AT LEAST 2 years of office experience and are proficient in MS Office Suite, NRI has exciting short and long term temporary assignments to help you earn some money!!! Administrative Assistants, Receptionists, Customer Service Representatives, and Executive Assistants are needed for positions in the heart of DC, MD and VA. Email your resume to mbrinsfield@nri-staffing.com today for consideration.

*Date Posted: 01/10/08*  **Apply Now!**

**Long Term Temp AA/Receptionist**
Location: DC
Salary: $12-15/hr. DOE

Contact: Melissa Brinsfield
Phone: 202-628-3022

If you are an independent, organized worker who loves a busy environment I need you! I have longterm AA/Receptionist temp positions with great locations in the DC area. Metro accessible. Duties include assisting the office manager in travel arrangements, maintaining schedule, answering phone, meeting and greeting clients, and drafting correspondence. You MUST have strong Word, Excel, PowerPoint, and Outlook. Office experience doing the above is required. $12-15/hr DOE. Email your resume to mbrinsfield@nri-staffing.com.

*Date Posted: 01/10/08*  **Apply Now!**

**Receptionist/Administrative Assistant**
Location: Bethesda, MD
Salary: Mid to high 30's

Contact: mbrinsfield@nri-staffing.com
Phone:

TOP NOTCH Real Estate Company with over 50 locations is seeking a TOP NOTCH Receptionist/Administrative Assistant to work in their prestigous Bethesda offices. The right person will be the spotlight while assisting a team of professionals with a variety of administrative duties. Must haves... 3-4 years of Administrative experience Advanced Powerpoint-Excel-Word-Outlook and able to type 60 wpm. This company offers free parking and great benefits and room to grow. ONLY QUALIFIED CANDIDATES WILL BE CONTACTED.

*Date Posted: 01/10/08*  **Apply Now!**

**Temporary Assistance Needed!**
Location: Northern Virginia
Salary: $12-$15

Contact: Lauren Miller
Phone: 703-658-1705

APPLY TODAY, WORK TOMORROW! NRI is currently seeking

ATTACH (C)

March 12, 2007

Ms. Ruth Graham
President/Co-Owner
Graham Staffing Service
Washington, DC

Dear Ms. Graham:

I have come to believe that your company may be using discriminatory practices during your interviewing and hiring process. During my interview with your representatives, I was asked about my willingness to travel to Tyson's Corner for assignments as well as positions paying a considerable lower hourly salary rate than I have received during my previous employment.

I understand that temporary positions may not pay the same hourly rate as a permanent position, but I stated what my salary requirements were which was far less than what I was making. I was paid $27. 56 hourly on my last job and was told that the most I could make an hour as a temporary employee with your employment agency was $12.00 per hour.  I also explained that the Tyson's corner area in Virginia would cause an unusually long congested commute from suburban Maryland. This statement was held against me and I was overlooked for future assignments.  I have never received a phone call for an assignment from Graham staffing agency due to your discriminatory practices.

My experience and test scores should have my salary higher than $12.00 per hour. During my interview which seemed to be with a high school student the representative seemed annoyed and refused to pass on the company's timesheets, brochures and other information that was given to potential employees after I explained what I was looking for. The professional attitude at Graham Staffing was absent and the representative seemed immature, over talked and interrupted me several times while expressing an argumentative style of communication skills.

Last year, I emailed my resume to Graham staffing agency while answering a Washington Post advertisement.  Your representative contacted me and arranged an interview.  I took all of the required tests, Microsoft Word, Excel and typing tests.  My tests score was recommendable for a job assignment.  However, I have never received a referral for a job assignment from your agency.  I supplied excellent job references as well.  I believe that my skin color played a major reason in your lack of finding employment for me.

Therefore, I have no choice but to believe that you are searching for white employees to fill positions among the many black people that visit your office.  My intention is to put a stop to this unfair employment practice and assist people who may not have the experience that I have in looking for employment.

I have no choice but to file a complaint with the Federal Trade Commission, Bureau of Consumer Protection, the Better Business Bureau and the Equal Employment Commission Agency.  I believe that your discriminatory practice needs to be addressed in a timely manner because you are taking advantage of people who are looking for employment.

Graham Staffing runs advertisement ads in the Washington Post on Sunday's and these jobs do not exist. Your employment agency has based your testing and interviewing process on unfairness and prejudice. Your staff has chosen to show no respect for people who look at Graham Staffing employment agency for job referrals and financial security.

