## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JACQUELINE T. ROBINSON-REEDER,**

    **Plaintiff,**

       **v.**                     **Civil Action No.  07-0880 (JDB)**

**AM. COUNCIL ON EDUC.,**

    **Defendant.**

## <u>MEMORANDUM OPINION</u>

Plaintiff Jacqueline T. Robinson-Reeder, proceeding <u>pro se</u>, brings this action against her former employer the American Council on Education ("ACE") asserting racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and a common law defamation claim.  Currently before the Court is ACE's motion for judgment on the pleadings.  Upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, the Court will grant ACE's motion.

## BACKGROUND

### I.    Factual History

Plaintiff, an African-American female, first began working for ACE on a temporary basis in June 2006 as an Executive Assistant.  <u>See</u> Dec. 15, 2006 Charge of Discrimination ("EEOC Charge").  Three months later, in September 2006, plaintiff was hired to fill the position on a permanent basis.  <u>See id.</u>  All of the events at issue in plaintiff's Complaint occurred after she was employed in a permanent capacity.  In September and October 2006, plaintiff requested a new software program for her computer, and she had difficulty in obtaining technical assistance for

the installation.  Compl. ¶ 2.[1]  According to plaintiff, this was nothing new because "ACE had neglected to provide technical assistance in the past to (2) two Caucasian employees who had similar technical problems."  Id.  Plaintiff contends that these two Caucasian employees were subsequently transferred and promoted after they voiced their complaints about the technical assistance process.  Plaintiff, on the other hand, indicates that she never complained about the technical assistance or lack thereof.  Id.

Although plaintiff never complained about her problems with the technical assistance department, she made several complaints regarding an office assistant who was hired on October 16, 2006.  Id. ¶ 3.  Plaintiff contends that the office assistant was hired due to "favoritism" because she was related to or was friends with an associate in Human Resources.  Id. ¶ 5.  When the new office assistant started at ACE, she reported to plaintiff and shared a similar working area in the front office of the organization.  Plaintiff contends that the office assistant was insubordinate, "refused to complete assignments and disrespected the plaintiff" from October 17, 2006, through November 6, 2006.  According to plaintiff, the situation with the office assistant was "intolerable."  Id. ¶ 3.  On November 2, 2006, plaintiff met with the Executive Director to discuss her complaints about the new office assistant.  Id. ¶ 4.

Four days later, on November 6, 2006, plaintiff received a letter from the Executive Director, which acknowledged plaintiff's concerns about the office assistant and indicated the office assistant's performance would be addressed.  Id.; see also Probation Notice at 1.  The letter also informed plaintiff that she herself was being placed on probation for thirty days because the

--------

[1]For ease of reference, the Court will adopt the parties' convention and will cite the unnumbered paragraphs of the Complaint as if they were sequentially numbered.

Executive Director had received complaints about her "rude" behavior from four different departments. See Probation Notice at 1. According to the notice, the Executive Director planned to discuss these issues with plaintiff before the notice was issued, but plaintiff "did not come to work." Id. The letter stated: "My expectation is that you will change your behavior immediately. . . . If at any point during the 30 days, I receive a complaint that I confirm, I will have no choice but to terminate your employment." Id. Ending on a positive note, the Executive Director wrote: "Jackie, I think you have tremendous potential as an employee of ACE and HED. Please let me know if I can do anything to assist you as you address these concerns." Id. at 2.

Plaintiff was understandably upset upon receipt of the probation notice and claims that the allegations of her "rude" behavior are false. Compl. ¶ 2. Based upon the probation notice, the strained relationship with the new office assistant, and the problems receiving technical support, plaintiff claims to have "suffered mental anguish" in an "unhealthy workplace environment." Id. ¶ 6. Plaintiff, therefore, immediately submitted a notice of resignation on the very same day that she received the probation notice. See Letter of Resignation.[2]

After plaintiff resigned from ACE, she attempted to secure a permanent position elsewhere at a salary to which she was accustomed. Plaintiff alleges that she has been unable to secure such employment because ACE has given negative references to some potential employers and has refused to provide any references to other potential employers. Compl. ¶¶ 7-9.