Sincerely,

Jacqueline T. Robinson-Reeder

*www.grahaminc.com* (handwritten)

# GRAHAM

*ATTACH*
*(C)* (handwritten)

*Staffing Service*

**Navigation menu:**
- HOME
- About Us
- Affiliates
- Client Services
- Job Opportunities
- Resume
- E-Mail

Copyright ©2003
Graham Staffing Services.
Web Site by GTI.

## Administrative Assistant * Fantastic Firm * Beautiful Offices *
## (to $51K - DOE)

| | |
|---|---|
| **DESCRIPTION:** | Graham Staffing is working with a Washington, DC Law Firm with its recruitment of an Administrative Assistant. This position will assist with arranging secretarial coverage and work flow shifts, attendance maintenance and review, assisting with performance evaluations, timesheets, phones and other administrative projects as needed. |
| **SKILLS:** | To qualify, you must have a minimum of three years of office experience, type 55 wpm and have proficiency with Word and Excel. The successful professional will have the abilities to: manage multiple projects; handle unexpected/challenging demands with creative problem solving; and work independently. Outstanding written, oral and interpersonal skills are also needed. |
| **LOCATION:** | Washington, DC |
| **SALARY:** | to $51K - DOE |
| **BENEFITS:** | Our client offers fantastic benefits that begin on the first day of employment. |
| **HOURS:** | 9:00 - 5:30 |
| **ADDITIONAL INFO:** | Please email your resume to: staffing@grahaminc.com or fax to: 202-223-5805. |
| | **For information on this or any other position, please contact one of Graham Staffing Services, Inc.'s permanent counselors: Dianne Childers, Mary Ann Jones & Denise Browne.** |



## GRAHAM

*Staffing Service*

- HOME
- About Us
- Affiliates
- Client Services
- Job Opportunities
- Resume
- E-Mail

Copyright ©2003
Graham Staffing Services.
Web Site by GTI.

### Secretary to General Council * Great Benefits * (to $54K - DOE)

**DESCRIPTION:** Graham Staffing is working with an Arlington, VA Alliance with its recruitment of a Secretary to the General Council. This multi-tasking position will not only have administrative responsibilities but will assist with surveys and other service requests. The hours for this position are extremely flexible: 8:00 – 4:00, 9:00 – 5:00, etc.

**SKILLS:** To qualify, you must have a minimum of five years of administrative experience supporting at the senior level, type 55 wpm and have proficiency with Work and PowerPoint. Excel and/or Adobe are pluses. The successful professional will: have the ability to take charge; be and independent work; have excellent written, oral and interpersonal skills. A Degree is a plus.

**LOCATION:** Arlington, VA

**SALARY:** to $54K - DOE

**BENEFITS:** Our client offers an excellent benefits package.

**HOURS:** Flexible

**ADDITIONAL INFO:** Please email your resume to: staffing@grahaminc.com or fax to: 202-223-5805.

**For information on this or any other position, please contact one of Graham Staffing Services, Inc.'s permanent counselors: Dianne Childers, Mary Ann Jones & Denise Browne.**



*Staffing Service*

HOME

About Us

Affiliates

Client Services

Job Opportunities

Resume

E-Mail

Copyright ©2003
Graham Staffing Services.

Web Site by GTI.

### Executive Assistant * Litigation *
### (to $70K+ - DOE)

**DESCRIPTION:** Graham Staffing is working with a Washington, DC Law Firm with its recruitment of an Executive Assistant to support a senior-level Partner in the area of litigation.

**SKILLS:** To qualify, you must have several years of experience supporting at the senior level, type 65 wpm and have proficiency with Word. The successful, confident professional will be a go-getter, proactive and always will be one step ahead.

**LOCATION:** Washington, DC

**SALARY:** to $70K+ - DOE

**BENEFITS:** Our client has an excellent benefits package, including back-up child care, tuition reimbursement, dependent care and health care flexible spending accounts and much more.