---

[2]The first page of the probation notice is dated November 6th. See Probation Notice at 1. Plaintiff's signature on the probation notice is dated November 7, 2006, as is plaintiff's letter of resignation. See id. at 2; see also Letter of Resignation. In plaintiff's opposition, she now contends that she typed the wrong date on her letter of resignation and that it should be dated November 6, 2006. See Pl.'s Opp. at 4. Regardless of whether the relevant date is November 6th or November 7th, it is undisputed that plaintiff's letter of resignation was submitted on the same day that she received the probation notice.

**II.    Procedural History**

On December 15, 2006 -- less than six weeks after she received the probation notice -- plaintiff filed her first Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  See EEOC Charge.  On the form, plaintiff checked the box which indicated she had been discriminated against on account of her race.  In describing the particulars of her charge, plaintiff stated that she had been "unjustly placed on probation for 30 days based upon complaints that [she] had been rude to individuals" and that she had subsequently resigned "due to this intolerable treatment."  Id.  On February 12, 2007, the EEOC issued plaintiff a "right to sue" notice regarding this charge.  See Dismissal and Notice of Rights.

Plaintiff filed a second Charge of Discrimination with the EEOC on March 1, 2007.  See Mar. 1, 2007 Charge of Discrimination ("Second EEOC Charge").  In this charge, plaintiff selected the retaliation box and alleged that ACE was providing negative references to potential employers in retaliation for her EEOC activity.  Id.  Plaintiff has neither argued nor demonstrated that she received a "right to sue" letter regarding her second charge.

Based upon a liberal reading of plaintiff's filings, it appears that she is now raising five claims before this Court: (I) a disparate treatment claim regarding her request for technical assistance; (II) a disparate treatment claim regarding the probation notice; (III) a retaliation claim related to her complaints about the office assistant; (IV) a retaliation claim related to her EEOC activity; and (V) a defamation claim regarding the negative references that ACE has allegedly provided to potential employers.[3]  ACE has moved for judgment on the pleadings arguing that

---

[3]Although plaintiff has not identified her claims distinctly in this fashion, for ease of reference, the Court will refer to plaintiff's claims numerically as listed above.

plaintiff has failed to exhaust her administrative remedies, that neither the probation notice nor plaintiff's resignation constitutes an adverse action, and that plaintiff has failed to allege that she engaged in a statutorily protected activity to support a retaliation claim.  ACE therefore argues that the Court should dismiss all of plaintiff's Title VII claims and should subsequently decline to exercise supplement jurisdiction over plaintiff's common law defamation claim.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is entitled to judgment as a matter of law."  Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation omitted).  The appropriate standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Dale v. Exec. Office of the President, 164 F. Supp. 2d 22, 24 (D.D.C. 2001).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286

-5-

(1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).  Hence,

although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

of those facts is impossible, and 'that a recovery is very remote and unlikely,'" id. (quoting

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P.

8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to

relief,'" id. at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

### I.    Failure to Exhaust Administrative Remedies

The statutory scheme of Title VII requires a plaintiff to exhaust his or her administrative

remedies before a civil action may be filed in federal court.  To do so, an aggrieved party must

file a charge with the EEOC alleging that the employer has engaged in an unlawful employment

practice.  To be timely, "[s]uch a charge must be filed within a specified period (either 180 or

300 days, depending on the State) 'after the alleged unlawful employment practice occurred."

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2166 (2007) (quoting 42 U.S.C.

§ 2000e-5(e)(1)).  The claimant must then proceed through the administrative process.  "The

employee may commence a civil action against her employer if, and only if, the EEOC has

dismissed the administrative complaint or has itself failed to begin a civil action within 180 days

of the original EEOC filing."  Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) (citing 42

U.S.C. § 2000e-5(f)(1)).  A claimant may only challenge in federal district court those allegations

that were contained in the EEO complaint or those that are "like or reasonably related to the

allegations of the charge." <u>Park v. Howard Univ.</u>, 71 F.3d 904, 907 (D.C. Cir. 1995).