**HOURS:** 9:00 - 5:30

**ADDITIONAL INFO:** Please email your resume to: staffing@grahaminc.com or fax to: 202-223-5805.

**For information on this or any other position, please contact one of Graham Staffing Services, Inc.'s permanent counselors: Dianne Childers, Mary Ann Jones & Denise Browne.**

*EXHIBIT (E) G (W)*
*Proof of Professional*
*Character*

October 12, 2007

TO WHOM IT MAY CONCERN:

I am writing this letter on behalf of Mrs. Jackie Robinson-Reeder. Jackie, as we all called her, worked with me for two months this summer at The George Washington University Graduate School of Education and Human Development, as my Special Assistant when my secretary decided to return to her home state of Connecticut. As the Dean of the School, I needed someone who could quickly adapt to the role of Special Assistant which is a very demanding, high-profile position. Jackie did just that. Although she had no prior affiliation with the University, Jackie quickly adapted to the position fulfilling her responsibilities in a very professional, effective and efficient manner. She quickly learned the organizational structure of the Dean's Office, was always well organized, and worked exceptionally well with the staff in the School and other branches of the University. A number of her responsibilities involved personnel matters, which she fulfilled in a highly professional, confidential manner. Prior to her departure, I was impressed with how Jackie worked with my new assistant to make sure she was well prepared for the transition. Equally impressive was the number of faculty and staff who stopped by to thank her the last few days she worked with us.

My assessment of Jackie is that she is personable, but professional manner she demonstrated in fulfilling her roles and responsibilities as my assistant is the way she would fulfill any position that she assumes. As a result, I am more than pleased to write this letter of support and to serve as a reference for her. Please do not hesitate to contact me at ▉▉▉▉▉▉▉ you have any questions or need further comments.

Respectfully,

▉▉▉▉▉▉▉▉▉▉▉
Graduate School of Education
        And Human Development
The George Washington University

home  help

**VACANCIES**

ATTACH
(GW)

## Resume Submission Successful

Thank you for your interest in employment opportunities at GW. Your resume has been successfully transmitted simultaneously to the Staffing and Compensation Services (SCS) Division of the Department of Human Resource Services and the applicable hiring department (s). If you are chosen for an interview based upon your qualifications, those required of the position, job-related criteria and departmental needs, you will be contacted directly by the hiring department.

The George Washington University is an Equal Opportunity/Affirmative Action Employer

The George Washington University
Department of Human Resource Services
Staffing and Compensation Division
2033 K Street, NW, Suite 220
Washington, DC 20052
Phone (202) 994-9600
Fax (202) 994-9609
Email: gwujobs@gwu.edu

Return to Staff Employment Opportunities

Return to GW HRS Website

---

© 2007, The George Washington University
2121 Eye St, NW; Washington, DC 20052 Phone: (202) 994-GWGW (4949)
Site Maintained by IMAG | Text-Only

Unemployment
202-724-7273
& 98 8/82

home   help

**VACANCIES**

### Uv Human Resources Coordinator FT

**YOUR JOBS**

Your list is empty

The Classification Summaries are presently available as Adobe Acrobat PDF files which require that you have Adobe Acrobat Reader installed on your computer. If you do not have Adobe Acrobat Reader, you can download it from the Adobe Website by clicking the graphic shown.

Classification Summary: Download PDF file
Department:                ADVANCEMENT OPERATIONS
Job Location:
Position Type:             Professionals - Office Staff Professionals
Salary Range Minimum: $40006.08
Grade:                     17
REQ No.                    R000016740
Date Posted                10/12/07
Status                     Open
UV = University; MC = Medical Center; FT = Full-time; PT = Part-time

Apply Now!    Return to Search    Add to list
Email to a friend

Return to GW HRS Website

_(handwritten notes)_
(GW)
School of Advancement
2100 M St. N.W.
Applied Oct 22
CD Fields
GWU.JOBS
@
Gwu.edu

Debbie Pollack
994-9634

© 2007, The George Washington University
2121 Eye St, NW; Washington, DC 20052 Phone: (202) 994-GWGW (4949)
Site Maintained by IMAG | Text-Only

home    help

**VACANCIES**

## MC Executive Coordinator FT

**YOUR JOBS**

Your list is empty

The Classification Summaries are presently available as Adobe Acrobat PDF files which require that you have Adobe Acrobat Reader installed on your computer. If you do not have Adobe Acrobat Reader, you can download it from the Adobe Website by clicking the graphic shown.