### A.    Claim I:  Discrimination in Relation to Technical Assistance

Because plaintiff's EEOC Charge makes no reference to inadequate technical assistance, ACE argues that plaintiff's first claim should be dismissed for failure to exhaust administrative remedies, and the Court agrees.  The EEOC Charge is altogether silent regarding plaintiff's allegation of disparate treatment regarding her requests for help with the installation of the computer software.  Exhaustion is required to encourage voluntary conciliation and cooperation "and to ensure that the federal courts are burdened only when reasonably necessary." <u>Brown v. Marsh</u>, 777 F.2d 8, 14 (D.C. Cir. 1985).  Because plaintiff failed to raise this claim in a timely administrative charge, neither the EEOC nor ACE had notice of this claim to investigate its potential merit. <u>See</u> <u>Rattigan v. Gonzales</u>, 503 F. Supp. 2d 56, 69 (D.D.C. 2007) (dismissing plaintiff's discrimination claim where the discriminatory act was not mentioned in the EEOC complaints, was not reasonably related to the allegations in the complaints, and was not "within the scope of the administrative investigation that can reasonably be expected to follow plaintiff's EEO complaints") (citation omitted).  Accordingly, plaintiff's claim of disparate treatment regarding technical assistance will be dismissed.

### B.    Claim III:  Retaliation Based Upon Plaintiff's Complaints About the Office Assistant

Plaintiff now argues that the probation notice "is a direct form of 'retaliation' against the complaints regarding the office assistant, who is related or friends to the Human Resources associate." Compl. ¶ 5.  Defendant points out that the retaliation box was not checked on plaintiff's EEOC Charge and that the charge contains no reference to any statutorily protected

activity.  Because a plaintiff must exhaust all administrative remedies for each "discrete" incident

of discrimination or retaliation under Title VII, defendant argues that plaintiff has failed to

exhaust her administrative remedies for this claim.  See National R.R. Passenger Corp. v.

Morgan, 536 U.S. 101, 113 (2002).

 While the boxes aid a claimant in identifying the nature of her charge, a claimant is not

necessarily limited to the boxes she selected if she provides the basis for her claim in her written

explanation.  See Maryland v. Sodexho, Inc., 474 F. Supp. 2d 160, 162 (D.D.C. 2007)

(explaining that while the EEOC charge form makes it easy to identify the nature of the charge

"with its boxes that an employee can merely check," an employee "need only describe it in the

text of the charge form" if he is unsure which box applies).  Unfortunately for plaintiff, the

factual allegations in her EEOC Charge fail to provide the slightest hint that plaintiff may have

viewed the probation notice as a retaliatory act.  See Rattigan, 503 F. Supp. 2d at 69 (dismissing

plaintiff's retaliation claim for failure to exhaust administrative remedies where the retaliation

claim was not mentioned in the EEOC complaint).

 In fact, plaintiff's written explanation reinforced the fact that this was solely a disparate

impact charge when she stated that she "was discriminated against based upon [her] race."  See

EEOC Charge.  She makes no reference to her problems with the new office assistant, and she

makes no reference to any concerns she presented to the Executive Director about the new office

assistant.  Her EEOC Charge simply states that she was discriminated against when a probation

notice was issued based upon her allegedly rude behavior.  A fair characterization of plaintiff's

EEOC Charge does not incorporate a charge of retaliation.  Thus, plaintiff failed to exhaust her

administrative remedies for Claim III.[4]

Furthermore, that claim is subject to dismissal on another ground: plaintiff has not alleged a sufficient protected activity to provide the foundation for a retaliation claim.  "Title VII plaintiffs need not plead each element of this prima facie case to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), but must allege facts that, if true, would establish the elements of each claim."  Rattigan, 503 F. Supp. 2d at 71-72 (citing Major v. Plumbers Local Union No. 5., 370 F. Supp. 2d 118, 128-29 (D.D.C.2005)).  Thus, the Court may "explore the plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet his initial burden to establish a prima facie case for Title VII discrimination."  Id. at 72 (citation omitted).

"To establish a prima facie case of retaliation, a claimant must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two."  Wiley v. Glassman, 2007 WL 4354431, at *2 (D.C. Cir. Dec. 14, 2007).  Title VII's anti-retaliation provision provides the basis for what constitutes a protected activity.  The first prong, commonly referred to as the opposition clause, provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3.  The second prong -- the participation clause -- provides that "[i]t shall be an unlawful employment practice for an

---

[4]To the extent that plaintiff is now arguing that the probation notice was also given in retaliation for her complaints about technical assistance, the Court notes that this contradicts plaintiff's Complaint, which indicated she never voiced any complaints about the technical assistance process.  Regardless, plaintiff has failed to exhaust this retaliation argument just as she has failed to exhaust the retaliation argument related to her complaints about the office assistant.

employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id.