Classification Summary: Download PDF file
Department:              MICROBIOLOGY IMMUNOLOGY TROPIC MED
Job Location:
Position Type:           Professionals - Office Staff Professionals
Salary Range Minimum:    $33616.80
Grade:                   14
REQ No.                  R000016719
Date Posted              10/5/07
Status                   Open

UV = University; MC = Medical Center; FT = Full-time; PT = Part-time

| Apply Now! | Return to Search | Add to list |

| Email to a friend |

Return to GW HRS Website

---

© 2007, The George Washington University
2121 Eye St, NW; Washington, DC 20052 Phone: (202) 994-GWGW (4949)
Site Maintained by IMAG | Text-Only


ATTACH
(FA)

### Score Report

### Thank you for taking this test.

### For interpretation of your test score, please contact your Test Administrator.

| | |
|---:|:---|
| **Test Results for:** | Jacqueline Robinson-Reeder |
| **Email:** | georgia28@comcast.net |
| **Company Name:** | The Ford Agency |
| **Test Administrator/Recruiter's Name:** | Trisha |
| **Test Administrator/Recruiter's Email:** | mjansons@ford-agency.com |
| **Test Name:** | Microsoft Word 2000 - Normal User |
| **Test Date:** | 1/9/2007 |
| **Elapsed Time:** | 00:10:16 |
| **Questions Correct:** | 27 out of 30 |
| **Percent Correct:** | 90% |
| **Percentile Ranking:** | 70 |
| **Global Average:** | 74% |

### Test Description

Microsoft Word is one of the most popular word processing applications. It is included in the Microsoft Office Suite, which also includes Excel and PowerPoint.

The Microsoft Word 2000 Normal User test is designed to test entry-level users of Word who edit, develop and create Word Documents. The test assesses the user's ability to create and develop a basic word processing document and a mail merge. This test includes basic, intermediate and advanced level questions and tests mastery of the most commonly used commands.

Tests for Microsoft Excel 2000, Microsoft PowerPoint 2000 and Microsoft Access 2000 are also available.

- Test takers, please contact your test administrator or recruiter for scoring guidelines.

- Administrators, please refer to the Scoring Guidelines page within the Resources section of your Administration Center for scoring guidelines.

### Please click here to close this window.

ATTACH
F1



about us    job openings    clients    testimonials    contact us

## FOR APPLICANTS

Our goal is to provide candidates with opportunities and friendly service.  We will assist you with direct hire as well as temporary and temporary-to-hire positions at  the top corporations, non-profits, and law firms in the DC Area.

Our team is dedicated to providing you with personal attention and guidance. We listen to your needs and are committed to sending you only on interviews for positions that meet your needs.  Our recruiters will work with you on your resume, interviewing skills, and handle salary negotiations with the client.

We rely heavily on referrals, so we offer a competitive referral incentive program for all of our applicants.

As a temporary employee, our recruiting team will provide you with a diversity of opportunities as well as competitive salaries and continuous feedback on your performance.

### Positions We Regularly Staff Include:

- Legal Secretaries
- Executive/Administrative Assistants
- Receptionists
- Accounting/Billing Specialists
- Paralegals/Legal Assistants
- Office Managers/Coordinators/Clerks
- Staff Assistants/Project Assistants
- Data Entry Clerks
- Human Resources Assistants/Professionals
- Technical Support Specialists

If you are interested in our services, please email your resume to us:

Direct Hire/Permanent Division
jobs@ford-agency.com

Temporary/Temporary to Hire Division
tempjobs@ford-agency.com

home

*ATTACH P*



**Open an Account**    **Find Citi Locations**    **Search**    **Help**    **Contact Us**

Welcome **georgia28@comcas...**
You have 0 messages

**My Home**    Account Info    Payments    Transfers    Investments    Service C

# My Home
Last visit: 01/13/2008 05:55 PM EST

**Did you know**...A federal rule—Regulation D—limits the number of certain types of transactions that can be made from a savings or money market account to six each statement period. Learn more.

customize thi

## account summary ?

Edi

| | On Deposit | Available Now |
|---|---|---|
| **Checking** | | |
| Interest Checking XXXXXXX999 | $ 19.11 | $ 19.11 |
| | | |
| **Savings** | On Deposit | Available Now |
| Ultimate Money Account XXXXXXX027 | $ 10.23 | $ 10.23 |

**ThankYou**    View or redeem your ThankYou® Points at thankyou.com.

statements | banking alerts | download activity | link an account

**payment & transfer center**

**future payments**

**None**

**future transfers**

**None**

payments:
express | one-time | recurring | change or cancel

transfers to linked accounts:
one-time | recurring | change or cancel

**market watch**

Edi



| | | As of 01/18/2008 - 13:16 ET | |
|---|---|---|---|
| Dow Jones 30 Industrials | 12,090.44 | -68.77 |
| NASDAQ Composite | 2,344.61 | -2.29 |
| S&P 500 | 1,321.64 | -11.61 |

As of 1:16 PM ET, 1/18/2008

**Quote Finder**