Because plaintiff does not allege that her complaints about the office assistant were provided in relation to an investigation, proceeding, or hearing under Title VII, plaintiff's complaints may only be considered under the opposition clause. According to plaintiff, she complained to Human Resources and the Executive Director about her insubordinate office assistant who "refused to complete assignments." Plaintiff claims that because the office assistant was related to or was friends with someone in Human Resources, her complaints fell on deaf ears. However, regarding the substance of those complaints, plaintiff does not allege that the office assistant acted in a discriminatory manner. Nor does she allege that she voiced any concerns about any discriminatory actions. At most, plaintiff seems to be complaining about the effects of nepotism within ACE, which does not qualify as a protected activity. Thus, plaintiff's third claim is subject to dismissal for failure to state a valid retaliation claim because she has not asserted a protected activity under the opposition prong of the retaliation analysis. See King v. Jackson, 468 F. Supp. 2d 33, 38 (D.D.C. 2006) (dismissing plaintiff's retaliation claims where the plaintiff did "not allege that his opposition was directed at any act of employment discrimination allegedly taken by the defendant"), aff'd, 487 F.3d 970 (D.C. Cir. 2007); Logan v. Dep't of Veteran Affairs, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (determining that plaintiff's letter regarding management practices and plaintiff's grievance regarding medical care did not constitute protected activity under Title VII "because they do not include a claim of discrimination based upon race, color, religion, sex or national origin").

-10-

### C.    Claim IV: Retaliation Based Upon Plaintiff's EEOC Activity

Defendant argues that plaintiff's fourth claim "appears nowhere in the Complaint and is not properly before the Court" because plaintiff asserted it for the first time in her opposition to the motion for judgment on the pleadings. Def.'s Reply at 11. In any event, defendant argues that plaintiff has failed properly to exhaust her administrative remedies for this claim as well.

Although plaintiff first articulated her fourth claim far too late, the Court is reluctant to dismiss plaintiff's claim on this ground alone. In Wiley, the D.C. Circuit ruled that the district court erred in striking a plaintiff's retaliatory harassment claim on the basis that it was raised for the first time in opposition to a motion for summary judgment. 2007 WL 4354431, at *6. The D.C. Circuit determined that the factual basis for the claim was present in the plaintiff's complaint and that the defendant had not demonstrated that any undue prejudice would arise from permitting the claim to go forward. Id. In reaching the conclusion that plaintiff's claim was improperly struck, the court in Wiley determined that "[t]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage." Id.

The logic behind Wiley is supplemented by plaintiff's pro se status, which further supports a determination that plaintiff should not be penalized for failing properly to state this retaliation claim in her Complaint. Here, however, unlike in Wiley, the Complaint did not provide the factual basis for the claim and was insufficient to put defendant on notice of this allegation. The Court notes, however, that defendant has not raised any undue prejudice argument -- and indeed it would be difficult to do so at this stage of the proceedings.

But regardless of plaintiff's pleading deficiencies, her fourth claim is subject to dismissal for failure to exhaust her administrative remedies. Plaintiff attached the Second EEOC Charge to her opposition. In its reply, defendant noted surprise at this attachment and indicated that ACE had "not received notice of this later Charge." Def.'s Reply at 10. Although the March 1, 2007 document aids plaintiff's claim that she filed a timely charge with the EEOC, she presents no evidence of any subsequent proceedings. A plaintiff must do more than just file a charge before she may proceed with a civil action in federal court. "Exhaustion has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency." Jorge, 404 F.3d at 564.

By statute, the EEOC has 180 days to act on the charge. See 42 U.S.C. § 2000e-5(f)(1). If the EEOC dismisses the charge or chooses not to file a civil action on behalf of the aggrieved party, the EEOC must notify the individual, and the individual may then file a civil action within ninety days of receiving such a notice. Id. Plaintiff presents no such notice from the EEOC here and in fact filed this action before 180 days had passed. Because it thus appears that plaintiff has failed to exhaust her administrative remedies, the Court will dismiss plaintiff's fourth claim. See Jordan v. Evans, 355 F. Supp. 2d 72, 84 (D.D.C. 2004) (dismissing plaintiff's Title VII claims where there was "no indication that she has received a 'right to sue' letter from DOC or the EEOC and her complaint in this case was filed before the 180-day period had expired").

## II.    Plaintiff's Properly Exhausted Discrimination Claim

Acknowledging that plaintiff has properly exhausted her administrative remedies for her second discrimination claim, defendant argues that it must nonetheless be dismissed because her probation notice does not constitute an actionable adverse action. "To establish a prima facie

case of discrimination, a claimant must show that '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" Wiley, 2007 WL 4354431, at *2 (quoting Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  If, based on the allegations in the complaint and drawing all inferences consistent with those allegations in plaintiff's favor, it appears beyond doubt that plaintiff would be unable to satisfy one or more of these prima facie elements, then the Court must grant defendant's motion for judgment on the pleadings.  See Rattigan, 503 F. Supp. 2d at 72.

"[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Wiley, 2007 WL 4354431, at *8 (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Plaintiff was obviously greatly upset by the probation notice, but "not everything that makes an employee unhappy is an actionable adverse action."  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).

Regarding disciplinary actions, like plaintiff's probation notice, "only disciplinary actions that result in a tangible harm, such as a change in grade, salary, or other benefits, rise to the level of adverse employment actions."  Everson v. Medlantic Healthcare Group, 414 F. Supp. 2d 77, 83 (D.D.C. 2006) (citing Broderick v. Donaldson, 437 F.3d 1226, 1233 n.2 (D.C. Cir. 2006) (disciplinary memo sent to plaintiff's file did not qualify as an adverse action because it did not affect plaintiff's grade, salary, duties, or responsibilities), and Stewart v. Evans, 275 F.3d 1126, 1136 (D.C. Cir. 2002)).

Here, plaintiff has not alleged that the probation notice changed the terms, conditions, or privileges of her employment -- nor could she make such an allegation.  The probation notice did nothing more than warn plaintiff about potential consequences for future inappropriate behavior.  Though the notice contained a warning about the possibility of future termination, a "mere warning of possible future disciplinary action, however, does not constitute an independent adverse employment action."  Santa Cruz v. Snow, 402 F. Supp. 2d 113, 122 (D.D.C. 2005).

Plaintiff does not allege that the notice affected her pay, benefits, job title, responsibilities, work hours, or any "material matter" of her employment.  Because plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face," Claim II must be dismissed.  Bell Atl. Corp, 127 S. Ct. at 1974; see also Rattigan, 503 F. Supp. 2d at 74 -75 (D.D.C. 2007) (dismissing plaintiff's discrimination claims because they did not, "as a matter of law, rise to the level of adverse employment actions actionable under Title VII"); Runkle v. Gonzales, 391 F. Supp. 2d 210, 222 (D.D.C. 2005) (dismissing plaintiff's claims because his allegations -- "even when assumed as true -- do not amount to legally cognizable adverse actions and therefore would not enable him to ever establish a prima facie case under Title VII").

## III.    Constructive Discharge

An allegation of constructive discharge arising out of discriminatory employment actions may, in proper circumstances, constitute an independent claim for recovery -- such as a claim of breach of contract (if the employee were covered by a contract) or a claim under some statute other than Title VII (such as the federal civil-service laws, see, e.g., 5 U.S.C. § 7701).  But no such claim is presented in this civil action, which is founded solely on Title VII and common law defamation.  See Kalinoski v. Gutierrez, 435 F. Supp. 2d 55, 74 (D.D.C. 2006).  Hence, the

-14-

Court considers plaintiff's allegation of constructive discharge to be limited to any potential recovery anticipated on her Title VII claims. Because the Court will grant defendant's motion for judgment on the pleadings in regard to all of plaintiff's claims that preceded her resignation, there remains no basis for recovery on the issue of constructive discharge.

In any event, plaintiff has failed to allege sufficient facts to justify a constructive discharge claim, and defendant is entitled to judgment as a matter of law on this issue. A finding of constructive discharge requires evidence that "the employer deliberately made working conditions intolerable and drove the employee [to involuntarily quit]." Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir. 1981). "The standard, moreover, is an objective one; that is, 'whether a reasonable employee would have concluded that the conditions made remaining in the job unbearable' and thus would have felt compelled to resign." Kalinoski, 435 F. Supp. 2d at 78 (quoting Lindale v. Tokheim Corp., 145 F.3d 953, 955 (7th Cir.1998)). Addressing a constructive discharge allegation in the Title VII context, the D.C. Circuit has indicated that where discrimination or retaliation contribute to the alleged constructive discharge, as plaintiff asserts happened here, a plaintiff must demonstrate the existence of "aggravating factors" that made her working conditions objectively intolerable. Clark, 665 F.2d at 1174. This amounts to a relatively high threshold that plaintiff is unable to meet.

Here, plaintiff contends that the inadequate technical support, the unruly office assistant, and the unwarranted probation notice all contributed to an "unhealthy workplace environment" that was so intolerable that her resignation should actually be viewed as an involuntary termination. An objective review of the allegations convinces the Court, however, that it should not engage in the legal fiction of reclassifying plaintiff's resignation. First, plaintiff admits that

-15-

ACE had neglected to provide technical assistance to two Caucasian employees who experienced similar problems with the software program.  Although plaintiff now complains about her struggles with the same software, she concedes that she "never complained" about her difficulties in obtaining technical support while she was employed at ACE.  Second, regarding plaintiff's complaints about the office assistant, plaintiff only worked with the assistant for three weeks before she submitted her resignation.  Plaintiff had previously met with the Executive Director to discuss her concerns, and the director assured her that the office assistant's behavior would be addressed.  And finally, plaintiff submitted her resignation on the very same day that she received the probation notice.  The short time frame that plaintiff endured the cumulative effect of these events provides additional support for this Court's conclusion.  See Roberts v. Segal Co., 125 F. Supp. 2d 545, 550 (D.D.C. 2000) (determining that the plaintiff's "work conditions were clearly not so intolerable as to force a reasonable person to quit her job, especially considering that she only endured the alleged treatment for less than three weeks").

Even assuming the truth of plaintiff's allegations and drawing all reasonable factual inferences in her favor, plaintiff's allegations cannot survive.  The allegations -- taken individually or together -- simply do not rise to the extreme mistreatment that is necessary to support a finding of a constructive discharge.  See Clark, 665 F.2d at 1174 (holding that "a continuous pattern of discriminatory treatment encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years," supported a finding that the plaintiff was constructively discharged); see also Kalinoski, 435 F. Supp. 2d at 79 (granting summary judgment to defendant on the issue of constructive discharge where plaintiff argued "that defendant's denial of her medical leave requests and the

-16-

accompanying decision to place her on leave without pay amount[ed] to aggravating factors that, together with her involuntary reassignment and non-selection for the position of Operating Committee Chairman, created not just an unpleasant work environment, but an unbearable one"); Carter v. George Washington Univ., 180 F. Supp. 2d 97, 111 (D.D.C. 2001) (determining that "the plaintiff's allegations of the defendant's failure to transfer or provide her a leave of absence are insufficient to support a claim of constructive discharge").

## IV.    Defamation Claim

Plaintiff's only remaining claim, therefore, is the common law defamation claim brought under District of Columbia law.  When plaintiff filed her Complaint, she premised this Court's jurisdiction on 28 U.S.C. § 1331 for her federal law claims and argued that the Court had supplemental jurisdiction over her defamation claim.  Now that plaintiff's federal claims have been dismissed, defendant argues that this Court should decline to exercise supplemental jurisdiction over plaintiff's remaining local law claim.

The supplemental jurisdiction statute provides that a district court may decline to exercise jurisdiction over related non-federal claims if "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3); see Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed.").  The exercise of supplemental jurisdiction remains discretionary on the part of a federal court, but "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law

claims." Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Because there has been no discovery in this case and the investment of judicial resources has been minimal, the Court concludes that the dismissal of plaintiff's defamation claim, for which jurisdiction in this Court is premised solely on the discretionary exercise of supplemental jurisdiction, is warranted. See Mitchell v. Yates, 402 F. Supp. 2d 222, 235 (D.D.C. 2005) (determining that plaintiff's state law claims should be dismissed "based on considerations of efficiency and the relative expertise of the local courts on matters of local law"). That conclusion, however, is based on plaintiff's failure to assert any other basis for federal jurisdiction over the defamation claim -- for instance, diversity of citizenship. If plaintiff believes there is such an independent basis for federal jurisdiction over that claim, she may file an amended complaint within 20 days.

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion for judgment on the pleadings.[5] In addition, pursuant to 28 U.S.C. § 1367(c), the Court will dismiss plaintiff's defamation claim if an amended complaint asserting that claim and a proper independent basis for federal jurisdiction is not filed within 20 days. A separate order accompanies this memorandum opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: January 29, 2008

_____

[5]In light of the Court's ruling, all other pending motions will be denied as moot.

-18-